# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

In re:

LightSquared Inc., *et al.*,

          Debtors.

Case No. 13 Civ. _____

Chapter 11
Case No. 12-12080 (SCC)
Jointly Administered

------------------------------------------------------- x

LightSquared Inc.;
LightSquared LP; and
LightSquared Subsidiary LLC,

          Plaintiffs,

          v.

Deere & Company;
Garmin International, Inc.;
Trimble Navigation Limited;
The U.S. GPS Industry Council; and
The Coalition to Save Our GPS

          Defendants.

Adv. No. 13-01670 (SCC)

------------------------------------------------------- x

## NOTICE OF DEFENDANTS' MOTION TO WITHDRAW THE
## REFERENCE OF PROCEEDING TO BANKRUPTCY COURT

PLEASE TAKE NOTICE that upon this notice of motion and the accompanying

Memorandum of Law and Declaration of Philip Le B. Douglas, Defendants Deere & Company,

Garmin International, Inc., Trimble Navigation Limited, and The U.S. GPS Industry Council

("Defendants") hereby move this Court for entry of an order pursuant to 28 U.S.C. § 157(d),

Rule 5011(a) of the Federal Rules of Bankruptcy Procedure, and Rule 5011-1 of the Local

Bankruptcy Rules for the Southern District of New York withdrawing the reference of this Court

to the United States Bankruptcy Court for the Southern District of New York of the Complaint,

filed by LightSquared Inc. and its affiliates in the above-captioned proceeding on November 1,

2013.


Dated: New York, New York            Respectfully submitted,
       November 15, 2013


By: _/s/ William A. Isaacson_____            By: _/s/ Kenneth I. Schacter_____

William A. Isaacson                      Kenneth I. Schacter
BOIES, SCHILLER & FLEXNER LLP            BINGHAM McCUTCHEN LLP
5301 Wisconsin Avenue, N.W.              399 Park Avenue
Washington, DC  20015                    New York, NY 10022
(202) 237-9607                           (212) 705-7000
*Counsel for Trimble Navigation Ltd.*    *Counsel for Deere & Company*


By: _/s/ Steven R. Schindler_____          By: _/s/ Philip Le B. Douglas_____

Steven R. Schindler                      Philip Le B. Douglas
SCHINDLER COHEN & HOCHMAN LLP            JONES DAY
100 Wall Street                          222 East 41st Street
15th Floor                               New York, NY  10017
New York, NY  10005                      (212) 326-3939
(212) 277-6310                           *Counsel for Garmin International, Inc.*
*Counsel for The U.S. GPS Industry Council*


                                        By: _/s/ Michael D. Hays_____

                                        Michael D. Hays
                                        DOW LOHNES PLLC
                                        1200 New Hampshire Avenue, N.W.
                                        Suite 800
                                        Washington, DC  20036
                                        (202) 776-2711
                                        *Counsel for Garmin International, Inc.*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------- x

In re:                                              )          Case No. 13 Civ. ____
                                                    )
LightSquared Inc., *et al.*,                        )          Chapter 11
                                                    )          Case No. 12-12080 (SCC)
                          Debtors.                  )          Jointly Administered
                                                    )

---------------------------------------------------- x

                                                    )
LightSquared Inc.;                                  )
LightSquared LP; and                                )
LightSquared Subsidiary LLC,                        )          Adv. No. 13-01670 (SCC)
                                                    )
                                                    )
                          Plaintiffs,               )
                                                    )
                          v.                        )
                                                    )
Deere & Company;                                    )
Garmin International, Inc.;                          )
Trimble Navigation Limited;                         )
The U.S. GPS Industry Council; and                  )
The Coalition to Save Our GPS                       )
                                                    )
                          Defendants.               )
                                                    )

---------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO WITHDRAW THE REFERENCE OF
<u>PROCEEDING TO BANKRUPTCY COURT</u>**

## **TABLE OF CONTENTS**

Preliminary Statement ........................................................................................................1

Proceedings To Date .........................................................................................................2

ARGUMENT .....................................................................................................................4

I.   THE REFERENCE OF THIS PROCEEDING MUST BE WITHDRAWN ........................4

    A.   Withdrawal Is Mandatory ...................................................................5

    B.   There Is Cause for Permissive Withdrawal ................................................8

        1.   Plaintiffs Concede that the Matter Is "Non-Core"
             and Demand a Jury Trial .........................................................9

        2.   The Remaining Orion Factors Strongly Favor Withdrawal ........................10

            (a)   Withdrawal Would Promote Judicial Efficiency
                  and Consistency .......................................................11

            (b)   Withdrawal Would Promote Uniform Administration
                  of the Bankruptcy Laws ................................................14

            (c)   Withdrawal Would Prevent Forum Shopping ..............................15

II.  THE CONSTITUTION BARS BANKRUPTCY COURT
     ADJUDICATION OF LIGHTSQUARED'S CLAIMS .......................................16

CONCLUSION ...................................................................................................................18

# TABLE OF AUTHORITIES

**Page**

CASES

Bastien v. AT&T Wireless Services, Inc.,
205 F.3d 983 (7th Cir. 2000) ...................................................................................7

Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.,
129 F. Supp. 2d 578 (W.D.N.Y. 2000) .................................................................7

City of New York v. Exxon Corp.,
932 F.2d 1020 (2d Cir. 1991) ................................................................................5

Dev. Specialists, Inc. v Akin Gump Strauss Hauer & Feld LLP,
462 B.R. 457 (S.D.N.Y. 2011) ..................................................... *passim*

Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.,
905 F. Supp. 2d 526 (S.D.N.Y. 2012) .......................................................11, 14, 15

Hankin v. Auxiliary of Winsted Mem'l Hosp. (In re Winsted Mem'l Hosp.),
236 B.R. 556 (Bankr. D. Conn. 1999) ...................................................................9

Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.,
107 B.R. 34 (D. Del. 1989) ...................................................................................6

Hudgins v. Shah (In re Sys. Eng'g & Energy Mgmt. Assocs.),
252 B.R. 635 (Bankr. E.D. Va. 2000) ....................................................................9

In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,
03 MDL 1529(LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006) ...........................5, 13, 14

In re Burger Boys, Inc.,
94 F.3d 755 (2d Cir. 1996) ....................................................................................8, 9

In re Complete Mgmt., Inc.,
02 Civ. 1736 (NRB), 2002 WL 31163878 (S.D.N.Y. Sept. 27, 2002) ....................13

In re Coudert Bros.,
11 CIV. 4949 PAE, 2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011) .................14, 16

In re Fabrikant,
No. 08-1982, 2008 WL 2596322 (S.D.N. Y. June 26, 2008) .................................14

In re Green,
200 B.R. 296 (S.D.N.Y. 1996) ..............................................................................10

In re Ionosphere Clubs, Inc.,
922 F.2d 984 (2d Cir. 1990) ..................................................................................5

In re Lenders Abstract & Settlement Serv. Inc.,
    493 B.R. 385 (E.D.N.Y. 2013) ........................................................................9

In re Lipstein,
    94 Civ. 7100 (LLS), 1995 WL 675486 (S.D.N.Y. Nov. 14, 1995) .........................10

In re McRory,
    160 B.R. 502 (S.D.N.Y. 1993).........................................................................5

In re MF Global Inc.,
    484 B.R. 18 (S.D.N.Y. 2012).........................................................................8

In re Orion Pictures Corp.,
    4 F.3d 1095 (2d Cir. 1993)......................................................................*passim*

In re U.S. Lines, Inc.,
    197 F.3d 631 (2d Cir. 1999).........................................................................15

In re The VWE Grp., Inc.,
    359 B.R. 441 (S.D.N.Y. 2007).......................................................................10

In re WorldCom, Inc.,
    No. 07-9590-DC, 2008 WL 2441062 (S.D.N.Y. June 18, 2008) ...........................11

Kirschner v. Agoglia,
    476 B.R. 75 (S.D.N.Y. 2012).........................................................................17

Magten Asset Mgt. Corp. v. Northwestern Corp.,
    No. 03-12872, 2005 WL 2320113 (D. Del. Sept. 22, 2005)...............................14

Matsushita Elecs. Corp. v. Loral Corp.,
    974 F. Supp. 345 (S.D.N.Y. 1997)...................................................................7

Mishkin v. Ageloff,
    220 B.R. 784 (S.D.N.Y. 1998).......................................................................13

Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.),
    163 B.R. 41 (S.D.N.Y. 1993).........................................................................13

Penson Fin. Servs. v. O'Connell (In re Arbco Capital Mgmt., LLP),
    479 B.R. 254 (S.D.N.Y. 2012)...................................................................16, 17

Petition of McMahon,
    222 B.R. 205 (S.D.N.Y. 1998).......................................................................15

Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,
    454 B.R. 307 (S.D.N.Y. 2011)....................................................................5, 6

Solutia Inc. v. FMC Corp.,
        2004 WL 1661115 (S.D.N.Y. July 27, 2004) ...................................................11, 15

Stern v. Marshall,
        131 S.Ct. 2594 (2011) ...................................................................................16, 17

Telesaurus VPC, LLC v. Power,
        623 F.3d 998 (9th Cir. 2010) ...................................................................................7

Thomas v. Nat'l Canada Fin. Corp.,
        1995 WL 54473 (N.D. Ill. Feb. 7, 1995) ...................................................................9

TP, Inc. v. Bank of Am., N.A. (In re TP, Inc.),
        479 B.R. 373 (Bankr. E.D.N.C. 2012) ......................................................................9

Vozella v. Basel-Johnson (In re Basel-Johnson),
        366 B.R. 831 (Bankr. N.D. Ill. 2007) ......................................................................9

Wedtech Corp. v. London (In re Wedtech Corp.),
        81 B.R. 237 (S.D.N.Y. 1987) ...................................................................................13

**STATUTES**

28 U.S.C. § 157(c)(1)........................................................................................................9

28 U.S.C. § 157(d) ...................................................................................................... *passim*

47 U.S.C. § 332(c)(3)(A) ...............................................................................................3, 7

Defendants Deere & Company, Garmin International, Inc., Trimble Navigation Limited, and The U.S. GPS Industry Council ("Defendants"), through their respective undersigned counsel, submit this Memorandum and the accompanying Declaration of Philip Le B. Douglas (the "Douglas Dec.") in support of their Motion to Withdraw the Reference of Proceeding to Bankruptcy Court pursuant to 28 U.S.C. § 157(d).[1]

### Preliminary Statement

LightSquared Inc. and its affiliates ("Plaintiffs" or "LightSquared") are providers of "satellite-based communications services." Compl. ¶ 34.[2]  On November 1, 2013, LightSquared commenced the underlying adversary proceeding.  LightSquared's Complaint is predicated on twelve years of "extensive regulatory proceedings" (Compl. ¶ 3) before the Federal Communications Commission ("FCC").  In 2011, the FCC declined to approve LightSquared's newly filed application to convert its low-powered, satellite communications license into one authorizing a stand-alone, high-powered, nationwide, terrestrial communications network capable of carrying wireless telephone calls and broadband data.  The FCC instead required that the LightSquared demonstrate that its new proposed system would not interfere with GPS devices used by the military, civil aviation, first responders and consumers, which LightSquared was unable to do.  Although it was the FCC that declined to approve Plaintiffs' plan, based upon objections from a number of Federal, state and local government agencies, as well as private

---

[1]  As Defendants have informed Plaintiffs, co-defendant The Coalition to Save Our GPS (the "Coalition") is not a legal entity but an informal group that lacks the capacity to be sued.  At different times, dozens of entities have been associated with the Coalition.  Even though Defendants have provided a confirmatory letter from the Coalition's former counsel, LightSquared insists on proceeding against the Coalition.  Other than Defendants, no one allegedly associated with the Coalition has been identified in the Complaint, much less served with process.  Defendants are unable, of course, to speak for the Coalition or any other alleged Coalition member.  To the extent Defendants are being sued as supposed participants in the Coalition, they hereby move to withdraw the reference as to the claims against them.

[2]  Citations to "Compl." or "LightSquared Compl." are to LightSquared's Complaint, which is Exhibit A to the Douglas Declaration.  Exhibits to the Douglas Declaration are cited as "Ex. __."

parties, LightSquared seeks billions of dollars in damages for an alleged failure by Defendants –
but not the United States government – to advise Plaintiffs of those risks before their new plan
was even disclosed.  As a result, in 2012, the FCC proposed to suspend LightSquared's license.

The Complaint does not implicate bankruptcy law.  None of the Defendants are creditors
of or otherwise participants in the LightSquared Chapter 11 proceeding.  Therefore, as Plaintiffs
admit, their claims do not involve "core" bankruptcy issues.  Compl. ¶ 21.  Although
LightSquared relies exclusively on state causes of action, its allegations, as the Complaint
suggests, require the interpretation of federal non-bankruptcy laws, including whether Plaintiffs'
claims are "preempted by federal law or barred by the *Noerr-Pennington* doctrine."
Compl. ¶ 129.  Plaintiffs, moreover, demand a jury trial before the Bankruptcy Court, which
given Defendants' lack of consent, cannot occur there.  Compl. at 61.  Finally, there is already
pending before the Honorable Richard M. Berman of this Court a virtually identical case brought
by the Harbinger hedge funds – LightSquared's owners – against all the defendants named in this
case.

Because the LightSquared Complaint will require the interpretation of federal, non-
bankruptcy rights, consists of "non-core" claims, contains a jury demand, and is duplicative of
the already pending Harbinger case, it is subject to both mandatory and permissive withdrawal.
In addition, the United States Constitution bars Bankruptcy Court adjudication of LightSquared's
claims.

## **Proceedings To Date**

On May 14, 2012, Plaintiffs and affiliated debtors filed petitions for chapter 11 relief in
the United States Bankruptcy Court for the Southern District of New York.  In re LightSquared
Inc., *et al.*, Case No. 12-12080 (SCC).  The case was assigned to the Honorable Shelley C.

Chapman.  At that time, LightSquared was owned by the Harbinger hedge funds (collectively "Harbinger").  See Case No. 12-12080, ECF Doc. 1.  Harbinger, in turn, is controlled by Philip Falcone.

On August 9, 2013, Harbinger filed a complaint in this Court (the "Harbinger Complaint" or "Harbinger Compl.") against all the defendants in this case, alleging various federal and state causes of action based on the same FCC proceedings and the same alleged conduct at issue in the LightSquared Complaint.[3]  Harbinger Capital Partners LLC, et al. v. Deere & Company, et al., Case No. 13-cv-05543 (RMB).  The case was assigned to Judge Berman.  On September 18, 2013, Defendants filed a pre-motion letter in the Harbinger case outlining their intended motion to dismiss.  Case No. 13-cv-05543, ECF Doc. 26.  Among other defenses, the pre-motion letter cited controlling authority demonstrating, among other things, that Plaintiffs' claims are all barred by the Noerr-Pennington doctrine, and preempted by the Federal Communications Act, 47 U.S.C. § 332(c)(3)(A) ("FCA").  Judge Berman conducted a preliminary conference on September 26, 2013.  Case No. 13-cv-05543, ECF Doc. 37.  On October 9, 2013, Judge Chapman granted LightSquared's motion to stay the Harbinger proceeding for sixty days.  Case No. 12-12080, ECF Doc. 931.  That stay remains in place until December 8, 2013.

On November 1, 2013, the LightSquared Complaint was filed in the Bankruptcy Court against the same defendants named in the Harbinger Complaint.  Plaintiffs' case is based on the same FCC proceedings as the Harbinger Complaint.  The Defendants have not answered or responded to the LightSquared Complaint, no discovery has taken place, and there have been no other proceedings related to the LightSquared Complaint.  Douglas Dec. ¶ 2.  The Defendants' deadline to answer or otherwise respond to the LightSquared Complaint has been extended to

---

[3]  The Harbinger Complaint is Exhibit B to the Douglas Declaration.

January 3, 2014.  Judge Chapman has scheduled an initial conference in the case for December 10, 2013.

The LightSquared Complaint concedes that its claims concern "non-core" issues (Compl. ¶ 21) and demands a jury trial.  Id. at 61.  LightSquared's allegations and claims are all but identical to those Harbinger already has pending before Judge Berman.  Nevertheless, Plaintiffs do not consent to withdrawal of the reference.  Douglas Dec. ¶ 3.

## ARGUMENT

## I.   THE REFERENCE OF THIS PROCEEDING MUST BE WITHDRAWN.

LightSquared's causes of action – none of which arises under bankruptcy law – are derived from Defendants' alleged participation in a series of FCC proceedings between 2002 and 2012.  The Complaint alleges that Defendants breached promises and agreements made during the course of those proceedings and, prior to LightSquared's disclosure of a plan to deploy a ubiquitous, high-powered terrestrial communications network within the satellite frequency band, failed to warn LightSquared that the new plan would dangerously compromise the nation's GPS system.  LightSquared alleges that the FCC's failure to approve its terrestrial plan caused it to file for bankruptcy.  Compl. ¶¶ 11, 128.

Pursuant to Section 157(d) to the Bankruptcy Code, the LightSquared case should be withdrawn from the Bankruptcy Court.  Section 157(d) provides:

> The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).  Section 157(d)'s first sentence provides for "permissive" withdrawal for "cause," while the second provides for "mandatory" withdrawal.  For the reasons set forth below, mandatory and permissive withdrawal are both appropriate in this case.

**A.      Withdrawal Is Mandatory.**

Mandatory withdrawal is required where, as here, a case "would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991); accord In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990) (withdrawal of the reference required "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding").

To give rise to mandatory withdrawal, the federal law at issue in an adversary proceeding does not have to involve "complicated interpretative issues, often of first impression."  In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., 03-MDL-1529-LMM, 2006 WL 337667, *3 (S.D.N.Y. Feb. 10, 2006); In re McRory, 160 B.R. 502, 505 (S.D.N.Y. 1993) (mandatory withdrawal is not required only when "the meaning of the statute is not settled or where the case involves an issue of first impression").  Regardless of "the merits of the parties' claims . . ., it is sufficient for the Court to determine that the proceeding will involve consideration of federal non-bankruptcy law."  Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 454 B.R. 307, 312 (S.D.N.Y. 2011).

The purpose of mandatory withdrawal is to require that non-bankruptcy questions are heard in the district courts, which are most experienced with these issues.  Id. ("Section 157(d) is meant to 'assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code'"); McRory, 160 B.R. at 505 (matters requiring

5

significant application of non-bankruptcy federal statutes must be removed to district courts which have more experience in applying those laws).

As the LightSquared Complaint makes clear, this case requires substantial consideration of a variety of federal laws.  Although the Complaint's causes of action sound in state law, its operative allegations all concern the FCC regulatory process.[4]  The Complaint is replete with references to FCC rules, proceedings and orders.  E.g., Compl. ¶¶ 3, 26-32, 45-77, 91, 102, 107-109.  For example, the alleged "promises", "contracts" and "representations" at the center of the Complaint (Id. ¶¶ 1, 49-50, 69-71) are principally letters Defendants allegedly submitted to the FCC regarding "out-of-band emissions" ("OOBE") associated with LightSquared's then-contemplated "Ancillary Terrestrial Component" ("ATC") of a satellite communications system.  According to LightSquared, these statements to the FCC also required Defendants to warn the FCC and Plaintiffs that, if LightSquared were to change its plans and develop systems that would allow terrestrial-only service, an entirely different GPS "overload" problem might result.  Id. ¶¶ 95-106.  The Complaint alleges that, due to Defendants' concerns regarding this plan, "the FCC sought to block the launch of LightSquared's network by suspending its authority for terrestrial operations."  Id. ¶ 11; see id. ¶ 127.  In addition, the Complaint would hold Defendants liable for not objecting to specific FCC orders.  Id. ¶ 77.

---

[4] For the purposes of this withdrawal motion, it is "simply not relevant" that the Complaint alleges state, rather than federal, causes of action.  Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc., 107 B.R. 34, 39 (D. Del. 1989).  Instead, the critical inquiry is whether or not the Complaint requires a substantial consideration or significant interpretation of non-bankruptcy federal law.  Id.  In Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC, 454 B.R. 307  (S.D.N.Y. 2011), for example, this Court rejected the argument that withdrawal of the reference was premature because the complaint only asserted state law causes of action and the federal interpretive issues would only arise by way of defense.  Id. at 317.

6

The United States Constitution prohibits,[5] and the FCA expressly preempts,[6] LightSquared's claims. The LightSquared Complaint expressly places these <u>Noerr-Pennington</u> and preemption defenses in issue: "Although reciting the factual background of this case requires LightSquared to recount various regulatory proceedings before the FCC, the claims asserted in this Complaint are not preempted by federal law or barred by the *Noerr-Pennington* doctrine." <u>Id.</u> ¶ 129.

The Complaint also alleges that the Defendants' interference with LightSquared's business and contractual relationships was improper because it involved, among other things, "*violations of existing statutes, regulations*." Compl. ¶¶ 178 (emphasis added), <u>see id.</u> ¶186. Plaintiffs, moreover, seek the interpretation of specific federal regulations. <u>E.g.</u>, Compl. ¶ 91 ("FCC rules also make receiver manufacturers like Defendants responsible for their own design choices. Part 15 of Title 47 of the Code of Federal Regulations, states that receivers operating in a band allocated to another spectrum user must do so 'subject to the conditions that no harmful interference is caused and that interference must be accepted that may be caused by the operation

---

[5]  The <u>Noerr-Pennington</u> doctrine is a constitutionally-based defense providing defendants with immunity for exercising their First Amendment right to petition the government by, <u>inter alia</u>, engaging in proceedings before administrative agencies. It provides immunity with respect to both federal and state law claims. <u>See, e.g.</u>, <u>Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.</u>, 129 F. Supp. 2d 578, 597 (W.D.N.Y. 2000) (dismissing both federal and state law claims as "barred by the <u>Noerr Pennington</u> doctrine"), <u>aff'd</u>, 229 F.3d 1135 (2d Cir. 2000). The doctrine covers conduct incident to petitioning the government or to litigation. <u>See, e.g.</u>, <u>Matsushita Elecs. Corp. v. Loral Corp.</u>, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (<u>Noerr-Pennington</u> doctrine covered letters to opposing parties asking "recipient to engage in 'discussions of possible license arrangements'" and encouraging "settling the underlying litigation" because such conduct was "attendant to litigation").

[6]  The FCA preempts, among other things, state law claims that purport "to regulate the entry of . . . any commercial mobile service or any private mobile service." 47 U.S.C. § 332(c)(3)(A). The FCC orders at issue in the Complaint concerned LightSquared's efforts over the years to enter various types of commercial mobile service. Given the Complaint's allegations that Defendants' activities, among other things, caused the FCC to attempt "to block the launch of LightSquared's network by suspending its authority for terrestrial operations" (Compl. ¶ 11), the FCA preempts all of Plaintiffs' claims . <u>See</u> <u>Telesaurus VPC, LLC v. Power</u>, 623 F.3d 998, 1009 (9th Cir. 2010) (FCA preempted state law tort claim for losses caused by FCC rulings); <u>Bastien v. AT&T Wireless Services, Inc.</u>, 205 F.3d 983, 987 (7th Cir. 2000) (FCA preempts "[c]ases that *involve* 'the entry of . . . any commercial mobile service or any private mobile service'") (<u>quoting</u> 47 U.S.C.  § 332(c)(3)(A)) (emphasis added).

of an authorized [transmitter].' In fact, Defendants Garmin, Deere, and Trimble have expressly

acknowledged (and accepted) this risk, including by stating in user manuals that their receivers

'comply with Part 15 of the FCC rules' . . . ."); id. n.4 ("Defendants might try to argue that their

[GPS] receivers are regulated by Part 25 of Title 47 of the Code of Federal Regulations—the

provision that regulates earth stations.  Earth stations under Part 25, however, typically must be

licensed by the FCC. Unlicensed earth stations have no right to interference protection and

assume the risk of interference from other services").

In short, because, as LightSquared repeatedly concedes, this case will necessarily involve

the significant interpretation of federal constitutional, statutory and regulatory law regulating

activities affecting interstate commerce, withdrawal of the reference is mandatory.  See In re MF

Global Inc., 484 B.R. 18, 23 (S.D.N.Y. 2012) (a "federal regulation . . . constitutes an 'other law'

for purposes of § 157(d)."); 28 U.S.C. §157(d).

**B.**  **There Is Cause for Permissive Withdrawal.**

Even if withdrawal were not mandatory, there is cause for permissive withdrawal.  To

determine whether permissive withdrawal is appropriate, this Court must consider:  "(1) whether

the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is

the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy

administration, (5) what will prevent forum shopping, and (6) other related factors."  In re Burger

Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996) (citing In re Orion Pictures Corp., 4 F.3d 1095 (2d

Cir. 1993)).  The parties' jury trial rights are also important.  Orion, 4 F.3d at 1101.  As

demonstrated below, *all* relevant considerations militate strongly in favor of withdrawal.

(none)

1.      **Plaintiffs Concede that the Matter Is "Non-Core" and Demand a Jury Trial.**

The Complaint concedes that "[t]his action contains non-core" matters.  Compl. ¶ 21.

Indeed, each of its causes of action is, without exception, non-core.[7]  The Complaint, moreover,

includes Plaintiffs' demand for trial by jury.  Compl. ¶ 21, p. 61.[8]  These facts alone weigh all

but conclusively in favor of withdrawal.

Under Orion, "a district court considering whether to withdraw the reference should *first*

*evaluate* whether the claim is core or non-core, since it is upon this issue that questions of

efficiency and uniformity will turn."  Orion, 4 F.3d at 1101 (emphasis added).  The "core/non-

core" factor is thus the "*most important*."  In re Burger Boys, Inc., 94 F.3d at 762 (emphasis

added); accord In re Lenders Abstract & Settlement Serv. Inc., 493 B.R. 385, 393 (E.D.N.Y.

2013) (the "most significant Orion factor"); Dev. Specialists, Inc. v Akin Gump Strauss Hauer &

Feld LLP, 462 B.R. 457, 469 (S.D.N.Y. 2011) (the "primary factor").

Section 157(c) precludes the Bankruptcy Court from finally deciding a non-core matter.

Instead, for claims not subject to a jury trial, it may do no more than propose findings of fact and

conclusions of law, all of which are subject to *de novo* review by the District Court.  28 U.S.C.

§ 157(c)(1).  These "unnecessary costs could be avoided by a single proceeding in the district

court."  Orion, 4 F.3d at 1101.

---

[7] See, e.g., Thomas v. Nat'l Canada Fin. Corp., 1995 WL 54473, *6 (N.D. Ill. Feb. 7, 1995) ("promissory estoppel claim would have been a non-core proceeding in the bankruptcy action …"); Orion, 4 F.3d at 1101 (breach of pre-petition contract claim held non-core); TP, Inc. v. Bank of Am., N.A. (In re TP, Inc.), 479 B.R. 373, 386-87 (Bankr. E.D.N.C. 2012) (breach of good faith and fair dealing claim held non-core); Hankin v. Auxiliary of Winsted Mem'l Hosp. (In re Winsted Mem'l Hosp.), 236 B.R. 556, 561 (Bankr. D. Conn 1999) (unjust enrichment claims held "clearly non-core"); TP, Inc., 479 B.R. at 386 (negligent misrepresentation claim held non-core); Vozella v. Basel-Johnson (In re Basel-Johnson), 366 B.R. 831, 837-38 (Bankr. N.D. Ill. 2007) (claims of tortious interference with contract and tortious interference with prospective business advantage and business expectancy held to be non-core); Hudgins v. Shah (In re Sys. Eng'g & Energy Mgmt. Assocs.), 252 B.R. 635, 648 (Bankr. E.D. Va. 2000) ("civil conspiracy claims are non-core").

[8] Defendants do not consent to a jury trial before the Bankruptcy Court.

In addition, <u>Orion</u> holds that "[t]he threshold core/non-core evaluation also determines the relevance of parties' jury trial rights to deciding a motion to withdraw the reference." <u>Id.</u> Because a jury's verdict in a bankruptcy court would be subject to *de novo* District Court review, the Seventh Amendment's reexamination clause "prohibits bankruptcy courts from holding jury trials in non-core matters." <u>Id.</u> Consequently, "[i]f a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." <u>Id</u>. As previously noted, Defendants do not consent to a jury trial of this case before the Bankruptcy Court.

Combined with its jury trial demand, LightSquared's concession that its claims are non-core all but compels the conclusion that there is cause for withdrawal. <u>In re The VWE Grp., Inc.</u>, 359 B.R. 441, 451 (S.D.N.Y. 2007) ("Under <u>Orion</u>, the court's finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference."); <u>In re Green</u>, 200 B.R. 296, 299 (S.D.N.Y. 1996) ("[W]here, as here, a party demands a jury trial and refuses to consent to resolution of non-core matters by the Bankruptcy Court, the reference should be withdrawn with regard to those non-core matters"); <u>In re Lipstein</u>, 94 Civ. 7100 (LLS), 1995 WL 675486 (S.D.N.Y. Nov. 14, 1995) ("The fact that an adversary proceeding concerns non-core matters for which there is the right to a jury trial is sufficient cause to withdraw the reference").

### 2.    The Remaining <u>Orion</u> Factors Strongly Favor Withdrawal.

The other <u>Orion</u> factors also militate strongly in favor of permissive withdrawal. As <u>Orion</u> holds, "questions of efficiency and uniformity will turn" on whether the claims are core or non-core. <u>Orion</u>, 4 F.3d at 1101. Thus "where the Bankruptcy Court lacks final adjudicative

authority, the remaining Orion considerations will often tend to point for withdrawal . . . ." Dev.

Specialists, Inc., 462 B.R. at 467.  For reasons discussed below, this is certainly true here.

> (a)     Withdrawal Would Promote Judicial Efficiency and Consistency.

There are a variety of reasons why withdrawal in this case will promote the efficient use

of judicial resources, reduce the parties' costs and avoid inconsistent determinations of identical

factual and legal questions.  First, as already noted, the Bankruptcy Court is statutorily precluded

from resolving LightSquared's claims.  Absent withdrawal, the same issues will have to be

litigated twice, and if the Harbinger case remains stayed perhaps three times.  See, e.g., Solutia

Inc. v. FMC Corp., No. 04-2842-WHP, 2004 WL 1661115, at *3 (S.D.N.Y. July 27, 2004) ("By

litigating this non-core matter in the district court, judicial resources will be conserved instead of

having two courts administer two rounds of briefing and argument on the same issues"); In re

WorldCom, Inc., No. 07-9590-DC, 2008 WL 2441062, at *3 (S.D.N.Y. June 18, 2008) ("as a

bankruptcy court's ruling on a non-core matter is subject to de novo review, a district court may

conclude that its adjudication of the matter in the first instance would be more efficient").

Second, nothing of substance has occurred in the adversary proceeding, which was

commenced only two weeks ago.  Defendants have yet either to answer or otherwise respond to

the Complaint, and are not scheduled to do so until early 2014; no conferences have been held

before Judge Chapman; and there has been no discovery.  Douglas Dec. ¶ 2.  Accordingly, no

inefficiency will result if the reference is withdrawn now.  See, e.g., Dynegy Danskammer,

L.L.C. v. Peabody COALTRADE Int'l Ltd., 905 F. Supp. 2d 526, 533 (S.D.N.Y. 2012) (judicial

economy favored withdrawal where "Defendant's Motion was filed shortly after the Complaint

was filed, and no discovery or extensive motion practice has come before the bankruptcy court.");

Dev. Specialists, Inc., 462 B.R. at 472 ("as no discovery has taken place, and no case

management plan or other course of proceeding has been agreed on, bringing the actions before this Court will not cause undue delay or require any duplication of effort").

Third, the all but identical Harbinger case is already pending before Judge Berman of this Court. In Harbinger, Plaintiffs' principal shareholder makes essentially the same claims against the same Defendants. Harbinger's claims concern the same twelve-year history of the FCC proceedings. See, e.g., Ex. B (Harbinger Compl.) ¶¶ 72-118, 133-177. Although the two Complaints assert claims that, with the exception of an overlapping negligent misrepresentation count, are nominally different, the underlying factual and legal issues are the same:

- Duty of Disclosure: Whether Defendants had a duty to disclose overload interference issues to LightSquared or Harbinger (Compare Ex. A (LightSquared Compl.) ¶¶ 165, 196 with Ex. B (Harbinger Compl.) ¶ 208);

- Existence of Any Misrepresentations and Omissions: Whether Defendants concealed overload interference issues before the FCC and in private negotiations (Compare Ex. A ¶¶ 121-124 with Ex. B ¶¶ 72, 79-97);

- Discoverability of Interference Issues: Whether overload interference was ascertainable by ordinary diligence (Compare Ex. A ¶¶ 86-106 with Ex. B ¶¶ 79-97);

- Reasonable Reliance: Whether LightSquared or Harbinger reasonably relied on Defendants' alleged overload interference omissions (Compare Ex. A ¶¶ 133, 197 with Ex. B ¶¶ 73-78);

- Causation: Whether Defendants' alleged overload interference omissions caused LightSquared's or Harbinger's losses (Compare Ex. A ¶¶ 125-129 with Ex. B ¶¶ 8, 213);

- Damages: What losses to LightSquared and thus to its investors resulted from Defendants' alleged overload interference omissions (Compare Ex. A ¶¶ 1, 12, p. 62 with Ex. B ¶¶ 202-206).

Indeed, to obtain the current stay of the Harbinger case, LightSquared admitted that "there is, at the very least, substantial overlap between Harbinger's claims against the GPS Defendants and claims that LightSquared owns against the GPS Defendants." In re LightSquared Inc., et al., Case No. 12-12080 (SCC), LightSquared's Emergency Motion for Entry of Order Staying Related Litigation, ECF Doc. 888, ¶ 16; see id. ¶ 17 (citing case law

12

concerning "closely related" claims and claims arising from "the same alleged course of conduct").  LightSquared even expressed concern that the <u>Harbinger</u> case could have an adverse precedential impact on LightSquared's claims or, because both Harbinger and LightSquared appear to be controlled by Mr. Falcone, could give rise to collateral estoppel against them.  <u>See id.</u> ¶¶ 1, 18.  The <u>Harbinger</u> action has been stayed until December 8, 2013.

This Court has repeatedly required withdrawal of the reference where the essential facts and issues of a bankruptcy case "overlap" with or even are merely "related to" the essential facts and issues of a case in this Court.  <u>E.g.</u>, <u>Adelphia Commc'ns Corp.</u>, 2006 WL 337667, at *4-5 (reference withdrawn where bankruptcy case involved many of the same defendants and issues in pending class action); <u>Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.)</u>, 163 B.R. 41, 42, 44 (S.D.N.Y. 1993) (even core bankruptcy claims withdrawn where two related actions "aris[ing] from the same factual context as the Adversary Proceeding" were pending in the district court); <u>Mishkin v. Ageloff</u>, 220 B.R. 784, 787 (S.D.N.Y. 1998) (permissive withdrawal of reference and consolidation warranted where proceedings are "overlapping and interlocking"); <u>Wedtech Corp. v. London (In re Wedtech Corp.)</u>, 81 B.R. 237, 239 (S.D.N.Y. 1987) ("the overlapping of facts, transactions and issues in the two cases . . . is good cause for withdrawal of the reference and consolidation with the district court proceeding").

<u>Fourth</u>, withdrawal is also required because adjudication of Harbinger's and LightSquared's overlapping claims in separate proceedings would expose Defendants to inconsistent, even irreconcilable rulings.  <u>Orion</u>, 4 F.3d at 1101 (recognizing importance of "questions of efficiency and uniformity").

<u>Fifth</u>, the Bankruptcy Court has no particular expertise regarding the federal or state laws at issue in the LightSquared Complaint.  <u>See In re Complete Mgmt., Inc.</u>, 02 Civ. 1736 (NRB),

2002 WL 31163878, at *3 (S.D.N.Y. Sept. 27, 2002) (withdrawal where "adversary proceeding raises legal issues more commonly resolved by this court than the bankruptcy courts, and the advancement of this action will involve extensive discovery, expert testimony, and a lengthy and complex trial requiring a jury"); In re Fabrikant, No. 08-1982, 2008 WL 2596322, at *4 (S.D.N.Y. June 26, 2008) (non-core claims do not "involve bankruptcy law, so the bankruptcy court is not in a better position to handle pre-trial proceedings").  LightSquared's claims, therefore, would be more efficiently resolved by this Court.

Thus, both judicial economy and consistency would be served by having both cases determined in the District Court.  See, e.g., Adelphia Commc'ns Corp., 2006 WL 337667, at *3 (judicial economy served by withdrawal of reference where related proceedings were pending before the district court); Magten Asset Mgt. Corp. v. Northwestern Corp., No. 03-12872, 2005 WL 2320113, at *2 (D. Del. Sept. 22, 2005) (withdrawal of claims based on "same underlying transaction" "will ensure a uniform resolution of the issues and will promote the economical use of the parties' resources and the resources of this Court and the Bankruptcy Court by reducing the possibility of duplicative proceedings").

(b)    Withdrawal Would Promote Uniform
Administration of the Bankruptcy Laws.

The LightSquared Complaint asserts garden variety pre-petition breach of contract, quasi contract and tort claims.  By Plaintiffs' own admission, these are "non-core" claims (Compl. ¶ 21), and thus do not impact the uniform administration of the bankruptcy laws.  See, e.g., Dynegy Danskammer, 905 F. Supp. 2d at 533 ("To evaluate whether a benefit to uniform administration exists, courts look to the nature of the cause of action. Courts routinely have found no benefit where claims are based on state law"); In re Coudert Bros., No. 11-4949-PAE, 2011 WL 7678683, at *7 (S.D.N.Y. Nov. 23, 2011) (because "the claims . . . do not raise

14

substantive issues of bankruptcy law . . . [m]aintaining the reference is – not necessary to promote the uniform application of that law"); Solutia, 2004 WL 1661115 at *4 (where "there are no bankruptcy-related issues . . . this factor weighs in favor of withdrawal of the reference").

It is irrelevant, moreover, that, if successful, LightSquared's claims might augment the bankruptcy estate.  See, e.g., In re U.S. Lines, Inc., 197 F.3d 631, 637 (2d Cir. 1999) ("[T]he contract claims are not rendered core simply because they involve property of the estate"); Dev. Specialists, Inc., 462 B.R. at 473 ("resolution [of state law claims] will at most have the effect of augmenting the bankruptcy estate; it will have no impact that would require uniform, coordinated adjudication before the Bankruptcy Court").

(c)     Withdrawal Would Prevent Forum Shopping.

Withdrawal will not give rise to forum shopping, but would prevent it.  As discussed above, the Bankruptcy Court does not have the authority to resolve LightSquared's claims.  See, e.g., Dev. Specialists, Inc., 462 B.R. at 473 (because claims must be "finally determined in this Court, the Court does not condone forum shopping by allowing them to come here sooner rather than later"); Dynegy Danskammer, L.L.C., 905 F. Supp. 2d at 533 (seeking a more efficient adjudication is not forum shopping).

As previously noted, LightSquared's owner, Harbinger, filed an all-but identical action against the same Defendants in this Court.  LightSquared has nevertheless elected to sue in the Bankruptcy Court and has declined to consent to withdrawal of the reference.  Douglas Dec. ¶ 3. LightSquared's insistence that its state law claims be litigated in the Bankruptcy Court is difficult to explain, except as forum shopping on the *Plaintiffs*' part.  See Petition of McMahon, 222 B.R. 205, 208 (S.D.N.Y. 1998) ("Forum shopping would not be encouraged by granting the Defendant's motion as this case involves a non-core proceeding that could have and probably

should have been brought in a district court originally"); see also In re Coudert Bros., 2011 WL 7678683 at *7 (quoting McMahon:  "Indeed, given that the claims at issue are all non-core, 'this case involves a non-core proceeding that could have and probably should have been brought in a district court originally'").

## II.  THE CONSTITUTION BARS BANKRUPTCY COURT ADJUDICATION OF LIGHTSQUARED'S CLAIMS.

Even if LightSquared's claims were not concededly "non-core" (Compl. ¶ 21), the Bankruptcy Court would be constitutionally barred from deciding them.  As the United States Supreme Court recently held,

> When a suit is made of "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," Northern Pipeline, 458 U.S. at 90, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (Rehnquist, J., concurring in judgment), and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts. The Constitution assigns that job--resolution of "the mundane as well as the glamorous, matters of common law and statute as well as constitutional law, issues of fact as well as issues of law"--to the Judiciary. Id., at 86-87, n. 39, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (plurality opinion).

Stern v. Marshall, 131 S.Ct. 2594, 2609 (2011).  Congress, therefore, may not "'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'"  Id. at 2609 (quoting Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272 (1856)).

In Stern, the Supreme Court held that the bankruptcy court lacked constitutional authority under Article III to enter a final judgment on a state common law claim that was not resolved in the process of ruling on a creditor's proof of claim.  131 S.Ct. at 2620.  The Supreme Court's decision in Stern "establishes that identifying a claim as 'core or non-core' under the bankruptcy law does not necessarily determine whether a bankruptcy court is constitutionally empowered to

16

finally adjudicate the matter." Dev. Specialists, Inc., 462 B.R. at 464; accord Penson Fin. Servs. v. O'Connell (In re Arbco Capital Mgmt., LLP), 479 B.R. 254, 261 (S.D.N.Y. 2012) ("following Stern, that a matter is designated 'core' to the underlying bankruptcy proceeding is no longer signifies that a bankruptcy court may constitutionally render final judgment with respect to that matter").

Under Stern, the Bankruptcy Court lacks Article III jurisdiction over state common law claims such as those at issue here, which are intended to augment the bankruptcy estate and do not seek a pro rata share of the bankruptcy estate.  In re Arbco Capital Mgmt., LLP, 479 B.R. at 264; accord Kirschner v. Agoglia, 476 B.R. 75, 81 (S.D.N.Y. 2012) ("These claims for fraudulent conveyance under New York statutory law are claims that seek to augment the bankruptcy estate – the very type of claim that . . . must be decided by an Article III court").

*   *   *

For all these reasons, the Orion factors point overwhelmingly in favor of permissive withdrawal.

## CONCLUSION

Defendants therefore respectfully request that the Court:  (i) withdraw the reference of this action pursuant to 28 U.S.C. § 157(d); and (ii) grant the Defendants such other and further relief as the Court deems just and proper.

Dated: New York, New York
      November 15, 2013

Respectfully submitted,

By: _/s/ William A. Isaacson_

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, DC  20015
(202) 237-9607
*Counsel for Trimble Navigation Ltd.*

By: _/s/ Kenneth I. Schacter_

Kenneth I. Schacter
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000
*Counsel for Deere & Company*

By: _/s/ Steven R. Schindler_

Steven R. Schindler
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street
15th Floor
New York, NY  10005
(212) 277-6310
*Counsel for The U.S. GPS Industry Council*

By: _/s/ Philip Le B. Douglas_

Philip Le B. Douglas
JONES DAY
222 East 41st Street
New York, NY  10017
(212) 326-3939
*Counsel for Garmin International, Inc.*

By: _/s/ Michael D. Hays_

Michael D. Hays
DOW LOHNES PLLC
1200 New Hampshire Avenue, N.W.
Suite 800
Washington, DC  20036
(202) 776-2711
*Counsel for Garmin International, Inc.*

18