**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: LightSquared Inc., *et al.*,<br><br>             *Debtors.* | Ch. 11 Case No. 12-12080 (SCC)<br><br>Jointly Administered |
| LightSquared Inc.; LightSquared LP; and<br>LightSquared Subsidiary LLC,<br><br>             *Plaintiffs,*<br><br>        v.<br><br>Deere & Company; Garmin International, Inc.;<br>Trimble Navigation Limited; The U.S. GPS<br>Industry Council; The Coalition to Save Our GPS;<br>John Doe No. 1, as a representative of The<br>Coalition to Save Our GPS; and John Doe No. 2, as<br>a representative of The Coalition to Save Our GPS,<br><br>             *Defendants.* | Case No. 13-cv-08157 (RMB)<br>Adv. Proc. No. 13-01670 (SCC) |

**LIGHTSQUARED'S OPPOSITION TO**
**DEFENDANTS' MOTIONS TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION...................................................................................................................1

COUNTER-STATEMENT OF FACTS ................................................................................1

CHOICE OF LAW ...............................................................................................................5

ARGUMENT.........................................................................................................................5

I.      The *Noerr-Pennington* Doctrine Does Not Apply.................................................5

II.     The Federal Communications Act Does Not Preempt LightSquared's Claims...........8

III.    LightSquared Has Stated Claims For Misrepresentation And Constructive Fraud.....9

      A.      LightSquared Alleges Actionable Affirmative Misrepresentations.....................10

            1.      Defendants' Representations Were Actually False....................................10

            2.      LightSquared Alleges Actual And Reasonable Reliance...........................11

            3.      LightSquared's Corporate History Is Irrelevant. .....................................12

            4.      LightSquared's Misrepresentation Claims Are Distinct From Its Contract Claims. ................................................................................12

      B.      LightSquared Alleges An Actionable Failure To Disclose.................................13

IV.     LightSquared Has Stated Claims For Breach Of Contract. ........................................14

      A.      Defendants' Arguments About The FCC Letters Are Irrelevant..........................16

      B.      Defendants' Factual Claims About The Scope Of LightSquared's Terrestrial Network Cannot Support Dismissal....................................................17

      C.      The Statute Of Frauds Does Not Bar LightSquared's Claims. .............................18

V.      LightSquared Has Stated A Claim For Breach Of Implied Covenant. ......................18

VI.     LightSquared Has Stated A Claim For Promissory Estoppel. ....................................19

      A.      LightSquared May Plead Quasi-Contract Claims In The Alternative. .................20

      B.      The Amended Complaint Alleges Actual Reliance..............................................20

VII.    LightSquared Has Stated Claims For Quantum Meruit And Unjust Enrichment. ...........................................................................................................21

VIII.   LightSquared Has Stated Claims For Tortious Interference. ......................................23

i

**IX.**     **LightSquared's Claims Are Not Time-Barred.**................................................................**24**

**CONCLUSION** ................................................................................................................**25**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adm'rs of Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*,
   771 F. Supp. 2d 32 (D.D.C. 2011) ........................................................................ 20

*Aetna Casualty & Surety Co. v. Aniero Concrete Co.*,
   404 F.3d 566 (2d Cir. 2005) ................................................................................. 10

*Allen Realty Corp. v. Holbert*,
   318 S.E.2d 592 (Va. 1984) ................................................................................... 24

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
   486 U.S. 492 (1988) .......................................................................................... 6, 8

*Altria Grp., Inc. v. Good*,
   555 U.S. 70 (2008) ............................................................................................... 9

*Andrx Pharm., Inc. v. Biovail Corp., Int'l*,
   256 F.3d 799 (D.C. Cir. 2001) ........................................................................... 6, 7

*Apple, Inc. v. Motorola Mobility, Inc.*,
   886 F. Supp. 2d 1061 (W.D. Wis. 2012) ................................................................ 5

*Ascom Hasler Mailing Systems, Inc. v. U.S. Postal Service*,
   885 F. Supp. 2d 156 (D.D.C. 2012) ..................................................................... 20

*Atl. Credit & Fin. Special Fin. Unit, LLC v. MBNA Am. Bank*,
   2001 WL 856704 (W.D. Va. June 4, 2001) .......................................................... 22

*Bank of Montreal v. Signet Bank*,
   193 F.3d 818 (4th Cir. 1999) ................................................................... 11, 13, 14

*Barnstead Broad. Corp. v. Offshore Broad. Corp.*,
   865 F. Supp. 2 (D.D.C. 1994) .......................................................................... 5, 15

*Bastien v. AT&T Wireless Servs., Inc.*,
   205 F.3d 983 (7th Cir. 2000) ................................................................................. 9

*Blakely v. Baldwin,*
    1984 WL 276231 (Va. Cir. Ct. Feb. 23, 1984) ..................................................... 25

*C & E Servs., Inc. v. Ashland Inc.,*
    601 F. Supp. 2d 262 (D.D.C. 2009) ..................................................................... 19

*C & E Servs., Inc. v. Ashland, Inc.,*
    498 F. Supp. 2d 242 (D.D.C. 2007) ..................................................................... 12

*C. Porter Vaughan, Inc. v. DiLorenzo,*
    279 Va. 449 (2010) ............................................................................................. 18

*CAC Group, Inc. v. Maxim Group, LLC,*
    2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012) ...................................................... 10

*CAC Group, Inc. v. Maxim Group, LLC,*
    523 F. App'x 802 (2d. Cir. 2013) ........................................................................ 10

*Cardtoons, L.C. v. Major League Baseball Players Ass'n,*
    208 F.3d 885 (10th Cir. 2000) (en banc) ................................................................ 7

*Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp.,*
    172 F. Supp. 2d 79 (D.D.C. 2001) ....................................................................... 11

*Clinton v. Brown & Williamson Holdings, Inc.,*
    2013 WL 3111122 (S.D.N.Y. June 20, 2013) ........................................................ 6

*Cmty. Bank & Trust Co. of Va. v. Bohannon,*
    19 Va. Cir. 541 (1988) ........................................................................................ 10

*Cordoba Initiative Corp. v. Deak,*
    900 F. Supp. 2d 42 (D.D.C. 2012) ....................................................................... 21

*Datastaff Tech. Grp., Inc. v. Centex Constr. Co.,*
    528 F. Supp. 2d 587 (E.D. Va. 2007) ............................................................. 21, 22

*Direct Supply, Inc. v. Specialty Hosps. of Am.,*
    878 F. Supp. 2d 13 (D.D.C. 2012) ....................................................................... 22

*Duggin v. Adams*,
   360 S.E.2d 832 (Va. 1987) ........................................................................ 24

*Dunlap v. Cottman Transmission Sys., LLC*,
   754 S.E.2d 313 (Va. 2014) ........................................................................ 23

*Dunn Constr. Co. v. Cloney*,
   682 S.E.2d 943 (Va. 2009) ........................................................................ 12

*Ehrlich v. Real Estate Comm'n*,
   118 A.2d 801 (D.C. 1955) ........................................................................ 14

*Engel v. Teleprompter Corp.*,
   703 F.2d 127 (5th Cir. 1983) ........................................................................ 12

*Enomoto v. Space Adventures, Ltd.*,
   624 F. Supp. 2d 443 (E.D. Va. 2009) ........................................................ 19

*Farina v. Nokia Inc.*,
   625 F.3d 97 (3d Cir. 2010) ........................................................................ 9

*Fedor v. Cingular Wireless Corp.*,
   355 F.3d 1069 (7th Cir. 2004) .................................................................. 9

*Ficken v. AMR Corp.*,
   578 F. Supp. 2d 134 (D.D.C. 2008) .......................................................... 20

*Fitzgerald v. Hunter Concessions, Inc.*,
   710 A.2d 863 (D.C. 1998) ........................................................................ 18

*Friends of Rockland Shelter Animals, Inc. v. Mullen*,
   313 F. Supp. 2d 339 (S.D.N.Y. 2004) ...................................................... 7

*Gilman v. Marsh & McLennan Cos.*,
   868 F. Supp. 2d 118 (S.D.N.Y. 2012) ...................................................... 20

*Grand Union Mount Kisco Emps. Fed. Credit Union v. Kanaryk*,
   848 F. Supp. 446 (S.D.N.Y. 1994) ............................................................ 13

*Greenwood Assocs., Inc. v. Crestar Bank,*
    248 Va. 265 (1994) ........................................................................................ 19

*H&H Assocs., LC v. Big John's Auto Recycling, LLC,*
    86 Va. Cir. 74 (2012) ..................................................................................... 18

*Harrell v. Colonial Holdings, Inc.,*
    923 F. Supp. 2d 813 (E.D. Va. 2013) ........................................................ 22, 23

*Hartog Rahal Foods, Inc. v. Quality Kitchen Corp.,*
    1997 WL 118367 (S.D.N.Y. Mar. 14, 1997) ................................................ 20

*Haughton v. Cognisight, LLC,*
    953 F. Supp. 2d 478 (W.D.N.Y. 2013) ......................................................... 15

*Healy v. Chesapeake Appalachia, LLC,*
    2011 WL 24261 (W.D. Va. Jan. 5, 2011) ..................................................... 25

*Hercules & Co. v. Shama Rest. Corp.,*
    613 A.2d 916 (D.C. 1992) .............................................................................. 11

*Hitachi Credit Am. Corp. v. Signet Bank,*
    166 F.3d 614 (4th Cir. 1999) ......................................................................... 11

*In re Am. Con'tl Corp./Lincoln Sav. & Loan Sec. Litig.,*
    794 F. Supp. 1424 (D. Ariz. 1992) .................................................................. 7

*In re Buspirone Patent Litig.,*
    185 F. Supp. 2d 363 (S.D.N.Y. 2002) ............................................................. 7

*In re Ciprofloxacin Hydrochloride Antitrust Litig.,*
    261 F. Supp. 2d 188 (E.D.N.Y. 2003) ............................................................. 7

*In re Gaston & Snow,*
    243 F.3d 599 (2d Cir. 2001) ............................................................................ 5

*In re Lehman Bros. Sec. & Erisa Litig.,*
    2013 WL 3989066 (S.D.N.Y. July 31, 2013) ............................................... 14

*In re Nexium (Esomeprazole) Antitrust Litig.,*
   968 F. Supp. 2d 367 (D. Mass. 2013) ......................................................................... 6, 7

*In re Sept. 11 Prop. Damage & Bus. Loss Litig.,*
   468 F. Supp. 2d 508 (S.D.N.Y. 2006) ......................................................................... 8

*In re Wireless Consumers Alliance, Inc.,*
   15 FCC Rcd. 17021 (2000) ......................................................................... 9

*Indian Head, Inc. v. Allied Tube & Conduit Corp.,*
   817 F.2d 938 (2d Cir. 1987) ......................................................................... 6, 7

*Jones v. Fulton Bank, N.A.,*
   2014 WL 1378438 (4th Cir. 2014) ......................................................................... 19

*JP Morgan Chase Bank v. Winnick,*
   350 F. Supp. 2d 393 (S.D.N.Y. 2004) ......................................................................... 13

*Kiwanuka v. Bakilana,*
   844 F. Supp. 2d 107 (D.D.C. 2012) ......................................................................... 25

*Langmaid v. Lee,*
   86 Va. Cir. 118 (2013) ......................................................................... 14

*Lawler v. Schumacher Filters Am., Inc.,*
   832 F. Supp. 1044 (E.D. Va. 1993) ......................................................................... 11

*Litton Sys., Inc. v. AT&T Co.,*
   700 F.2d 785 (2d Cir. 1983) ......................................................................... 6, 7

*Lopez v. Aeropostale, Inc.,*
   2012 U.S. Dist. LEXIS 19956 (S.D.N.Y. Feb. 10, 2012) ......................................................................... 11

*Mendoza v. Cederquist,*
   2009 WL 1254669 (E.D. Va. May 6, 2009) ......................................................................... 23

*Microsoft Corp. v. Motorola, Inc.,*
   963 F. Supp. 2d 1176 (W.D. Wash. 2013) ......................................................................... 5

*Microstrategy, Inc. v. Netsolve, Inc.*,
  368 F. Supp. 2d 533 (E.D. Va. 2005).................................................................... 21

*Mongold v. Woods*,
  677 S.E.2d 288 (Va. 2009)...................................................................................... 19

*MP Leasing Corp. v. Colonna's Shipyard*,
  2009 WL 2581575 (E.D. Va. May 8, 2009)............................................................. 23

*Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*,
  791 F. Supp. 2d 33 (D.D.C. 2011) .......................................................................... 23

*Net Connection v. GWBEH, LLC*,
  67 Va. Cir. 150 (2005) ............................................................................................ 18

*Onyeoziri v. Spivok*,
  44 A.3d 279 (D.C. 2012)................................................................................... 23, 24

*Osseiran v. Int'l Fin. Corp.*,
  498 F. Supp. 2d 139 (D.D.C. 2007) ........................................................................ 20

*Plesha v. Ferguson*,
  725 F. Supp. 2d 106 (D.D.C. 2010) .................................................................. 20, 21

*Powertech Tech., Inc. v. Tessera, Inc.*,
  872 F. Supp. 2d 924 (N.D. Cal. 2012) ...................................................................... 5

*Remeikis v. Boss & Phelps, Inc.*,
  419 A.2d 986 (D.C. 1980).................................................................................. 13, 14

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
  682 F.3d 1043 (D.C. Cir. 2012) .............................................................................. 16

*Sawabeh Info. Servs. Co. v. Brody*,
  832 F. Supp. 2d 280 (S.D.N.Y. 2011) ..................................................................... 21

*SEC v. Lee*,
  720 F. Supp. 2d 305 (S.D.N.Y. 2010)..................................................................... 16

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ................................................................ 9

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
  337 B.R. 791 (Bankr. S.D.N.Y. 2005) ................................................. 10

*Simbeck, Inc. v. Dodd-Sisk Whitlock Corp.*,
  44 Va. Cir. 54 (1997) ............................................................................ 23

*Smith v. Henderson*,
  2013 WL 5592905 (D.D.C. Oct. 10, 2013) ......................................... 20

*Smith v. Railworks Corp.*,
  2011 WL 2016293 (S.D.N.Y. May 17, 2011) ........................................ 5

*Smith v. Wash. Post Co.*,
  962 F. Supp. 2d 79 (D.D.C. 2013) ........................................................ 15

*Soley v. Wasserman*,
  823 F. Supp. 2d 221 (S.D.N.Y. 2011) ................................................... 16

*Speedmark Transp., Inc. v. Mui*,
  778 F. Supp. 2d 439 (S.D.N.Y. 2011) ..................................................... 5

*Superlease Rent-A-Car, Inc. v. Budget Rent-A-Car of Md., Inc.*,
  1989 WL 39393 (D.D.C. Apr. 13, 1989) .............................................. 16

*T Street Dev., L.L.C. v. Dereje & Dereje*,
  2005 WL 3466651 (D.D.C. Dec. 19, 2005) .......................................... 21

*Telesaurus VPC, LLC v. Power*,
  623 F.3d 998 (9th Cir. 2010) .................................................................. 9

*Trs. of Empire State Carpenters v. Dykeman Carpentry, Inc.*,
  2014 WL 976822 (E.D.N.Y. Mar. 12, 2014) ....................................... 16

*U.S. Smokeless Tobacco Mfg. Co. v. City of N.Y.*,
  708 F.3d 428 (2d Cir. 2013) ................................................................... 9

*Uhar & Co. v. Jacob*,
   840 F. Supp. 2d 287 (D.D.C. 2012) .................................................................. 18

*Victor v. Riklis*,
   1992 WL 122911 (S.D.N.Y. May 15, 1992) ...................................................... 10

*Waite v. Schoenbach*,
   2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010) .................................................... 10

*Whelan v. Abell*,
   48 F.3d 1247 (D.C. Cir. 1995) ............................................................................. 7

*Wolf v. Fed. Nat'l Mortg. Ass'n*,
   512 F. App'x 336 (4th Cir. 2013) ...................................................................... 19

**Statutes, Rules, and Other Authorities**

11 U.S.C. § 108 ........................................................................................................ 25

19 C.J.S. Corporations § 909 (2014) ...................................................................... 12

47 U.S.C. § 332(c)(3)(A) .......................................................................................... 8

Del. Code Ann. tit. 8, § 259 ................................................................................... 12

Fed. R. Civ. P. 8(d) ................................................................................................. 20

N.Y. Civ. Rights Law § 70-a(1) ............................................................................... 8

Uniform Commercial Code § 8.1-203 ................................................................... 19

## INTRODUCTION

At every turn of their motion to dismiss, defendants ask this Court to either reject the facts as pleaded or otherwise resolve disputed factual issues in their favor. Those disputes include (but are hardly limited to) the following:

- The timing and extent to which LightSquared disclosed its plans to launch a broad terrestrial network, Mem. in Supp. of Mot. to Dismiss, Dkt. 50 ("Mot.") 25 n.10;

- Whether LightSquared reasonably relied on defendants' promises regarding their receiver designs and future conduct, *see* Mot. 16–17, 27–28;

- Whether defendants received a valuable service and/or were enriched by LightSquared's concessions, *see* Mot. 17–18;

- The extent of defendants' knowledge of LightSquared's contractual relationships with third parties, *see* Mot. 43;

- The precise terms of defendants' promises to LightSquared, *see* Mot. 2, 10–14, 18;

- The extent and timing of defendants' knowledge regarding the parameters of LightSquared's network, *see* Mot. 25;

- Whether LightSquared was "capable of testing for receiver overload," *see* Mot. 28;

- Whether defendants had exclusive, proprietary knowledge about the design of the GPS receivers they designed and manufactured, including the susceptibility of those receivers to overload, *see* Mot. 32;

- The extent of the corporate defendants' control over USGIC, *see* Mot. 38–41;

- Whether defendants' tortious interference with LightSquared's contracts with third parties was "improper," *see* Mot. 43; and

- Whether defendants had a duty to disclose the susceptibility of their GPS receivers to overload, *see* Mot. 30–33.

Needless to say, none of those factual disputes can be resolved at the pleadings stage, and defendants' insistence on injecting them into the case at this early point only proves why their motion to dismiss should be denied. When, as required, those facts are construed in LightSquared's favor and as alleged in the complaint, there is simply no question (as defendants implicitly recognize) that LightSquared has more than adequately pleaded claims for contractual, quasi-contractual, and tort relief. This Court should thus deny defendants' motion to dismiss.

## COUNTER-STATEMENT OF FACTS

Defendants' statement of the facts directly conflicts with the complaint. According to de-

fendants, LightSquared's activities from 2002 to 2010 focused on launching a **satellite-based** network.  *See, e.g.*, Mot. 3.   It was only in "November 2010," defendants argue, that LightSquared revealed its intent to launch a **terrestrial** network using a large number of land-based transmitters—what they call the "Terrestrial Plan." Mot. 3–4.[1]  Defendants argue that this purported change of plans gave rise to the "different concern [of] widespread GPS 'receiver overload,'" and that, as a result, they were justified in not disclosing that concern earlier.  Mot. 4.

Defendants' version of events cannot be squared with the facts as pleaded (or as they actually occurred).  LightSquared disclosed (and defendants knew of) its plans to launch a nationwide terrestrial network **as early as 2003**—not in "November 2010" as defendants now claim. *See* LightSquared's Am. Compl., Dkt. 42 ("LAC") ¶¶ 3, 9–10, 60–61, 65, 67, 69.  In September 2003, defendant USGIC described LightSquared's network as including "potentially **tens of thousands** of ATC [*i.e.*, terrestrial] wireless base stations," resulting in "potentially **millions** of [LightSquared] mobile terminals operating in ATC mode."  LAC ¶ 61.[2]  And by 2005, the FCC had authorized LightSquared to operate an **unlimited** number of terrestrial base stations at power levels that were significantly higher than previously allowed.  LAC ¶¶ 9, 67, 136(e).  Thus, the FCC has emphasized that "'[t]he GPS community has been on notice since 2003 that the predecessor to LightSquared was planning on providing terrestrial service in [the LightSquared Band].'"  LAC ¶ 10.  As put by then-FCC Chairman Julius Genachowski: "[i]t should not be a surprise to anyone involved in the LightSquared matter that the company was planning for some time to deploy a major terrestrial network in the spectrum adjacent to GPS."  LAC ¶ 110.

In attempting to dispute the facts as alleged, defendants argue that LightSquared's 2010 application to operate terrestrial-only handsets "raised, for the first time, the prospect of widespread GPS receiver overload."  Mot. 6, 30 n.11.  But that makes no sense.  As the FCC has ex-

---

[1]   Defendants' insistence that LightSquared did not announce its terrestrial network until November 2010 appears repeatedly in and is the lynchpin of their motion.  *See* Mot. 3–5, 10, 12–13, 18, 25 & n.10, 30 n.11, 32 n.12.

[2]   Emphasis is added unless otherwise noted, and exhibits to the Declaration of Devin A. De-Backer are cited as "Ex."

plained, defendants' overload concerns were "associated with LightSquared's planned terrestrial base stations rather than the mobile handsets at issue in the *[Handset] Waiver Order*."  Public Notice, Ex. L1 at 3–4 (FCC Feb. 15, 2012).  The potential for receiver overload thus was (or should have been) known to defendants as early as 2003 (when LightSquared stated its plan to launch a terrestrial wireless network) and no later than 2005 (when LightSquared was authorized to deploy an unlimited number of base stations).  *See* LAC ¶¶ 9, 67, 136(e).  The 2010 handset waiver application did nothing to change the fundamental parameters of LightSquared's network and defendants' attempt to portray that application as a tipping point is revisionist history.[3]

With defendants' attempts to rewrite the facts set aside, the remainder of the allegations in the complaint set forth a straightforward theory of liability.  After announcing its plans to launch a terrestrial network, LightSquared commenced private negotiations with defendants to ensure that GPS operations would be compatible with LightSquared's network.  Defendants told LightSquared that such compatibility would be assured so long as LightSquared took steps to limit out-of-band emissions.  LAC ¶¶ 57, 80.  The parties negotiated contractual agreements in which LightSquared agreed to reduce its out-of-band emissions.  LAC ¶¶ 55, 150, 157.  In exchange, defendants promised not to object to LightSquared's terrestrial network based on then-knowable sources of potential interference, and to conduct future operations in a way that would not interfere with LightSquared's network.  LAC ¶¶ 57, 80, 157, 165.  Defendants then represented to LightSquared that "all relevant issues" had been resolved.  LAC ¶¶ 57, 135.  With that agreement in place—and with out-of-band interference issues resolved—LightSquared relied on

---

[3]    In a footnote, defendants claim that the Integrated Service Rule "effectively precluded significant receiver overload" because it "required handsets to continue to receive interference-free satellite communications."  Mot. 6 n.5.  That is, as a factual matter, wrong.  The Integrated Service Rule did not require handsets to provide "interference-free satellite communications," but required only that handsets have the capability for using satellite and terrestrial communication.  *See* 2003 Order, Ex. L2 ¶¶ 99–101.  By waiving this rule, the FCC simply authorized LightSquared to begin using single-mode handsets that lacked the capability for satellite communications.  That had no effect on whether pre-existing dual-mode handsets could, in practice, operate only on terrestrial networks.  *See id.* ¶ 1.

defendants' representations to invest billions in its network.  LAC ¶¶ 88–93, 95, 120, 188, 197.

Years after those investments were made and those contracts consummated, however, defendants revealed that they had misrepresented the nature of their GPS receivers.  Out-of-band emissions were not the ***only*** way in which LightSquared's network could interfere with defendants' GPS products—despite defendants' prior representations to the contrary.  LAC ¶¶ 98–99. Instead, unbeknownst to LightSquared, the FCC, or other relevant stakeholders, defendants' GPS products had been deliberately designed to receive signals from ***LightSquared's*** assigned portion of the spectrum, subjecting them to overload from the terrestrial network LightSquared had long been working to deploy.  LAC ¶¶ 102–03.  This was not a "new" problem.  Mot. 5.  Defendants had long known that they had been designing, manufacturing, and selling GPS receivers that were calibrated to wrongfully receive signals in the spectrum on which LightSquared planned to launch its terrestrial network.  LAC ¶ 9.  And yet despite having that knowledge, and despite having been ***explicitly approached*** by LightSquared for the ***very purpose*** of identifying and resolving potential interference concerns, defendants chose not to disclose the potential for receiver overload and to instead misrepresent the potential for interference.  LAC ¶¶ 112–16.  Defendants then stood idly by while LightSquared invested billions to deploy a network defendants knew all along they would never permit to become operational.  LAC ¶¶ 137–38.

The reasons why defendants engaged in such deception—whether it was for commercial gain, to hide the truth of their own faulty products, or to drive out a potential competitor—are irrelevant.  What matters is that these facts establish that defendants are liable for damages.  Defendants negligently misrepresented the nature of their GPS receivers when they told LightSquared that its network would not interfere with those receivers so long as out-of-band emissions were limited.    Defendants breached their contracts with, and promises to, LightSquared when they later opposed the LightSquared network and continued to manufacture receivers incompatible with that network.  Defendants were unjustly enriched by the costly concessions LightSquared made, which enabled defendants to produce lower cost receivers.  And defendants deliberately undercut LightSquared's well-known actual and anticipated business re-

4

lationships in a calculated attempt to prevent the deployment of LightSquared's network.

## CHOICE OF LAW

LightSquared believes that the District of Columbia has the most significant contacts with this case, *see In re Gaston & Snow*, 243 F.3d 599, 607–08 (2d Cir. 2001), and thus that D.C. law should apply to its claims.  Defendants Garmin, Trimble, and Deere established and controlled ad hoc organizations, USGIC and The Coalition to Save Our GPS, in Washington, D.C. specifically to communicate with LightSquared and represent the GPS industry's interests with respect to the planned terrestrial network.  *See* LAC ¶¶ 19–20, 48, 51, 69, 74, 76–77, 79, 109, 135–36, 158, 166.  However, this Court need not resolve choice-of-law issues because neither Virginia nor D.C. law supports dismissal.  If the Court determines that choice of law would be dispositive, LightSquared requests an opportunity to conduct discovery, briefing, and a hearing on choice-of-law issues.  *See, e.g.*, *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011); *Smith v. Railworks Corp.*, 2011 WL 2016293, at *6 n.12 (S.D.N.Y. May 17, 2011).

## ARGUMENT

### I.    The *Noerr-Pennington* Doctrine Does Not Apply.

LightSquared's claims are not barred by the *Noerr-Pennington* doctrine.  **First**, as this Court previously suggested, *Noerr-Pennington* does not bar LightSquared's contract or quasi-contract claims.  *See* Order, Dkt. 33 at 7–8 (Jan. 31, 2014); *see, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1195–96 (W.D. Wash. 2013) (same); *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1078 (W.D. Wis. 2012) (similar); *Powertech Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 931–32 (N.D. Cal. 2012) (similar).  Those claims all arise from private communications and conduct between the parties, not from any party's petitioning of the government.  Courts have broadly held that contract and quasi-contract claims based on agreements reached in private negotiations fall well outside the scope of *Noerr-Pennington*—even if some government proceeding provided the backdrop for the negotiations.  *See, e.g.*, *Barnstead Broad. Corp. v. Offshore Broad. Corp.*, 865 F. Supp. 2, 7 (D.D.C. 1994); *In*

5

*re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 395 (D. Mass. 2013); *see also Andrx Pharm., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 818–19 (D.C. Cir. 2001).

**Second**, *Noerr-Pennington* does not apply to LightSquared's tort claims.  This case is very different from those in which a plaintiff seeks to impose liability for statements made in "threat letters sent prior to litigation," "settlement offers," or "for publicity related to [a government] petition."  Mot. 20.  All of that conduct "share[s] a common purpose and anticipate[s] a common end: the persuasion of a [government] officer to obtain a redress of grievances."  *In re Nexium*, 968 F. Supp. 2d at 396–97.  LightSquared's claims, in contrast, are premised entirely on statements, representations, and omissions made to LightSquared during **private** negotiations about **private** issues—conduct that even defendants have described as "private sector" communications.  *See* LAC ¶¶ 51–52.  Those tort claims thus seek to hold defendants liable for violating general duties that every private party owes to each other when conducting commercial activity—duties that are wholly independent of any petitioning of the government.  *See, e.g.*, *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 507 (1988); *Litton Sys., Inc. v. AT&T Co.*, 700 F.2d 785, 807 (2d Cir. 1983).  Courts agree that claims premised on such run-of-the-mill tort duties are not barred by *Noerr-Pennington*.  *See, e.g.*, *Indian Head, Inc. v. Allied Tube & Conduit Corp.*, 817 F.2d 938, 943 (2d Cir. 1987) (*Noerr-Pennington* does not immunize conduct because it "caused independent injury to" the plaintiff, even though its conduct "indirectly influenced" the government); *Clinton v. Brown & Williamson Holdings, Inc.*, 2013 WL 3111122, at *10–11 (S.D.N.Y. June 20, 2013) (similar, when defendant's lobbying of Congress "was not an independent reason to impose liability for [the] failure to warn claim").

Defendants nonetheless argue that LightSquared is seeking to hold them liable for conduct "**incidental**" to petitioning—by which they apparently mean that *Noerr-Pennington* can apply to entirely private conduct, if it bears some relation to an ongoing government proceeding.  That is wrong.  For one thing, while *Noerr-Pennington* might immunize activities that are "incidental" to petitioning from **antitrust** liability, it does not immunize such incidental conduct from **non-antitrust** liability, such as LightSquared's tort claims. *See, e.g.*, *Cardtoons, L.C. v. Major*

*League Baseball Players Ass'n*, 208 F.3d 885, 893 (10th Cir. 2000) (en banc).  For another, it takes *Noerr-Pennington* much too far to argue that "private sector" negotiations should be entirely shielded from liability because they occurred concurrently with ongoing FCC proceedings. *See* Mot. 19–20.  *Noerr-Pennington* does not apply simply because there is some ongoing government proceeding in the background, even if parties' private communications relate to that proceeding.[4]  *See, e.g., Andrx Pharm.* 256 F.3d at 818–19; *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 212–13 (E.D.N.Y. 2003).  Were it otherwise, parties could not recover for breach of private settlement agreements—a conclusion courts have been "largely uniform" in rejecting.  *In re Nexium*, 968 F. Supp. 2d at 395.

      **Third**, although defendants point out that the complaint discusses how they "petitioned for reconsideration of an FCC order," "submitted objections to the FCC," and "commented to the FCC regarding the overload issue," defendants conveniently neglect to mention that LightSquared is not seeking to impose **liability** on defendants for any of that conduct.  *See* Mot. 19.  Instead, LightSquared seeks to impose liability only for defendants' private representations made directly to LightSquared.  This case is thus nothing like *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339 (S.D.N.Y. 2004), in which the plaintiff sought to hold the defendant liable for a letter urging the government to reconsider a business-license application—that is, direct petitioning activity.  *See id.* at 341–42.  By contrast, nothing in the complaint here premises liability on any misrepresentation or statement defendants made to the FCC.[5]

      **Fourth**, LightSquared's claims do not seek to hold defendants liable for "the FCC's . . .

---

[4]   Nor does it matter that the FCC later voluntarily chose to adopt the parties' agreed-upon out-of-band emission limits.  *See Indian Head*, 817 F.2d at 945 (irrelevant that the "government[] usually do[es] accept the recommendations embodied" in a private electrical code).  Defendants' private communications "caused independent . . . injury to [LightSquared and] should not be excused merely because [they] also indirectly influenced" the FCC.  *See id.*

[5]   Even if LightSquared's claims *were* based on misrepresentations to the FCC, *Noerr-Pennington* does not bar claims that "a party knowingly and willfully makes false representations to the government."  *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 368 (S.D.N.Y. 2002); *Litton Sys.*, 700 F.2d at 811; *see also Whelan v. Abell*, 48 F.3d 1247, 1249 (D.C. Cir. 1995); *In re Am. Con'tl Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1448 (D. Ariz. 1992).

denial of approval for the Terrestrial Plan." Mot. 21. LightSquared seeks damages for invest-ments and contracts it made from 2003 onward in reliance on defendants' promises and represen-tations. *See* LAC ¶¶ 133–37. Those damages were caused by defendants' private misrepresenta-tions to LightSquared: had defendants made LightSquared aware of the technical issue of receiv-er overload and their intent to object to LightSquared's network, LightSquared would "not have invested these amounts or would have invested substantially less in deploying its network." LAC ¶ 138. LightSquared's claims thus arise from the investments it made from 2003 onward and logically cannot result from the FCC's actions years later. Defendants contradict their own caselaw, *see* Mot. 21, by trying to impermissibly "reason backwards from the legislative impact of [their conduct] to the conclusion that the conduct at issue . . . is 'political.'" *Allied Tube*, 486 U.S. at 507. To the extent defendants are attempting to argue that the FCC's actions—and not defendants' conduct—were the intervening cause of LightSquared's damages, they have raised a factual issue that cannot be resolved at the pleadings stage. *See, e.g.*, *In re Sept. 11 Prop. Dam-age & Bus. Loss Litig.*, 468 F. Supp. 2d 508, 525 (S.D.N.Y. 2006).[6]

## II.   The Federal Communications Act Does Not Preempt LightSquared's Claims.

LightSquared's claims are not preempted by § 332 of the Federal Communications Act. As relevant here, § 332 preempts only those claims that seek to regulate "the entry of" mobile telecommunications services into the market. 47 U.S.C. § 332(c)(3)(A). Nothing in LightSquared's complaint, however, asks this Court to overrule or second-guess any FCC deci-sion regarding LightSquared's authority to offer such services. Indeed, in resolving LightSquared's claims, this Court can and should assume that the FCC ***correctly*** decided all of the issues before it—an analytical starting point making it impossible to conclude that LightSquared's claims ask for the reassessment or reexamination of any FCC decision.

LightSquared's claims are routine tort and contract claims seeking damages for defend-

---

[6]   Likewise, because LightSquared's claims do not "involv[e] public petition and participation," N.Y. Civ. Rights Law § 70-a(1), New York's anti-SLAPP statute does not apply, *see* Mot. 8.

ants' breach of their contractual obligations and their promises, misrepresentations, and omissions about the nature of their receivers. *See, e.g.*, *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1039 (9th Cir. 2010) (holding that § 322 does not prevent courts from adjudicating breach-of-contract claims). The FCC has itself determined that "monetary damages based on state contract or tort causes of action" are "not generally preempted by Section 332." *In re Wireless Consumers Alliance, Inc.*, 15 FCC Rcd. 17021, 17040 (2000). And that interpretation of § 332 is entitled to deference from this Court. *See, e.g.*, *Fedor v. Cingular Wireless Corp.*, 355 F.3d 1069, 1073 (7th Cir. 2004); *Shroyer*, 622 F.3d at 1039 n.2; *see also Farina v. Nokia Inc.*, 625 F.3d 97, 120 n.24 (3d Cir. 2010). Coupled with the presumption against preemption that usually applies in this context,[7] *see, e.g.*, *U.S. Smokeless Tobacco Mfg. Co. v. City of N.Y.*, 708 F.3d 428, 432 (2d Cir. 2013), § 332 does not preempt LightSquared's claims.

This case is also a far cry from those cited by defendants, which involved lawsuits asking courts to impose different requirements than those already imposed by the FCC. *See Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 988 (7th Cir. 2000) (claims based on AT&T's failure to build more cellular towers preempted because the FCC was exclusively responsible for determining the cellular infrastructure); *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1010 (9th Cir. 2010) (tort claims asking the court to reexamine whether the defendant's use of spectrum violated its FCC license were preempted). LightSquared's claims, by contrast, will not require this Court to reverse or vacate the FCC's proposal to suspend LightSquared's terrestrial authority or permit LightSquared to circumvent any requirement imposed by the FCC. And in any event, defendants' caselaw has not withstood the test of time. *Bastien*'s "broad language" about § 332's preemptive scope "has been expressly rejected by the FCC." *Shroyer*, 622 F.3d at 1040-41.

## III.   LightSquared Has Stated Claims For Misrepresentation And Constructive Fraud.

LightSquared has more than adequately alleged the elements of negligent misrepresenta-

---

[7]   The presumption is "particular[ly] force[ful]" because defendants argue that § 332 preempts "field[s] traditionally occupied by the States"—*i.e.*, regulating private commercial relationships via contract, quasi-contract, and tort law. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008).

tion and constructive fraud.  Despite defendants' assertions otherwise, *see* Mot. 26,[8] Rule 9(b) does not apply to negligent misrepresentation or constructive fraud because neither requires intent to defraud.  *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) ("[T]he great majority of cases hold that since a cause of action based on constructive fraud does not require proof of fraud, the heightened pleading requirements of Rule 9(b) are not applicable."); *Waite v. Schoenbach*, 2010 WL 4456955, at *6 (S.D.N.Y. Oct. 29, 2010) (Berman, J.) (claim for constructive fraudulent conveyance not subject to Rule 9(b)).  But even if Rule 9(b) applied, LightSquared pleaded these claims with specificity.

### A.    LightSquared Alleges Actionable Affirmative Misrepresentations.

The tortious misrepresentations[9] in this case are straightforward: Defendants told LightSquared that, if it limited out-of-band emissions, LightSquared's terrestrial network would not interfere with defendants' GPS receivers.  That was false: LightSquared's terrestrial network *did* interfere with defendants' GPS receivers (even after out-of-band emissions had been contained) because those receivers were designed to trespass on LightSquared's portion of the spectrum.  LAC ¶ 135.  The complaint (i) specifically identifies those misrepresentations, *see* LAC ¶¶ 135–36; (ii) identifies the individuals who made them, *see* LAC ¶¶ 51–53, 75–77; (iii) states the dates and locations at which those representations were made, *see* LAC ¶¶ 51–53, 75–77, 135–36; and (iv) explains why those representations were false, *see* LAC ¶¶ 8–9, 107, 112.

### 1.    Defendants' Representations Were Actually False.

To reconcile their previous assurances of compatibility with their current warnings of catastrophic overload, defendants argue that the network LightSquared launched in 2010 was

---

[8]    Defendants rely on cherry-picked, non-binding, and unpersuasive cases.  *CAC Group, Inc. v. Maxim Group, LLC*, 2012 WL 4857518, at *5 (S.D.N.Y. Oct. 10, 2012), cites to *a separate appendix* to *Aetna Casualty & Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (per curiam that never addressed the pleading standard).  On appeal in *CAC Group*, the Second Circuit did not rule on the appropriate pleading standard.  523 F. App'x 802 (2d. Cir. 2013).  The pleading standard in *Victor v. Riklis*, 1992 WL 122911 (S.D.N.Y. May 15, 1992), has generally not been followed since it was decided over 20 years ago.  *See Actrade*, 337 B.R. at 801.

[9]    Virginia courts recognize allegations of negligent misrepresentation as constructive fraud. *See Cmty. Bank & Trust Co. of Va. v. Bohannon*, 19 Va. Cir. 541 (1988).

materially different from the planned network approved by the FCC in 2003 and 2009. Mot. 27. As explained, *see supra* pp. 2–5, that is simply wrong: The key features of LightSquared's network were already established when defendants assured LightSquared that then-existing GPS receivers could coexist with LightSquared's planned network. The relevant features of the planned network did not materially change thereafter.

### 2.   LightSquared Alleges Actual And Reasonable Reliance.

Defendants' arguments regarding the reasonableness of LightSquared's reliance are ill-founded. *See* Mot. 27–28. The complaint includes detailed allegations explaining how and why LightSquared relied on defendants' representations and why that reliance was reasonable. *See, e.g.*, LAC ¶¶ 5, 88–95, 120, 134, 144–45. To the extent defendants argue otherwise, they have raised factual disputes. *See Bank of Montreal v. Signet Bank*, 193 F.3d 818, 834 (4th Cir. 1999).

LightSquared's reliance on defendants' misrepresentations regarding their own receiver design was reasonable. Defendants' receiver specifications are not disclosed to the FCC, are not publicly disclosed, and are claimed by defendants to be trade secrets. LAC ¶¶ 8, 35, 105, 107. Even a "sophisticated party" like LightSquared, *see* Mot. 27–28, was justified in relying on defendants' representations about the operation of their GPS receivers. *See, e.g.*, *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629–31 (4th Cir. 1999) (when information is not equally available to both parties or the defendant misleads the other party, a sophisticated plaintiff may reasonably rely on defendant's representations).[10] LightSquared's reliance was particularly justified given that the **entire point** of its discussions with defendants was to resolve all potential

---

[10]   The cases defendants cite, *see* Mot. 27–28, have little to do with negligent misrepresentation. *See Lopez v. Aeropostale, Inc.*, 2012 U.S. Dist. LEXIS 19956, at *17–18 (S.D.N.Y. Feb. 10, 2012) (Berman, J.) (rejecting an argument that language specifically removed from a settlement agreement could bind the parties); *Lawler v. Schumacher Filters Am., Inc.*, 832 F. Supp. 1044, 1052 (E.D. Va. 1993) (contract forum selection clause); *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 934 (D.C. 1992) (parol evidence rule); *Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp.*, 172 F. Supp. 2d 79, 86 (D.D.C. 2001) (quoting language from the International Court of Arbitration in Zurich, Switzerland discussing the scope of a contract).

sources of interference between its network and GPS receivers.  LAC ¶¶ 57, 79–80.[11]

Finally, LightSquared's continued execution of its business plan after September 2010 is not inconsistent with any claim of reliance.  Mot. 28.  Defendants did not fully disclose that their GPS products were critically flawed in September 2010.  LAC ¶ 97 ("On September 15, 2010, Defendants for the first time ***began to disclose opaquely*** [the design flaws].").  Only after PNT ExCom released the manipulated testing results, *see* LAC ¶ 131, did defendants fully reveal that their defective devices were so ubiquitous that the GPS industry would reject any proposed solution.  *See also C & E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 260–61 (D.D.C. 2007) (even after learning defendant's prices were "alleged[ly] defective," plaintiffs could have reasonably relied on defendant's misrepresentations until the deception's full scope became apparent).

### 3.   LightSquared's Corporate History Is Irrelevant.

Defendants cannot escape liability by drawing false distinctions between LightSquared and its predecessors-in-interest.  *See* Mot. 29–30.  It is well-established that corporate successors-in-interest succeed to the claims held by their predecessors—and thus LightSquared is entitled to bring the same claims that could have been brought by MSV or SkyTerra.  *See, e.g.*, 19 C.J.S. Corporations § 909 (2014); Del. Code Ann. tit. 8, § 259; *Engel v. Teleprompter Corp.*, 703 F.2d 127, 131 (5th Cir. 1983).  Defendants cite no authority to the contrary.

### 4.   LightSquared's Misrepresentation Claims Are Distinct From Its Contract Claims.

Finally, by arguing that LightSquared is trying to "transform a contract claim into a misrepresentation tort," Mot. 29, defendants attempt to obfuscate the clear differences between LightSquared's tort and contract claims.  *See Dunn Constr. Co. v. Cloney*, 682 S.E.2d 943, 946 (Va. 2009) ("[A] single act or occurrence can, in certain circumstances, support causes of action

---

[11]   Defendants suggest that instead of relying on their representations, LightSquared should have independently purchased and tested GPS devices.  *See* Mot. 28.  Nothing in law or logic required LightSquared to assume that defendants flouted accepted standards for receiver design, to ignore defendants' assurances, and to independently test defendants' receivers.  Tellingly, defendants cite no caselaw requiring LightSquared to do so.

both for breach of contract and . . . tort").  LightSquared's *tort* claims are based on defendants' misrepresentations about present facts: defendants falsely told LightSquared that its network would not interfere with their GPS receivers, so long as out-of-band emissions were limited. LAC ¶¶ 133–36.  LightSquared's *contract* claims, in contrast, allege that defendants breached promises of future conduct, including promises to not object to LightSquared's network based on then-knowable sources of interference.  *See* LAC ¶¶ 57, 80.

### B.    LightSquared Alleges An Actionable Failure To Disclose.

LightSquared has also more than adequately alleged that defendants tortiously failed to disclose their faulty receiver design (and thus the potential for GPS receiver overload), despite having an obligation to do so.  LAC ¶¶ 8, 35, 51–54, 75–77, 105–16, 135–36, 184–87, 193–96. That duty to disclose sprang from two, well-established legal doctrines.

*First*, defendants' proprietary knowledge concerning the design of their own GPS devices puts them in a position of superior knowledge, giving rise to a duty to disclose.  *See Bank of Montreal*, 193 F.3d at 829.  The fact that defendants' receiver designs were proprietary does not alone give rise to a duty to disclose.  But where (as here) a party enters into negotiations, possesses highly relevant information about the topic of the negotiations, and knows the information is important, that party has a duty to disclose it.  LAC ¶¶ 112–16; *see Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 990 (D.C. 1980) ("[E]ven silence about the material fact . . . can amount to a false representation in circumstances where [defendants] would be expected to speak[.]").

In arguing otherwise, defendants cite inapplicable New York cases, *see* Mot. 32–33, in which (unlike here) the concealed information was readily accessible to the plaintiff or only tangentially related to the actionable misrepresentations.  *See JP Morgan Chase v. Winnick*, 350 F. Supp. 2d 393, 402 (S.D.N.Y. 2004) (specialized knowledge of fiber-optic business irrelevant to *financial* misrepresentations); *Grand Union Mt. Kisco Emps. Fed. Credit Union v. Kanaryk*, 848 F. Supp. 446, 457 (S.D.N.Y. 1994) (no claim that treasurer had "superior knowledge" when plaintiff's auditors monitored treasurer's work); *In re Lehman Bros. Sec. & Erisa Litig.*, 2013

13

WL 3989066, at *5 (S.D.N.Y. July 31, 2013) (no allegations of superior knowledge).

*Second*, defendants had a duty to disclose the potential for receiver overload because only partially revealing their interference concerns was misleading. A duty to disclose arises where "one party takes actions which divert the other party from making prudent investigations," such as making a partial disclosure. *Bank of Montreal*, 193 F.3d at 829; *Langmaid v. Lee*, 86 Va. Cir. 118, 127–28 (2013); *Remeikis*, 419 A.2d at 989. Although LightSquared and defendants were involved in long-running discussions about potential interference with GPS receivers, LAC ¶¶ 46–61, 73–81, defendants only partially disclosed their interference concerns. LAC ¶¶ 57, 68, 78–79, 86–87, 98, 106–111, 135–36. That partial disclosure was misleading (and thus gave rise to a duty to disclose) because it led LightSquared to believe that all known sources of potential interference had been resolved. *Id.* Defendants' duty to disclose did not evaporate merely because the parties were engaged in "arm's-length" negotiations, *see* Mot. 31. Even in the context of commercial negotiations amongst sophisticated parties, a duty to disclose arises where one party has superior knowledge concerning relevant topics or makes a partial disclosure that is misleading. *Bank of Montreal*, 193 F.3d at 829; *see also Ehrlich v. Real Estate Comm'n*, 118 A.2d 801, 802 (D.C. 1955). Finally, contrary to what defendants argue, *see* Mot. 33, a negligent failure to disclose *is* actionable under Virginia law. *See Bank of Montreal*, 193 F.3d at 826–27 ("[C]onstructive fraud requires proof that a false representation of a material fact was made, ***innocently or negligently***."); *Langmaid*, 86 Va. Cir. at 126.

## IV.    LightSquared Has Stated Claims For Breach Of Contract.

LightSquared's complaint sets forth all the elements of a breach-of-contract claim: (1) In 2002 and 2009, LightSquared and defendants engaged in private negotiations to ensure the compatibility of LightSquared's network with GPS operations, LAC ¶¶ 51–55, 73–74; (2) the parties reached a contractual agreement (which defendants concede, Mot. 16); (3) LightSquared promised to forgo the use of large portions of its spectrum, redesign its equipment, and meet out-of-band emissions limits, LAC ¶¶ 55, 79–80, 157, 165; (4) defendants in return promised not to

14

raise any objections to the network based on then-knowable sources of interference, and to conduct future operations in a way that would not interfere with LightSquared's network, *see* LAC ¶¶ 57, 80; and (5) defendants breached those promises by manufacturing receivers that are designed to work only if they can receive signals from LightSquared's spectrum, by belatedly revealing that fact, and by opposing LightSquared's network on that basis, LAC ¶¶ 159, 167. Those detailed allegations are more than sufficient to state a claim for breach of contract. *See Smith v. Wash. Post Co.*, 962 F. Supp. 2d 79, 87 (D.D.C. 2013) ("Breach of contract claims not involving allegations of fraud or mistake may be pled generally and are not subject to a heightened pleading standard."); *Haughton v. Cognisight, LLC*, 953 F. Supp. 2d 478, 487 (W.D.N.Y. 2013) (complaint that sets forth "the general terms of the agreement, and the respective obligations of the parties" states claim for breach of contract).

Such contracts in the context of regulatory proceedings are hardly unusual. In *Barnstead Broadcasting*, 865 F. Supp. at 4–5, for example, two broadcasting companies who objected to the other's application to build a TV station resolved those objections through a private contract. Each agreed to withdraw its FCC objections, to "refrain from filing further objections," and "not to interfere 'in any way'" with the other's construction. *Id.* at 4. When Offshore later objected to Barnstead's FCC application, Barnstead did what LightSquared has done—sued for breach of contract, misrepresentation and failure to disclose, and interference with business relationships. *Id.* At the preliminary-injunction phase, the court concluded that Offshore "got the benefit of" the agreement when Barnstead fulfilled its end of the bargain while "try[ing] now to deny" the same benefits to Barnstead. *Id.* at 7–8.

Defendants do not dispute the existence of similar contracts here. Instead, defendants resort to mischaracterizing the contractual promises alleged. For example, defendants characterize the complaint as alleging that they waived ***any and all*** FCC objections to LightSquared's network. *See* Mot. 2, 13. But the complaint actually alleges that defendants waived only those objections that ***could have been made at the time***—*i.e.*, objections to LightSquared's network that were based on then-knowable sources of potential interference. *See* LAC ¶¶ 57, 80. Similarly,

defendants mischaracterize the complaint as alleging that defendants promised a specific "Design Change" to their receivers.  *See, e.g.*, Mot. 1-2, 11, 13, 14, 16, 25.  But the complaint alleges that the operational parameters of defendants' receivers were unknown to LightSquared.  LAC ¶¶ 8, 35, 105, 145.  In any event, by disputing the specifics of their contractual obligations, defendants have raised factual issues that cannot be resolved on a motion to dismiss.  *See, e.g.*, *SEC v. Lee*, 720 F. Supp. 2d 305, 332 (S.D.N.Y. 2010); *Superlease Rent-A-Car, Inc. v. Budget Rent-A-Car of Md., Inc.*, 1989 WL 39393, at *6 (D.D.C. Apr. 13, 1989).[12]

### A.   Defendants' Arguments About The FCC Letters Are Irrelevant.

Defendants also argue that the parties' 2002 and 2009 letters to the FCC "do not contain the alleged promises."  Mot. 10 (capitalization removed).  That argument is directed at a pure straw-man: LightSquared does not, and never did, claim that the 2002 and 2009 letters to the FCC *are* the contracts themselves or represented the *entirety* of the parties' private agreement.  Instead, the letters *evidence* the parties' negotiations and describe *some*, but not all, of the parties' agreements.[13]  *See* LAC ¶¶ 54, 79, 158, 166.  Moreover, defendants' claim that the letters "would scarcely have . . . omitted" the parties' full agreement, Mot. 12, ignores the purposes for which the letters were prepared: to inform the FCC of those portions of the private contract *that were relevant to the FCC at the time*, *see* LAC ¶¶ 158, 166.  The parties had no reason to inform the FCC of their full agreement—particularly because defendants' promises to LightSquared concerned LightSquared's own business plans, not any decision by the FCC.[14]

When defendants are forced to acknowledge that the full contracts are not (and were not

---

[12]   Defendants' cases are inapposite.  *See* Mot. 13–14 (citing *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043 (D.C. Cir. 2012), a RICO case that says nothing about pleading standards for contract claims, and *Soley v. Wasserman*, 823 F. Supp. 2d 221 (S.D.N.Y. 2011), a breach-of-contract case involving an implied-in-fact, not express, contract).

[13]   LightSquared's original complaint made the same allegations.  *See* Compl. ¶ 50.

[14]   Defendants also argue that the letters are not "enforceable against" Deere, Garmin, or Trimble because they were signed by the USGIC.  Mot. 10 n.7.  That argument is irrelevant because the letters are not the agreements.  But it also ignores the complaint's fulsome alter-ego allegations, *see* LAC ¶ 19, and its identification of individual employees of defendants who participated in contract negotiations, *see* LAC ¶¶ 48, 51, 54, 74, 76, 157; *see Trs. of Empire State Carpenters v. Dykeman Carpentry, Inc.*, 2014 WL 976822, at *4 (E.D.N.Y. Mar. 12, 2014).

intended to be) reflected in the FCC letters, Mot. 11, they fall back on attacking the sufficiency of LightSquared's allegations, arguing that the complaint does not allege "in detail the substance of any specific promises purportedly made during the negotiations," Mot. 12.   That is wishful thinking.   The complaint alleges in great detail the negotiations held by the parties, including the individual participants, the dates, times, and locations, the matters discussed, and the agreements reached.   *See* LAC ¶¶ 51–58, 74–81.   And the complaint alleges the "specific promises" that defendants made: that they would not raise any new objections to LightSquared's network based on then-known sources of potential interference, and that they would conduct future operations in a way that would not interfere with LightSquared's network.   *See* LAC ¶¶ 57, 80, 157, 165.

### B.   Defendants' Factual Claims About The Scope Of LightSquared's Terrestrial Network Cannot Support Dismissal.

Defendants further argue that they could not have breached the 2002 and 2009 contracts because they "are not alleged to have objected . . . to any operations authorized by [the FCC's] 2003 and 2010 orders," but instead opposed "only LightSquared's 2010 application for previously unauthorized operations, *i.e.*, the Terrestrial Plan."   Mot. 12–13.   That argument is predicated on the same factual claims refuted above—namely, that LightSquared's terrestrial network was not revealed until "November 2010."   As explained, *see supra* pp. 2–5, defendants were aware ***by 2003*** that LightSquared intended "to launch a wireless network that would include 'tens of thousands' of terrestrial base stations and 'millions' of handsets."   LAC ¶ 86.   Thus, when defendants objected to LightSquared's network in September 2010, they ***were*** objecting to "operations authorized by [the FCC's] 2003 and 2010 orders" because those orders included all the details relevant to defendants' overload concerns.   Mot. 12.[15]

---

[15]   Similarly, LightSquared's contract claims are not "irreconcilable with [the] allegations regarding [defendants'] 2009 Alleged Promise."   Mot. 13.   Unlike the overload concerns raised in late 2010, the femtocell-related issues that precipitated the parties' 2009 negotiations ***were in fact new***—they concerned LightSquared's never-before-mentioned plan to install indoor base stations.   Defendants' receiver-overload objections, in contrast, were premised entirely on facts known as early as 2003 and no later than 2005.   *See* LAC ¶¶ 3, 9–10, 60–61, 65, 67, 69, 136(e).

### C.     The Statute Of Frauds Does Not Bar LightSquared's Claims.

Finally, the statute of frauds does not bar LightSquared's claims.  *See* Mot. 14.  This case falls well within the "exception to th[e] statute [of frauds]" for contracts that have been partially performed.  *Fitzgerald v. Hunter Concessions, Inc.*, 710 A.2d 863, 865 (D.C. 1998) (citation and internal quotation marks omitted).  Defendants partially performed the 2002 and 2009 agreements by withdrawing their FCC objections and supporting LightSquared's licensing in 2003 and 2010.  LAC ¶¶ 61, 82.  LightSquared, in turn, fulfilled its obligations by restricting the use of its spectrum, altering its equipment, and restricting out-of-band emissions.  LAC ¶¶ 55–56, 150.  That partial performance defeats application of the statute of frauds.  *See, e.g.*, *Fitzgerald*, 710 A.2d at 865; *Net Connection v. GWBEH, LLC*, 67 Va. Cir. 150, 152 (2005).

Even if the statute of frauds did apply, the enforceable written contract need not exist on a single piece of paper.  To the contrary, "multiple writings may be used to defeat a plea of the statute of frauds."  *C. Porter Vaughan, Inc. v. DiLorenzo*, 279 Va. 449, 457 (2010).  That is precisely the case here: The complaint points to multiple writings—including emails, correspondence, and the FCC letters—that "memorialized" and "reflected . . . the terms" of both agreements.  LAC ¶¶ 51–54, 76–77, 79, 158, 166; *see, e.g.*, LAC ¶ 61 (2003 USGIC letter described LightSquared as a "good spectrum neighbor" that, through "careful industry negotiations," helped find a solution to a "unique, and particularly harmful, interference case for GPS"); *H&H Assocs., LC v. Big John's Auto Recycling, LLC*, 86 Va. Cir. 74, 75–76 (2012) (denying motion to dismiss because plaintiff "alleged sufficient facts to support" defenses to statute of frauds); *Uhar & Co. v. Jacob*, 840 F. Supp. 2d 287, 291–92 (D.D.C. 2012) (similar).

## V.     LightSquared Has Stated A Claim For Breach Of Implied Covenant.

None of defendants' arguments against LightSquared's implied-covenant claim has merit.  *First*, while it is true that failure to act in good faith is not an independent **tort**, Virginia implies a covenant of good faith and fair dealing into every contract and a breach of that covenant is actionable as a ***breach of contract***.  *See, e.g.*, *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d

443, 450–51 (E.D. Va. 2009).[16]  Breach of the implied covenant is thus a violation that is separate and apart from a breach of the explicit terms of the contract (such as the allegations described above) and it is actionable as a separate claim.  *Id.*

*Second*, the assertion that Virginia "does not recognize an implied covenant of good faith and fair dealing outside of the U.C.C. context" is incorrect.  Mot. 17.  The Fourth Circuit recently applied the covenant of good faith to a non-U.C.C. contract, stating that "[i]n Virginia, *every* contract contains an implied covenant of good faith and fair dealing."  *Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 345 (4th Cir. 2013) (per curiam).  Defendants' only support to the contrary is a single unpublished, non-binding case, whose overbroad dicta misconstrued the holding in *Greenwood Associates, Inc. v. Crestar Bank*, 248 Va. 265 (1994).[17]

*Third*, the complaint explains **in detail** how defendants breached the covenant of good faith.  The entire point of these contracts was to resolve all potential problems that defendants had with LightSquared's network.  While defendants enjoyed the benefits of LightSquared's compliance, defendants purposefully acted in bad faith by failing to inform LightSquared that for many years they had been selling GPS receivers designed to trespass on LightSquared's spectrum.  LAC ¶ 96, 112–16.  Defendants also evaded the spirit of the contract when they manipulated compatibility tests to overstate the nature of overload issues.  LAC ¶¶ 127–32.

## VI.   LightSquared Has Stated A Claim For Promissory Estoppel.[18]

Defendants' arguments about LightSquared's promissory-estoppel claim largely rehash their assertion that the complaint does not allege a specific promise.  Mot. 15.  As described

---

[16]   Breach of the implied covenant of good faith and fair dealing is an independent claim under D.C. law.  *C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 276 (D.D.C. 2009).

[17]   *Greenwood* held only that a plaintiff "failed to state a claim . . . for breach of the 'obligation of good faith' set forth in Code § 8.1-203 [the U.C.C.]."  248 Va., at 270.  Defendants cite *Jones v. Fulton Bank, N.A.*, 2013 WL 3788428 (E.D. Va. July 18, 2013), which misread *Greenwood* as applying to non-U.C.C. contracts.  Mot. 17.  *Jones* has been since affirmed by a Fourth Circuit panel that did not repeat the same mistake, *see Jones v. Fulton Bank, N.A.*, 2014 WL 1378438 (4th Cir. 2014) (without affirming trial court's overbroad dicta, explained that **U.C.C.** claim was properly dismissed because the U.C.C. does not apply to real estate contracts).

[18]   D.C. recognizes a cause of action for promissory estoppel, and similar quasi-contract claims are cognizable under Virginia law, *see Mongold v. Woods*, 677 S.E.2d 288, 292 (Va. 2009).

above, however, the complaint unequivocally states that defendants promised that "all relevant issues" concerning knowable sources of interference had been addressed and that future GPS operations could and would coexist with LightSquared's terrestrial network. *See, e.g.*, LAC ¶ 57. Those promises required that defendants not object to LightSquared's terrestrial network as authorized by the FCC and that they manufacture devices consistent with that planned network. LAC ¶¶ 57, 80, 143–47. The allegations describing these promises are more than sufficient to sustain a claim for promissory estoppel, which has a lower pleading threshold than breach-of-contract claims. *See* LAC ¶¶ 51, 53, 76, 79; *Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 147–48 (D.D.C. 2007) (promise that defendant "intended to sell" stock); *Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 145 (D.D.C. 2008) (promise that "if [plaintiff] took no action, his TWA mileage would automatically be converted to AAdvantage mileage").[19]

### A.   LightSquared May Plead Quasi-Contract Claims In The Alternative.

LightSquared's contract allegations do not "preclude" a promissory estoppel claim. Mot. 16. It is black-letter law that a plaintiff may plead quasi-contract claims in the alternative, particularly where the parties dispute the terms or significance of any formal contract. *See* Fed. R. Civ. P. 8(d); *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 136–37 (S.D.N.Y. 2012); *Adm'rs of Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 771 F. Supp. 2d 32 41 (D.D.C. 2011). Cases like *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010), state only that alternative pleading is inappropriate when an ***undisputed*** written contract governs the parties' conduct. Here, defendants clearly dispute the terms of the contracts.

### B.   The Amended Complaint Alleges Actual Reliance.

Finally, defendants argue that LightSquared "failed to plead actual reliance" because

---

[19]   Defendants' cases are off-point. *See* Mot. 15–16. *Smith v. Henderson*, 2013 WL 5592905, at *9 (D.D.C. Oct. 10, 2013), involved a "promise" made in governmental public statements that did not say what plaintiffs alleged. *Ascom Hasler Mailing Systems, Inc. v. U.S. Postal Service*, 885 F. Supp. 2d 156, 190 (D.D.C. 2012), evaluates a promissory estoppel claim ***after trial***, not at the pleadings stage. And *Hartog Rahal Foods, Inc. v. Quality Kitchen Corp.*, 1997 WL 118367, at *4 (S.D.N.Y. Mar. 14, 1997), is a ***summary-judgment*** opinion under New York law.

LightSquared's predecessors, MSV and SkyTerra, received defendants' promises.  Mot. 16.  Defendants cite no authority for that novel claim, and LightSquared has located none.  Defendants were not released from their promises when "MSV," and later "SkyTerra," changed its name to "LightSquared."  *See, e.g.*, *T Street Dev., L.L.C. v. Dereje & Dereje*, 2005 WL 3466651, at *7 (D.D.C. Dec. 19, 2005) (reliance sufficient if by plaintiff *or* its predecessor in interest).

LightSquared's reliance was also ***reasonable.***  Defendants' promises were the result of extensive technical negotiations between the parties, not "vague, oral assurances," Mot. 16.  "Defendants were well aware that, for over a decade, LightSquared had been in the process of deploying its nationwide wireless network" and that LightSquared relied entirely on defendants for operational information about GPS receivers.  LAC ¶¶ 144–45.  It was therefore reasonable for LightSquared to rely on defendants' promise that GPS operations could and would coexist with its network.  To the extent defendants contend otherwise, they have raised a factual dispute.  *See, e.g.*, *Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42, 49–50 (D.D.C. 2012) ("Whether a plaintiff's reliance was reasonable is a question of fact[.]"); *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 297, 304–05 (S.D.N.Y. 2011) (denying motion to dismiss based on reasonable reliance, which "is always nettlesome because it is so fact-intensive").

## VII.   LightSquared Has Stated Claims For Quantum Meruit And Unjust Enrichment.

The complaint sets out all the elements of an unjust enrichment/quantum meruit claim:[20] (i) LightSquared conferred a benefit on defendants by forgoing the use of 4 MHz of spectrum, making technical changes to its equipment, and restricting its power levels, *see* LAC ¶¶ 55–56, 79, 150–54, 178–79; (ii) defendants knew of those conferred benefits, *see* LAC ¶¶ 54–56; (iii) defendants "retained" that benefit by using LightSquared's concessions to manufacture lower-cost receivers and not having to recall or redesign GPS receivers, *see* LAC ¶¶ 154, 179; and (iv) it would be unjust to permit defendants to retain that benefit because LightSquared has never

---

[20]   These two claims share similar elements in both Virginia and D.C.  *See Plesha*, 725 F. Supp. 2d at 111; *Datastaff Tech. Grp., Inc. v. Centex Constr. Co.*, 528 F. Supp. 2d 587, 598 (E.D. Va. 2007); *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D. Va. 2005).

been compensated for its concessions, *see* LAC ¶ 12.  LightSquared effectively gave defendants an easement in its spectrum that allowed them to produce receivers that depended on that easement to operate—and defendants have kept that easement without compensating LightSquared.

Defendants' arguments are without merit.  *First*, the fact that LightSquared has not yet launched its wireless terrestrial network is irrelevant.  *See* Mot. 17–18.  The valuable service LightSquared provided was its intentional decision to forgo using portions of its spectrum and to make technical changes to its equipment.  Those commitments were "valuable" to defendants **regardless** of whether LightSquared ultimately activated its network, because they permitted defendants to "offer improved service to their customers, avoid incurring the expense of improv[ing] their own faulty receivers . . . , and sell hundreds of millions more GPS receivers from 2003 on, resulting in significant profits for Defendants."  LAC ¶¶ 55–56, 79, 154, 179.  In any event, arguments regarding valuation raise disputed factual issues inappropriate for a motion to dismiss.  *See, e.g.*, *Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 827 (E.D. Va. 2013); *Datastaff Tech. Grp.*, 528 F. Supp. 2d at 599.

*Second*, defendants' argument that LightSquared "received [the] agreed-upon consideration" is misleading at best.  Mot. 18.  Defendants selectively quote from LightSquared's complaint, which alleges not only that defendants would "withdr[a]w [their] pending objections," as defendants note, *see* Mot. 18, **but also** that defendants would not object to "LightSquared's operations as authorized in the 2003 ATC Order [and 2009 ATC Modification application]."  LAC ¶¶ 57, 80.  The withdrawal of their pending objections was hardly sufficient compensation for LightSquared forgoing the terrestrial use of hundreds-of-millions of dollars of spectrum and making millions of dollars of technical changes.  *See* LAC ¶ 56.  Instead, LightSquared was legally entitled to **full** compensation from defendants in the form of their future commitment not to oppose the terrestrial network using power levels and base stations authorized by prior FCC orders.  To the extent defendants argue otherwise, they raise a factual issue.  *See, e.g.*, *Direct Supply, Inc. v. Specialty Hosps. of Am.*, 878 F. Supp. 2d 13, 23 (D.D.C. 2012); *Atl. Credit & Fin. Special Fin. Unit, LLC v. MBNA Am. Bank*, 2001 WL 856704, at *5 (W.D. Va. June 4, 2001).

*Third*, LightSquared's quantum meruit and unjust enrichment claims are not precluded by its contract claims at this stage.  While LightSquared may not ultimately **recover** on both claims, **pleading** alternative theories of recovery is perfectly permissible, and provides no basis for dismissing the alternative claims.  *See Mendoza v. Cederquist*, 2009 WL 1254669, at *3 (E.D. Va. May 6, 2009); *Harrell*, 923 F. Supp. 2d at 826.[21]  Alternative pleading is particularly appropriate "where [as here] the plaintiff . . . claim[s] that any contractual rights were established through a combination of oral and written agreements."  *Mendoza*, 2009 WL 1254669, at *3.

## VIII.   LightSquared Has Stated Claims For Tortious Interference.

LightSquared has also stated claims for tortious interference with contract and prospective business relationships.  *See* LAC ¶¶ 201–16.[22]  Defendants do not (because they cannot) dispute (i) the **existence** of LightSquared's contractual and business relationships; (ii) that defendants **intentionally** interfered with those relationships; (iii) that such interference **caused** the termination of those relationships; and (iv) that LightSquared **suffered damages** as a result.  Instead, defendants raise a number of conclusory arguments that have no basis in law.

Defendants start by falsely claiming that "actual knowledge" is required.  Mot. 43.  It is not.  *See Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 791 F. Supp. 33, 58 (D.D.C. 2011) ("A party need not be shown to have had actual awareness[.]"); *Simbeck, Inc. v. Dodd-Sisk Whitlock Corp.*, 44 Va. Cir. 54, 62 (1997) ("The defendant must have actual knowledge . . . **or** knowledge of facts that, upon reasonable inquiry, should lead to disclosure of the existence of the contract or potential business relationship.").  The complaint alleges that LightSquared publicly disclosed the details of its business relationships, LAC ¶ 89–94, that defendants were aware of those relationships, LAC ¶ 203, and **why** defendants were aware—they knew that LightSquared required contracts and business relationships to launch its network, *see*

---

[21]   Defendants cite *MP Leasing Corp. v. Colonna's Shipyard*, 2009 WL 2581575, at *4 (E.D. Va. May 8, 2009), but that case addresses only alternative recovery at the **judgment** stage, not alternative pleading at the motion-to-dismiss stage.

[22]   Both Virginia and DC have the same elements.  *See Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 318 (Va. 2014); *see Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012).

LAC ¶¶ 89 (base stations), 91 (satellite), 92–93 (roaming contracts).

Defendants next claim that their wrongful conduct occurred "*before* LightSquared entered into the 2010-2012 business deals," but fail to explain why this matters at all. Mot. 43. That argument has no impact on LightSquared's claim for tortious interference with *prospective* business relationships (which always occurs before an actual contract is signed). LAC ¶¶ 209–16. As LightSquared entered into contracts, moreover, defendants *continued* to manufacture receivers that trespassed on LightSquared's network and to lead LightSquared to believe that they were working in good faith toward a solution. LAC ¶¶ 97, 102–03, 119–20, 127, 204, 212.

Defendants also *did* use "improper methods," Mot. 43, to interfere with prospective business relationships when they: violated contractual obligations and promises, LAC ¶¶ 7, 57, 80–81, 156–170; made express misrepresentations, LAC ¶ 135; failed to disclose when they had a duty to do so, LAC ¶¶ 136, 186; violated professional standards, LAC ¶¶ 10, 34–35, 98–105, 206, 214; improperly flooded the market with receivers that trespass on LightSquared's spectrum, LAC ¶¶ 98–105; knowingly hid these design flaws "from the beginning," LAC ¶¶ 112–16; manipulated compatibility tests to overstate overload issues, LAC ¶¶ 127–32; and refused to accept viable solutions, *id*. *See Duggin v. Adams*, 360 S.E.2d 832, 836–37 (Va. 1987) ("improper methods" include misrepresentations and violations of professional standards).

Finally, Virginia state courts do not require "direct or indirect contact," Mot. 43, between a defendant and plaintiff's business partner. *See, e.g.*, *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 597 (Va. 1984) (plaintiff sufficiently alleged tortious interference despite never alleging that defendant directly or indirectly contacted the proposed business partner). Defendants' arguments to the contrary are based on one non-binding federal case that misconstrued Virginia law. And contrary to defendants' assertions, the law protects against tortious interference by anyone, not just by competitors. *See Onyeoziri*, 44 A.3d at 291–92; *Allen Realty Corp.*, 318 S.E.2d at 597.

## IX.   LightSquared's Claims Are Not Time-Barred.

LightSquared's claims are not time-barred. The key question for statute-of-limitations

purposes is when the various claims accrued. Claims for breach of contract, breach of implied covenant, quantum meruit, and unjust enrichment do not accrue until a defendant either breaches an obligation (for the express contract claims) or commits a wrongful act rendering enrichment unjust or triggering a duty of restitution (for the implied contract claims). *See, e.g.*, *Blakely v. Baldwin*, 1984 WL 276231, at *3 (Va. Cir. Ct. Feb. 23, 1984).

None of the contract or quasi-contract claims accrued until September 2010—when defendants opaquely began to disclose overload concerns and opposed rollout of the LightSquared network. *See* LAC ¶¶ 97, 159, 224. That act breached defendants' commitment not to oppose a terrestrial network launched on the basic technical parameters made known to defendants as early as 2003. LAC ¶¶ 57, 80. Defendants' focus on the fact that they have manufactured defective receivers "at least since 2003," Mot. 45, is irrelevant. LAC ¶ 7. It conflates the accrual of LightSquared's claims with the period during which defendants have been enriched. Although defendants have retained the numerous valuable benefits bestowed upon them by LightSquared since at least 2003, LightSquared's claims for quantum meruit and unjust enrichment did not accrue until defendants actually opposed LightSquared's network for the first time in 2010.

Even if some of LightSquared's claims did accrue before 2010, the statute of limitations was tolled because of defendants' fraudulent concealment. Defendants hid their wrongdoing through numerous affirmative misrepresentations to LightSquared, preventing LightSquared from discovering its claims. *See* LAC ¶¶ 223–27. The *earliest* that the statute of limitations could begin to run was thus in 2010 when defendants *opaquely* began to disclose their wrongdoing, and have been tolled since LightSquared filed for bankruptcy in 2012. *See* 11 U.S.C. § 108; *see, e.g.*, *Healy v. Chesapeake Appalachia, LLC*, 2011 WL 24261, at *12 (W.D. Va. Jan. 5, 2011) (holding fraudulent concealment would toll statute of limitations for breach of contract); *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 119 (D.D.C. 2012) (similar under D.C. law).

## CONCLUSION

For the foregoing reasons, this Court should deny defendants' motion to dismiss.

Dated:  July 29, 2014                              Respectfully submitted,

                                        By:   /s/ *Eugene F. Assaf, P.C.*
                                              Eugene F. Assaf, P.C. (*pro hac vice*)
                                              K. Winn Allen (*pro hac vice*)
                                              Rebecca L. Taibleson (*pro hac vice*)
                                              Devin A. DeBacker (*pro hac vice*)
                                              KIRKLAND & ELLIS LLP
                                              655 Fifteenth Street, N.W.
                                              Washington, D.C.  20005
                                              Telephone: (202) 879-5000
                                              Fax: (202) 879-5200

                                              *Attorneys for LightSquared Plaintiffs*

## CERTIFICATE OF SERVICE

I, Eugene F. Assaf, hereby certify that on July 29, 2014, a copy of the foregoing was filed

using the Court's CM/ECF system, which sent a copy to all parties receiving electronic notices in

this case.  In addition, a copy will be served by Federal Express on the following counsel:

Kenneth Ian Schacter
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY 10022
*Counsel for Deere & Company*

Michael D. Hays
COOLEY LLP
1299 Pennsylvania Ave., N.W.
Suite 700
Washington, DC 20004
*Counsel for Garmin International, Inc.*

Philip Le B. Douglas
JONES DAY
222 East 41st Street
New York, NY 10017
*Counsel for Garmin International, Inc.*

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Suite 800
Washington, DC 20015
*Counsel for Trimble Navigation Ltd.*

Steven R. Schindler
SCHINDLER COHEN & HOCHMAN
100 Wall Street
15th Floor
New York, NY 10005
*Counsel for the U.S. GPS Industry Council*

July 29, 2014

*/s/ Eugene F. Assaf, P.C.*
Eugene F. Assaf, P.C.