# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LightSquared Inc.; LightSquared LP; and LightSquared Subsidiary LLC, )<br><br>*Plaintiffs,* )<br><br>v. )<br><br>Deere & Company; Garmin International, Inc.; Trimble Navigation Limited; The U.S. GPS Industry Council; The Coalition to Save Our GPS; John Doe No. 1, as a representative of The Coalition to Save Our GPS; and John Doe No. 2, as a representative of The Coalition to Save Our GPS, )<br><br>*Defendants.* ) | Case No. 13-cv-08157 (RMB)(JCF) |

**LIGHTSQUARED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM GARMIN, DEERE, AND USGIC**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .................................................................................................. **i**

**TABLE OF AUTHORITIES** ......................................................................................... **ii**

**INTRODUCTION** ............................................................................................................. **1**

**BACKGROUND** ................................................................................................................ **3**

**ARGUMENT** ...................................................................................................................... **5**

I.  Documents Created Before June 1, 2009, and After December 2, 2010, Are Relevant to LightSquared's Claims. ........................................................................ 7

    A.  Pre-2009 Documents Are Relevant. ......................................................... 8

    B.  Post-2010 Documents Are Relevant. ....................................................... 10

II.  Garmin and Deere's Lists of Custodians Are Insufficient. ................................ 12

III.  LightSquared's Requests for Production Nos. 5, 7, and 8 Seek Relevant Information, and Defendants Should Produce Responsive Documents. ........................... 15

    A.  Request for Production No. 5 Seeks Relevant Information. ..................... 16

    B.  Requests for Production Nos. 7 and 8 Seek Relevant Information ......... 17

IV.  Defendants Have Refused to Accept LightSquared's Search Terms ................. 19

**CONCLUSION** ................................................................................................................ **20**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Container Transp. (Australia) Ltd. v. United States*,
705 F.2d 53 (2d Cir. 1983)............................................................13

*In re Control Data Corp. Sec. Litig.*,
1988 WL 92085 (D. Minn. Feb. 22, 1988) ........................................13

*Gross v. Lunduski*,
304 F.R.D. 136 (W.D.N.Y. 2014) ....................................................15

*Hickman v. Taylor*,
329 U.S. 495 (1947)......................................................................7

*LightSquared Inc. v. Deere & Co.*,
2015 WL 585655 (S.D.N.Y. Feb. 5, 2015)................................... *passim*

*Mastr Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*,
295 F.R.D. 77 (S.D.N.Y.) ...............................................................7

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
2013 WL 4838796 (S.D.N.Y. Sept. 11, 2013)...................................13

*N.C. Electric Membership Corp. v. Carolina Power & Light Co.*,
666 F.2d 50 (4th Cir. 1981) ...........................................................13

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)...........................................................7, 8, 9, 17

*Retirement Fund v. J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013) .............................................. *passim*

*Soffer v. Five Mile Capital Partners*,
2013 WL 4499011 (D. Nev. Aug. 19, 2013) .....................................13

*Tangorre v. Mako's, Inc.*,
2002 WL 206988 (S.D.N.Y. Feb. 8, 2002).........................10, 11, 18, 20

*Trilegiant Corp. v. Sitel Corp.*,
272 F.R.D. 360 (S.D.N.Y. 2010) ......................................................8

*In re Weatherford Int'l Sec. Litig.*,
2013 WL 5788687 (S.D.N.Y. Oct. 28, 2013)................................12, 17

**Rules**

Fed. R. Civ. P. 26.................................................................................................11, 12, 14, 17

Fed. R. Civ. P. 34............................................................................................................7, 15

Plaintiffs LightSquared Inc.; LightSquared LP; and LightSquared Subsidiary LLC (collectively, "LightSquared"), submit this Memorandum and the accompanying declaration of Devin A. DeBacker, with the attached exhibits, in support of LightSquared's motion to compel Defendants Garmin International, Inc., Deere & Company, and the U.S. GPS Industry Council (USGIC) (collectively, "defendants")[1] to produce documents in response to LightSquared's First Set of Requests for Production of Documents.

## INTRODUCTION

So far in this case, LightSquared has collected 1.4 terabytes of information from 25 custodians, and is processing that data for production. Defendants[2], on the other hand, have produced only a handful of documents on a single issue, and Garmin's counsel represented to Judge Berman at the October 8, 2015 status conference that there were no plans for further productions: "[W]e've completed our production so—we're the defendants. We think we're done." Ex. A (10/8/15 Status Conference Tr.) at 20:20–22. But the only reason defendants can take the position that they are "done" with discovery is because they have adopted unreasonable discovery positions at every turn that have denied LightSquared unquestionably relevant discovery. It should not be a surprise that these unreasonable positions are just another variation of the same argument that defendants have been advancing about how this case is limited to a few short months in the summer of 2009. But that argument has been rejected at every turn: at the motion to dismiss stage, then when Garmin and Deere tried to obtain expedited discovery from this Court, and again less than two weeks ago when Judge Berman rejected their request to

---

[1]   Although Trimble Navigation Ltd. is also a defendant in this action, LightSquared is not moving to compel against Trimble. Therefore references in this motion to "defendants" mean Garmin, Deere, and USGIC.

[2]   For purposes of this memorandum, a reference to "defendants" means Garmin, Deere, and USGIC. It does not include Trimble.

1

file early summary judgment motions. Despite their losing streak, defendants insist on advancing their narrow view of the merits to restrict discovery. That contravenes their obligations under the rules of discovery. LightSquared has attempted to resolve these disagreements through extensive correspondence that has spanned several months, and through a face-to-face meet-and-confer. But Garmin, Deere, and USGIC have persisted in their refusal to comply with their discovery obligations (confirmed by the representations of Garmin's counsel) in four fundamental ways:

- *First*, defendants have placed unreasonable time restrictions on their discovery efforts: Garmin refuses to search any records from before June 1, 2009 (with the exception of Garmin's general counsel and a single regulatory engineer), and Garmin and USGIC refuse to search documents that were created after December 2010, while Deere refuses to search documents after February 17, 2011. The result is that Garmin has arbitrarily limited its document production to an 18-month period, and defendants together have denied LightSquared discovery into one of the most important periods of this case, events in 2011 and early 2012.

- *Second*, Garmin and Deere have searched records from only a handful of custodians (one of whom is Garmin's general counsel, with all of the attendant privilege issues), despite the fact that numerous documents produced by Garmin and Deere make clear that many others likely possess responsive, discoverable information. This stands in stark contrast to LightSquared's collection from *25* different custodians, including its outside counsel.

- *Third*, defendants have unjustifiably refused to produce information responsive to three specific requests by LightSquared, which seek information at the very core of this case. In particular, defendants have resisted providing certain information responsive to

2

LightSquared's request for documents "relating to the potential for GPS Receiver Overload caused by LightSquared's Network or Terrestrial Operations in the LightSquared Band," an issue clearly encompassed by Judge Berman's order.

- And **_fourth_**, defendants have refused to apply clearly relevant search terms in searching for responsive documents, such as synonyms for the overload interference at issue in this case.

As a result of defendants' unreasonable positions, LightSquared respectfully requests this Court issue an order compelling (a) Garmin, Deere, and USGIC to produce documents responsive to LightSquared's requests during the period from April 1, 2001 until February 14, 2012; (b) Garmin and Deere to conduct a search for responsive documents in the custody of additional custodians; (c) Garmin, Deere, and USGIC to produce documents in response to LightSquared's Requests for Production Nos. 5, 7, and 8; and (d) Garmin, Deere, and USGIC to accept LightSquared's clearly relevant search term proposals or at the very least engage in good-faith negotiations.

## BACKGROUND

This is a case about how defendants "repeatedly led LightSquared to believe that . . . LightSquared's nationwide wireless network could coexist with Defendants' GPS Products" and how, only after LightSquared had invested billions of dollars in rolling out its network, the defendants belatedly disclosed that "they had designed and manufactured their GPS receivers to 'listen in' on the same spectrum that the Federal Communications Commission . . . has licensed to LightSquared (not Defendants)." *LightSquared Inc. v. Deere & Co.*, 2015 WL 585655, at *1 (S.D.N.Y. Feb. 5, 2015) (brackets omitted). Judge Berman held that "LightSquared has stated claims of negligent misrepresentation and constructive fraud based upon Defendants' alleged omissions of fact." *Id.* at *17. In particular, Judge Berman held that LightSquared "has

3

identified an alleged omission of fact involving a material issue, namely Defendants['] fail[ure] to disclose that they had designed their [GPS] receivers to 'listen in' on LightSquared's spectrum and that they were therefore subject to potential overload." *Id.* at *15.  He determined that LightSquared had adequately alleged that "Defendants' failure to disclose was in violation of a duty to exercise reasonable care," and identified two separate sources for that duty to disclose: (1) defendants' "partial disclosure of the out-of-band emissions issue," and (2) defendants' "superior knowledge regarding out-of-band reception." *Id.*  at *17.

In the wake of Judge Berman's order allowing LightSquared to move forward with its negligent misrepresentation and constructive fraud claims, defendants sought to expedite discovery into a series of negotiations between LightSquared and defendants which took place in 2009.  *See* 3/9/15 Douglas Ltr., Dkt. 79.  Defendants claimed (erroneously)[3] that LightSquared's entire case depended on whether "the 2009 discussions [with USGIC] were confined to femtocells" or whether the discussions included broader interference issues.  *Id.* at 1.  At a status conference held on April 2, 2015, this Court squarely rejected defendants' proposal.  Garmin and Deere then shifted gears and argued that the Court should prioritize discovery into their relationship with USGIC, insisting that they were not involved with the organization during the relevant events in the case.  Although LightSquared argued that this issue (like the 2009 negotiations) was not dispositive, the Court allowed for expedited discovery on "the defendants' relationship to USGIC," setting June 30, 2015, as the deadline for discovery on that single issue.  4/3/15 Case Management Plan, Dkt. 95, at 1.  Discovery on all other issues would continue

---

[3]    Judge Berman made clear that defendants' duty to disclose sprung from at least **two** separate sources: "Defendants had a duty to disclose the out-of-band reception issue to LightSquared prior to 2010 on the basis of [i] Defendant's partial disclosure of the out-of-band emissions issue **and** [ii] their 'superior knowledge regarding out-of-band reception." *LightSquared*, 2015 WL 585655, at *15 (emphasis added); *see also id.* at *15–16 (discussing the "partial disclosure" and "superior knowledge" issues separately and as distinct sources for defendants' duty to disclose).

4

through March 31, 2016.  *Id.*  This expedited discovery was completed on June 30, 2015, and the case has moved into ordinary-course discovery related to the parties' various claims and defenses.  Judge Berman recently emphasized that the parties should be proceeding with the necessary discovery, that no extensions would be granted, that all discovery disputes should promptly be brought to the Court's attention, and that no early summary judgment motions would be entertained.  *See* 10/8/15 Order, Dkt. 124.

LightSquared has sought discovery on several targeted topics that relate to a number of issues relevant to LightSquared's remaining claims, such as the relationships and interrelationships among the defendants; the design and engineering of defendants' GPS receivers, and those receivers' susceptibility to interference; the defendants' knowledge related to LightSquared's operational plans and any related impact on GPS devices; and the profits defendants realized from the sales of GPS handsets defendants knew were listening in on radio spectrum outside the frequency bands designated for GPS.  All told, LightSquared has served only 22 Requests for Production to date.  Each of these requests is tied to issues identified in Judge Berman's opinion.

Rather than respond to LightSquared's discovery requests, as required, which are plainly relevant to the claims as they were outlined in Judge Berman's opinion, defendants, led by Garmin, have crafted a distorted simulacrum of LightSquared's claims, and have refused to engage on any issues that do not comport with their artificially narrow—and self-serving— interpretation of the issues relevant to this litigation.  As a result, LightSquared brings this instant motion, requesting the Court compel defendants to fulfill their discovery obligations.

## ARGUMENT

The defendants' intransigence on the identified issues lacks any support in the standards applicable to discovery in federal court.  Under Federal Rule of Civil Procedure 34(a)(1), parties

"are entitled to discovery of documents in the possession, custody, or control of other parties . . . so long as they are relevant to any party's claim or defense." *Fort Worth Emps.' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 102 (S.D.N.Y. 2013) (Francis, M.J.) (citations omitted). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Id.* As the Supreme Court has emphasized, this broad concept of relevancy "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Once the requesting party has satisfied its "light burden" of establishing relevance, *Mastr Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, 295 F.R.D. 77, 86 (S.D.N.Y.) (Francis, M.J.), *aff'd*, 2013 WL 6840282 (S.D.N.Y. Dec. 27, 2013), the burden shifts "to the responding party to justify curtailing discovery," *Fort Worth*, 297 F.R.D. at 102.

The burden necessary for defendants to justify restricting discovery is heavy. The objecting party must show "specifically how, despite the broad and liberal construction afforded the federal discovery rules, [the requested discovery] is overly broad, burdensome or oppressive, . . . submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (quotation omitted). "Generally speaking, discovery is limited only when sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant, . . . when the examination is on matters protected by a recognize privilege[,]" or when the requested discovery "'is relevant only to claims or defenses that have been stricken . . . unless the information sought is otherwise relevant to issues in the case.'" *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 364 (S.D.N.Y. 2010) (Francis, M.J.) (quoting *Oppenheimer Fund*, 437 U.S. at 352–53). Plainly, "conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of

requested information." *Fort Worth*, 297 F.R.D. at 102.

Defendants' obduracy on four issues that have arisen during discovery is inconsistent with these principles. First, defendants have severely restricted the time frame for their search in a case that concerns their conduct over the course of at least ten years. Second, Garmin and Deere have refused to expand their lists of custodians beyond just a few individuals. Third, defendants have refused to produce documents in response to three of LightSquared's requests that directly track issues Judge Berman identified as relevant and needing discovery. And fourth, defendants have refused to negotiate with LightSquared over reasonable search terms for Phase II discovery.

## I.   Documents Created Before June 1, 2009, and After December 2, 2010, Are Relevant to LightSquared's Claims.

Defendants have refused to search for documents outside of a constrained time period. Garmin's approach is the most extreme. It has stated that it will not search for or produce documents created prior to June 1, 2009 for most[4] of LightSquared's requests for production.[5] Ex. B (Garmin's Responses and Objections) at 5–10. In addition, Garmin and USGIC have refused to search any documents that were created after December 2, 2010, *id.*; Ex. C (USGIC's Responses and Objections) at 2, and Deere has refused to search documents that were created

---

[4]   Specifically, Garmin refuses to produce documents before June 1, 2009, in response to LightSquared's Requests Nos. 1–4, 6, and 11. Ex. B (Garmin's Responses and Objections) at 5–10.

[5]   For the expedited discovery relating to the defendants' relationship to USGIC, Garmin searched the files of only two custodians: its general counsel, Andrew Etkind, and Doug Kealey, a regulatory engineer. Ex. F (7/20/15 Douglas Ltr.) at 5. For the remaining merits discovery, Garmin has continued to refuse to search for documents created before June 1, 2009. Ex. B (Garmin's Responses and Objections) at 5–10.

after December 31, 2010, Ex. D (Deere's Responses and Objections).[6]   Because documents

created prior to June 1, 2009, and in 2011 and 2012, "bear[] on," or at the very least "reasonably

could lead to other matter that could bear on" the issues "that [are] or may be in the case,"

defendants must expand their search.   *Oppenheimer Fund*, 437 U.S. at 351.   LightSquared

requests that Garmin search for documents beginning on March 1, 2001, the date LightSquared

filed its application with the FCC to authorize terrestrial operations in the LightSquared Band,

*see* Application of Mobile Satellite Ventures Subsidiary LLC, FCC File Nos. SAT-ASF-

20010302-00017 et al. (Mar. 1, 2001), and that Garmin, Deere, and USGIC search for documents

through February 14, 2012, the date the FCC recommended suspending LightSquared's authority

to     operate     its     network,     *see*     FCC     Statement     (Feb.     14,     2012),

https://apps.fcc.gov/edocs_public/attachmatch/DOC-312479A1.pdf.

### A.     Pre-2009 Documents Are Relevant.

Garmin takes the unreasonable position that it does not have to search for documents

created before June 1, 2009.   Garmin's rationale for that position—as well as other discovery

positions it has taken—will be a familiar one to the Court.   Garmin cites its belief that

"LightSquared's surviving claims against Garmin are based exclusively on its own

communications with USGIC during four weeks in 2009."   Ex. E (5/12/15 Douglas Ltr.) at 1; *id.*

at 6 ("We are proceeding on the assumption that . . . there is no basis, other than a putative

USGIC membership, for this suit against Garmin."); Ex. F (7/20/15 Douglas Ltr.) at 4–5.   As

LightSquared has explained to Garmin many times, and as this Court explained at the April

status conference, that belief is simply wrong.   LightSquared's claims are not limited to

"communications with USGIG during four weeks in 2009" and Garmin is wrong in persisting in

---

[6]     Deere's Phase I search about its relationship to USGIC included documents through February 17, 2011.   *See* Ex. D (Deere's Responses and Objections) at 10.

its attempt to limit its discovery obligations (and the case) to that issue.

As this Court emphasized at the conference, and as Judge Berman's opinion makes clear, there are at least two independent bases for LightSquared's negligent misrepresentation and constructive fraud claims: partial disclosure and superior knowledge.  *See LightSquared*, 2015 WL 585655, at *15.  Pre-2009 documents are relevant to both of those legal theories.  With respect to superior knowledge, pre-2009 documents are also relevant to show, among many other things: (1) when Garmin knew that its receivers were capable of receiving signals from the LightSquared band; (2); when and what Garmin knew about the extent and nature of LightSquared's planned terrestrial network; and (3) when Garmin knew that its receivers would be subject to overload from the LightSquared Band.  And even under Garmin's mistaken belief that LightSquared's partial disclosure theory is limited to "communications with USGIC," pre-2009 documents are relevant because these negotiations began at least as early as the fall of 2008, well before Garmin's artificial July 1, 2009 cutoff.

But more fundamentally, Garmin cannot substitute its own beliefs about its liability for LightSquared's allegations (deemed sufficient by Judge Berman) as justification for artificially restricting its discovery obligations.  *See, e.g.*, *Tangorre v. Mako's, Inc.*, 2002 WL 206988, at *4 (S.D.N.Y. Feb. 8, 2002) (faulting a defendant who had "substituted its own narrow view of the merits of this action for the liberal rules that govern discovery" and ordering the defendant to produce the responsive documents).  Judge Berman allowed LightSquared's negligent misrepresentation and constructive fraud claims to move forward, expressly recognizing that "[d]iscovery on these issues is required."  *LightSquared*, 2015 WL 585655, at *16; *see also id.* (recognizing repeatedly the need to "flesh[] out in discovery" LightSquared's allegations).  And the opinion makes clear that there are at least two bases for liability for conduct that took place

9

over a period of at least ten years.  That ruling alone justifies LightSquared's requests.  For those

reasons, Garmin's refusal to produce any documents from before June 1, 2009, is unreasonable.

### B.       Post-2010 Documents Are Relevant.

Defendants also claim that documents created after December 2, 2010 (after February 17,

2011 for Deere), are not relevant to LightSquared's claims because they believe that by that

point, LightSquared was "on notice" of any "alleged . . .  failure to disclose a receiver overload

problem."  Ex. G (4/30/15 Douglas Ltr.) at 3.  Defendants' position is unjustified for two

reasons.  First, when LightSquared was "on notice" of the nature and extent of the overload

problem is a question of fact for the jury.  As discussed, Judge Berman has already held that

"[d]iscovery on these issues is required."  *LightSquared*, 2015 WL 585655, at *16.  Defendants

cannot assert their own position on a contested issue of fact as a basis for cutting off a whole

swath of discovery.  *See Tangorre*, 2002 WL 206988, at *4.

And second, even if defendants are correct that they fully disclosed the nature and extent

of the receiver overload issue, the relevant question for current purposes is not when adequate

disclosure was made, but whether documents created in 2011 and early 2012, are "reasonably

calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  For

discovery purposes, there is substantial reason to believe that documents created in 2011 and

early 2012 meet that standard.  Those documents are likely to shed light on defendants' prior

knowledge of the ability of their GPS receivers to receive signals from the LightSquared Band

and what effect LightSquared's proposed network could possibly have on their operations, just to

name a couple of topics.  That is because these issues, along with others sought to be

investigated by LightSquared's RFPs, were discussed during proceedings regarding

LightSquared's network that involved defendants that began in early 2011 and lasted until early

2012—including in the Technical Working Group mandated by the FCC.  That being the case,

10

documents created in connection with those proceedings, and other documents created after December 2010, could lead to the discovery of admissible evidence concerning, among other issues, the history of when defendants designed their receivers to receive signals from LightSquared's spectrum, and their knowledge of the problems such a design might cause.

This Court has previously rejected arguments identical to defendants'.  In *Assured Guaranty Municipal Corp. v. UBS Real Estate Securities Inc.*, the plaintiff sought documents created after the transactions giving rise to the suit had closed.  2012 WL 5927379, at *2 (S.D.N.Y. Nov. 21, 2012) (Francis, M.J.).  The defendant refused, claiming that because the documents were generated after the deals, that information would be irrelevant.  *Id.*  This Court found "no basis for [defendant]'s imposition of a hard date limit on its production.  Documents that post-date the transactions may nevertheless relate back to the state of affairs as it existed at the crucial time."  *Id.*  For example, any "retrospective assessment" of the deals in question "may well analyze" the events that led up to the deal.  *Id.*  Similarly, in *Fort Worth*, the plaintiffs in a putative securities class action sought discovery of documents that post-dated the deal closing at issue in the case.  297 F.R.D. at 108.  This Court recognized "the possibility that post-closing and post-class period documents and communications might provide retrospective insight into the [issues] . . . here, they may be relevant at the discovery stage."  *Id.*; *see also In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788687, at *2–3 (S.D.N.Y. Oct. 28, 2013) (Francis, M.J.) (holding that documents related to events occurring after the class period has closed may be relevant for discovery purposes); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2013 WL 4838796, at *3 (S.D.N.Y. Sept. 11, 2013) ("Like other courts, I conclude that the post-closing period can prove to be fertile ground for relevant discovery."); *see also In re Control Data Corp. Sec. Litig.*, 1988 WL 92085, at *3 (D. Minn. Feb. 22, 1988) (recognizing in a securities case that

11

"post-offering statement, documents, or conduct have been treated as admissible evidence on the issue of scienter, intent, and knowledge.").

Other than offering their own narrow view of the merits of the case, defendants have never attempted to justify their blanket refusal. Simply put, the "date by which a defendant's allegedly wrongful conduct was complete does not necessarily preclude discovery of information or documents created after that date." *Soffer v. Five Mile Capital Partners*, 2013 WL 4499011, at *3 (D. Nev. Aug. 19, 2013).[7] Garmin should produce documents going back to March 1, 2001, the date LightSquared filed an application with the FCC to operate a terrestrial network, putting defendants only notice of the nature of the network it planned to roll out, and Garmin, Deere, and USGIC should all produce documents up through February 14, 2012, the date the FCC recommended suspending LightSquared's license to operate. Documents from this important timeframe are "reasonably calculated to lead to the discovery of admissible evidence.'" *Fort Worth*, 297 F.R.D. at 102 (quoting Fed. R. Civ. P. 26(b)(1)).

## II. Garmin and Deere's Lists of Custodians Are Insufficient.

In responding to defendants' discovery requests, LightSquared identified **25 custodians** whose records were reasonably likely to have responsive documents. In contrast, Garmin

---

[7] To the extent defendants contend that the First Amendment entitles defendants to refuse to produce documents after December 2, 2010, *see, e.g.*, Ex. G (4/30/15 Douglas Ltr.) at 3 ("Garmin's subsequent FCC actions were both irrelevant and fully protected by the First Amendment"), defendants misunderstand the discovery standard in this circuit. The First Amendment has no bearing on the scope of discovery. For now, LightSquared has simply exercised its right to obtain discovery that is "reasonably calculated to produce admissible evidence regardless of possible *Noerr-Pennington* immunity." *Associated Container Transp. (Australia) Ltd. v. United States*, 705 F.2d 53, 60-61 (2d Cir. 1983). As other courts have explained, the *Noerr-Pennington* doctrine "does not apply to discovery." *N.C. Electric Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 52 (4th Cir. 1981); *see also, e.g.*, *Associated Container Transp. (Australia) Ltd.*, 705 F.2d at 60 (citing *N.C. Electric Membership* approvingly for the proposition that *Noerr-Pennington* is "inapplicable to discovery").

initially identified **three (3)** custodians, Mr. Etkind, Mr. Burgett, and Mr. Hokuf—two of whose records would only be searched for **an 11-month period**.  At LightSquared's prompting, Garmin agreed to include an additional four custodians (Messrs. Kealey, Poindexter, Ruggles, and Simmons), but again confined their search of these custodians' records to an 11-month window, with the exception of Mr. Kealey.  Deere has searched the files of only two custodians.

Garmin has repeatedly defended its search of such a small number of custodians by claiming that one single individual, Mr. Etkind—the company's general counsel—is the only custodian likely to have relevant documents.  Ex. H (5/29/15 Douglas Ltr.) at 3.  This assertion defies credulity.  While Mr. Etkind undoubtedly played an important part in many of the events relevant to this litigation, it is simply implausible that he is the only custodian in possession of documents responsive to LightSquared's requests.  The critical question in this case is when Garmin and Deere knew that its GPS receivers were capable of receiving signals from the portion of the Spectrum assigned to LightSquared.  The documents most relevant to that issue— as well as the other issues raised addressed by LightSquared's requests—would be found in the files of Garmin's numerous engineers, not the general counsel.  And putting Mr. Etkind up as the key custodian raises additional concerns since he is the company's general counsel and will try to claim attorney-client and work-product privilege over many of his discussions with company employees about LightSquared issues.

Deere, another key GPS player, has adopted a similar approach, refusing discovery into more than two custodians.  That is simply too narrow, for the reasons discussed with Garmin. The extremely limited number of custodians identified by Garmin and Deere stands out even more when considering that the timeline of this case begins in 2001, asking what defendants knew then.  Yet neither Garmin nor Deere have identified former employees whose records

would be relevant.   And they have refused LightSquared's reasonable request to exchange organizational charts to help both sides assess potential custodians.  *See* Ex. I (9/22/15 Douglas Ltr.) at 6.

Garmin and Deere's only response to LightSquared's objections has been to put the onus on LightSquared to identify additional custodians.  But it is Garmin and Deere's obligation to identify those individuals who are reasonably likely to have documents responsive to LightSquared's discovery requests.  *See Gross v. Lunduski*, 304 F.R.D. 136, 162 (W.D.N.Y. 2014).  "[I]n responding to a request for document production pursuant to Rule 34(a), the responding party must make a reasonable search of all sources reasonably likely to contain responsive documents."  *Id.*   Garmin and Deere have failed to do so.   Their deferral to LightSquared's guesses as to the individuals likely to have custody over relevant documents is no substitute for Garmin and Deere's own good faith effort to identify likely custodians, and fails to satisfy Garmin and Deere's obligations under Rule 34.  And their refusal to comply with its obligations is even more problematic when they have unduly constricted the only production they intend to make in this case.

Garmin and Deere should be compelled to identify custodians reasonably likely to have records relevant to the technical issues presented by LightSquared's claims, such as any "actual or potential interference with GPS Devices from LightSquared's Network or Terrestrial Operations in the LightSquared Band" (RFP No. 4); "the ability of GPS Devices to receive signals from the LightSquared Band" (RFP No. 5); and "the number of GPS Devices [Garmin] sold that were susceptible to GPS Receiver Overload and the profits [Garmin] made from those sales" (RFP No. 8).  Just from the limited production that LightSquared has reviewed, it can identify the following individuals as having relevant documents from Garmin: Min Kao (Garmin

executive), Kenneth Kao (staff attorney at Garmin who worked under Mr. Etkind and interacted frequently with USGIC), Larry Swinney (believed to be an Engineer Team Lead at Garmin who worked on spectrum issues for Garmin), John Farley (Garmin engineer who was involved with USGIC), John Foley (Garmin representative at the FCC Working Group on LightSquared), Ted Gartner (Garmin communications director), and Anne Swanson (Garmin's outside counsel).[8] And despite Deere's even more limited discovery thus far, LightSquared is aware that Steven Wilson (a Deere GPS Product Manager) and Paul Galyean (a Deere engineer) were involved in LightSquared issues after 2010 and therefore believes those individuals have relevant documents.

Even where defendants have given the appearance of searching custodians' records, it is just that: a façade, and nothing more.  And many of the potential custodians would have only been revealed in the discussions about LightSquared after December 2, 2010.  For these reasons, as well as those set forth above in Section I, defendants should be compelled to expand its search of the identified custodians to a reasonable and meaningful period of time, include the custodians identified above, and negotiate in good faith with LightSquared over additional custodians.

## III.   LightSquared's Requests for Production Nos. 5, 7, and 8 Seek Relevant Information, and Defendants Should Produce Responsive Documents.

LightSquared's Requests for Production Nos. 5, 7, and 8 seek three categories of highly relevant information: information regarding the ability of GPS devices to receive signals from the LightSquared Band; information relating to the potential retrofit or redesign of GPS devices to prevent any GPS receiver overload caused by LightSquared's network or terrestrial operations in the LightSquared Band; and information relating to the number of GPS devices defendants sold that were susceptible to GPS receiver overload, and the profits Garmin and Deere made

---

[8]   Defendants have insisted that LightSquared produce documents from their outside counsel. Because negotiations involving outside counsel are part of this case, LightSquared has agreed to search those documents.

from those sales.  Exs. J, K (LightSquared's RFPs to Garmin, Deere) at 2–3.  But defendants have refused to produce documents responsive to these requests, opting instead for boilerplate objections, such as asserting that LightSquared's requests "(i) [are] overly broad and unduly burdensome; [and] (ii) seek[] information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."  Ex. B (Garmin's Responses and Objections) at 7–8; *see also* Ex. D (Deere's Responses and Objections) at 7–8; Ex. C (USGIC's responses and objections) at 9–11.[9]  "Such general and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information."  *In re Weatherford*, 2013 WL 5788680, at *2.  These requests for production seek information that bears on issues in this case and therefore defendants should produce responsive documents.  *See, e.g.*, Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund*, 437 U.S. at 351.

A.      **Request for Production No. 5 Seeks Relevant Information.**

With respect to Request for Production No. 5, LightSquared requested from defendants "[a]ll documents relating to the potential for GPS Receiver Overload caused by LightSquared's Network or Terrestrial Operations in the LightSquared Band."  Exs. J, K, L (LightSquared's RFPs) at 2.  In conclusory fashion, Garmin and Deere have objected to this request to the extent it was not "limited . . . to the ability of" each entity's particular "GPS Devices to receive signals from the LightSquared Band."  Ex. G (4/30/15 Douglas Ltr.) at 2.  But the ability of ***any*** GPS Device to receive signals from the LightSquared Band is a central matter in this case, and

---

[9]    In response to LightSquared's Requests for Production Nos. 5 and 7, Garmin also contends those requests "seek[] documents outside of Garmin's custody, care, control or possession; and . . . [are] duplicative of other requests."  Ex. xx (Garmin's Responses and Objections) at 7–8. These objections only highlight the copy-and-paste approach of defendants' objections. LightSquared has never purported to seek documents outside of defendants' custody, care, control or possession.  And defendants have never identified anything duplicative about LightSquared's requests.

Garmin and Deere's refusal to produce responsive documents lacks any convincing justification. Garmin and Deere's only response has been to claim that they did not have "any knowledge of, much less any involvement with, the femtocell discussions" and therefore their "putative pre-2010 knowledge of the vulnerability of other manufacturers' devices to third-party caused receiver overload is irrelevant." Ex. F (7/20/15 Douglas Ltr.) at 2. Once again, Garmin and Deere resort to making an assertion on a contested issue of fact (defendants' knowledge of potential interference issues caused by LightSquared's network) to avoid their discovery obligations. This tactic has been roundly rejected. *See, e.g.*, *Tangorre*, 2002 WL 206988, at *4.

And this case is not about only Garmin's devices, or only Deere's devices. It concerns the devices of Garmin, Deere, and Trimble. To the extent Garmin and Deere have information about the abilities of the other's devices to receive signals from the LightSquared Band, that information is relevant and should be produced. Defendants' knowledge of the overload issue— from whatever entity's devices—goes to LightSquared's allegation that the defendants "had a duty to disclose the out-of-band reception issue to LightSquared prior to 2010 on the basis of Defendants 'partial disclosure' of the out-of-band-emissions issue and their 'superior knowledge' regarding out-of-band reception." *LightSquared*, 2015 WL 585655, at *15.

Garmin and Deere's "conclusory objections as to relevance . . . are insufficient to exclude discovery of" the requested documents. *Fort Worth*, 297 F.R.D. at 102. Therefore, the Court should order Garmin and Deere to produce any documents responsive to this request that it has in their possession.

### B. Requests for Production Nos. 7 and 8 Seek Relevant Information.

LightSquared's Requests for Production Nos. 7 and 8 are related in that they both request information about the potential retrofit or redesign of GPS devices to prevent GPS overload, as well as information regarding the number of GPS devices defendants sold that were susceptible

17

to GPS Overload, and the profits defendants realized from those sales.   Exs. J, K, L (LightSquared's RFPs) at 3.   Defendants have refused to produce any documents responsive to these requests, regurgitating their conclusory relevance and overbroad objections.   Ex. B (Garmin's Responses and Objections) at 8; Ex. D (Deere's Responses and Objections) at 9; Ex. C (USGIC Responses and Objections) at 11–12.

These documents are plainly relevant.   Judge Berman identified "what Defendants obtained through the fraud" as a key issue in the case, acknowledging LightSquared's allegation that defendants "avoided incurring the expense of improving their own faulty receivers that trespass on a significant portion of LightSquared's spectrum without authorization, and sold hundreds of millions more GPS receivers from 2003 on, resulting in significant profits for Defendants." *LightSquared*, 2015 WL 585655, at *17 (brackets omitted).   These requests track the issues that Judge Berman identified and are therefore relevant.

In refusing to produce any responsive documents, defendants, led by Garmin, have reverted to asserting their position on the merits as undisputed, claiming that "given the FCC's determination that there was no technical solution to the overload problem," defendants "realized no benefit from, and had no motive for, continuing to sell GPS devices after 2009," Ex. H (5/29/15 Douglas Ltr.) at 2–3, and that because defendants "did not have knowledge of USGIC's alleged failure to disclosure [sic]," defendants "could not logically have had any related 'motive,'" Ex. F (7/20/15 Douglas Ltr.) at 3.   As discussed, defendants may not limit their discovery obligations by unilaterally narrowing the scope of disputed facts in this case. *Tangorre*, 2002 WL 206988, at *4.   Judge Berman made clear that potential motivations for defendants' failure to disclosure are relevant considerations for LightSquared's claim.   *See LightSquared*, 2015 WL 585655, at *17.   And defendants' breach of their duty to disclose

18

remains very much at issue in this case.

LightSquared's Requests for Production Nos. 7 and 8 seek information relevant to the issues in this case as defined by Judge Berman.  Any objection as to the relevance of these requests plainly is without merit.  Accordingly, the Court should order defendants to produce any documents it has in its possession that are responsive to these requests.

## IV.    Defendants Have Refused to Accept LightSquared's Search Terms.

Finally, defendants have refused to agree to a list of search terms they will use for Phase II discovery.  A brief recap of the recent exchanges between the parties drives home defendants' implacability on this point.  Once the parties shifted from the Phase I discovery regarding defendants' relationship to USGIC to Phase II discovery regarding the remaining issues in the case, LightSquared engaged with defendants regarding the search terms that would applied as part of the Phase II protocol.  The parties agreed to a sit-down meet-and-confer on August 20, 2015.  Ahead of the August 20 meet and confer, defendants revealed that they believed the search terms agreed upon for Phase I applied to *all* discovery, including Phase II.

Upon learning of defendants' intentions, LightSquared made clear that it had reserved its rights to propose additional search terms and modifications to the defendants' proposals and that those modifications were forthcoming.  *See, e.g.*, Ex. M (8/18/15 Anderson Email) at 1.  In good faith, LightSquared agreed to participate in the meet-and-confer and understood that defendants agreed that LightSquared would propose revisions to the "Exhibit A" search protocol.  *See* Ex. N (9/9/15 Allen Ltr.) at 1.  On September 9, LightSquared proposed revisions to the search terms that addressed relevant topics (such as "low noise amplifier," "desens*," "overpower*," "pre-select," "post-select," "spurious /10 emission," "noise increase," and "noise temperature," which are additional technical terms for the overload interference that is at the heart of this case, *see LightSquared*, 2015 WL 585655, at *1) and individuals that LightSquared has learned may have

19

been involved in discussions about overload interference.  *See id.* at 3–7.

Rather than offer a substantive response to LightSquared on the merits of those proposed revisions, defendants made clear they have no plans to negotiate.  They stated simply that LightSquared's proposed revisions were "not a solution," resting on their unilateral contention that their initial proposal "would have captured any of Defendants' records regarding LightSquared interference with third-party devices."  Ex. xx (9/22/15 Douglas Ltr.).  Defendants' refusal to negotiate was confirmed when defendants told Judge Berman on October 8 that they were "done" producing documents.

This Court has repeatedly "urge[d] the parties to reexamine their positions and work together in good faith to create a mutually acceptable ESI search regime."  *Fort Worth*, 297 F.R.D. at 105.  Defendants' rejection of LightSquared's attempts to engage in this negotiation— which defendants themselves invited during the meet-and-confer—falls way short of a required good faith effort and in fact confirms that defendants' have no intentions of engaging in substantive discussions.  As a result, LightSquared respectfully requests this Court to order defendants either to use the search terms that LightSquared has proposed, or at least engage in good-faith discussions to agree to a set of Phase II search terms.

## CONCLUSION

For these reasons, this Court should grant LightSquared's motion to compel and order:

1.  Garmin, Deere, and USGIC to produce documents responsive to LightSquared's requests between March 1, 2001, and February 14, 2012;

2.  Garmin and Deere to produce from additional custodians, including (from Garmin) Min Kao, Kenneth Kao, Larry Swinney, John Farley, John Foley, Ted Gartner, and Anne Swanson; and (from Deere) Steven Wilson and Paul Galyean;

3.  Garmin, Deere, and USGIC to produce documents responsive to LightSquared's

Requests for Production Nos. 5, 7, and 8; and

4. Garmin, Deere, and USGIC to use LightSquared's proposed search terms in conducting Phase II discovery or cooperate with LightSquared in developing a list of terms.

Dated: October 16, 2015                               Respectfully submitted,

By:   */s/ K. Winn Allen*
        Eugene F. Assaf, P.C. (*pro hac vice*)
        Eric F. Leon, P.C.
        K. Winn Allen (*pro hac vice*)
        KIRKLAND & ELLIS LLP
        655 Fifteenth Street, N.W.
        Washington, D.C.  20005
        Telephone: (202) 879-5000
        Fax: (202) 879-5200

        *Attorneys for LightSquared Plaintiffs*