UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LightSquared Inc.; LightSquared LP; and LightSquared Subsidiary LLC,<br><br>    *Plaintiffs,*<br><br>v.<br><br>Deere & Company; Garmin International, Inc.; Trimble Navigation Limited; The U.S. GPS Industry Council; The Coalition to Save Our GPS; John Doe No. 1, as a representative of The Coalition to Save Our GPS; and John Doe No. 2, as a representative of The Coalition to Save Our GPS,<br><br>    *Defendants.* | Case No. 13-cv-08157 (RMB)(JCF) |

### STIPULATION OF VOLUNTARY DISMISSAL
### AS TO DEFENDANT DEERE & COMPANY

Pursuant to Rule 41(a)(2), Plaintiffs LightSquared Inc., LightSquared LP, and LightSquared Subsidiary LLC and Defendant Deere & Company hereby stipulate that, pursuant to the attached Settlement Agreement and Mutual Release, the above-captioned action shall be dismissed as to Deere only, with prejudice.

Dated: December 8, 2015

DB3/ 200628124.1

_____  _____
Kenneth I. Schacter               Eugene F. Assaf, P.C. (admitted *pro hac vice*)
Ari M. Selman                     K. Winn Allen (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP       KIRKLAND & ELLIS LLP
101 Park Avenue                   655 Fifteenth Street, N.W.
New York, NY 10022                Washington, D.C. 20005
Telephone: (212) 309-6000         Telephone: (202) 879-5000
Fax: (212) 309-6001               Fax: (202) 879-5200
kenneth.schacter@morganlewis.com  eugene.assaf@kirkland.com

*Attorneys for Defendant Deere & Company*   *Attorneys for Plaintiffs*


SO ORDERED.

Dated: __Dec. 8__, 2015

New York, New York

_____
Hon. Richard M. Berman
United States District Judge

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Settlement Agreement"), effective as of the date on which it is fully executed (the "Effective Date") is made this 8th day of December 2015, by and among Deere & Company ("Deere") and New LightSquared LLC and LightSquared Subsidiary LLC (collectively, "LightSquared" and, together with Deere, the "Parties" and each individually, a "Party").

In consideration of the promises, covenants, releases and conditions hereinafter set forth, the Parties agree as follows:

1. **Dismissal with Prejudice.**

    a) *LightSquared Litigation.* Within five (5) business days of the Effective Date, LightSquared will file with the District Court a Stipulation of Dismissal with prejudice of all claims asserted against Deere in the civil action pending in the United States District Court for the Southern District of New York entitled, *LightSquared Inc., et al., v. Deere & Company, et al.*, No. 13-CV-8157 (RMB) (JCF) (the "LightSquared Litigation"), which stipulation shall be in the form attached hereto as Exhibit A.

    b) *Harbinger Litigation.* Upon acquiring rights and control over litigation claims and appeals by Harbinger Capital Partners LLC ("Harbinger") against Deere, including the action entitled *Harbinger Capital Partners, LLC, et al. v. Deere & Company et al.*, 13-CV-5543 (RMB) and associated Second Circuit appeal (the "Harbinger Litigation"), LightSquared will promptly dismiss or cause to be dismissed with prejudice the Harbinger Litigation as against Deere.

2. **Abandonment of Terrestrial Use of 1545-1555 MHz.** LightSquared will permanently abandon terrestrial use of the 1545-1555 MHz band by making a filing at the FCC no later than December 31, 2015 so stating, and LightSquared agrees not to request such authorization in the future.

    a) Such filing will neither be conditioned on LightSquared receiving consideration for such abandonment nor contingent on the FCC's granting LightSquared any other relief, but LightSquared may suggest that the FCC consider providing consideration to LightSquared. Prior to any FCC ruling on such filing, LightSquared, acting as itself or through any third party, will not advocate or adopt a contrary position.

    b) LightSquared acknowledges that it currently does not have the base station certification from the FCC required to deploy terrestrial communication services in the 1545-1555 MHz band.

    c) LightSquared will not enter into a spectrum sharing agreement or similar arrangement with a third party that involves services other than space to earth satellite communications services in the 1545-1555 MHz band. LightSquared will require that any successor, assignee, user, or customer with respect to service in the 1545-1555 MHz band

-1-

comply with the same commitment to permanently abandon terrestrial use of the 1545-1555 MHz band.

3.   **Deere Objections**.  When, and in consideration of, LightSquared making its filings that commit to the conditions on spectrum use and uplink and downlink limits set forth herein (including, but not limited to, the spectrum use and out-of-band emissions ("OOBE") limits provided for in Paragraphs 2 and 4-7), Deere, acting as itself or through any third party, will not object to the deployment by LightSquared of a network in the spectrum bands 1526-1536 MHz, 1627.5-1637.5 MHz, 1646.5-1656.5 MHz and 1670-1700 MHz as long as such deployment is consistent with such filings.

4.   **Handset Uplink Power**.  LightSquared will adhere to the following uplink power levels and commit to include them in a filing made at the FCC and all other appropriate agencies for 1627.5-1637.5 MHz and 1646.5-1656.5 MHz Uplink bands ("Uplink Bands") for all equipment and licenses:

EIRP Power not to exceed 23 dBm with respect to any terrestrial network

5.   **Handset Uplink OOBE**.  LightSquared will adhere to the following uplink OOBE limits and commit to include them in a filing made at the FCC and all other appropriate agencies in the Uplink Bands for all equipment and licenses:

EIRP OOBE limits:

-- 1541-1559 MHz

- OOBE limit: -105 dBW/MHz
- OOBE limit: -132 dBW/2 KHz

-- 1559-1608 MHz

- OOBE limit: -105 dBW/MHz

-- 1608-1610 MHz

- OOBE limit: Ramp from -105 to -100 dBW/MHz

-- 1610-1625 MHz

- OOBE limit: Ramp from -100 to -34 dBW/MHz

a)   LightSquared will commit to these power and OOBE limits as a continuing condition of its FCC authorization to provide terrestrial or ancillary terrestrial service. LightSquared will submit to Deere and the FCC test measurements and other data demonstrating compliance with these OOBE limits annually, for five (5) years from the time the FCC publicly determines that LightSquared is allowed to move forward with the deployment of a terrestrial

-2-

network in the Uplink Bands. LightSquared will agree to this condition in a filing made at the FCC and all other appropriate agencies.

    b)  LightSquared will make all appropriate filings to comply with Paragraphs 4 and 5 on or before March 31, 2016. If LightSquared reaches a settlement with all other defendants in the Litigation ("Global Settlement") prior to March 1, 2016, it will make such filings within thirty (30) days of the date on which the dismissal of the last remaining defendant is so ordered by the Court. During the period between the Effective Date and March 31, 2016 (or the dismissal date referred to in the preceding sentence, if such date is earlier), LightSquared, acting as itself or through any third party, will not advocate a position contrary to the parameters in Paragraphs 4 and 5. LightSquared will require that any successor, assignee, user, or customer with respect to service in the Uplink Bands comply with the commitments in Paragraphs 4 and 5.

    6.  **Base Station Downlink Power.** LightSquared will adhere to the following downlink power levels and commit to include them in a filing made at the FCC and all other appropriate agencies for 1526-1536 MHz and 1670-1700 MHz Downlink bands ("Downlink Bands") for all facilities and licenses:

  EIRP Power not to exceed 32 dBW

    7.  **Base Station Downlink OOBE.** LightSquared will adhere to the following downlink OOBE limits and commit to include them in a filing made at the FCC and all other appropriate agencies for the Downlink Bands for all facilities and licenses:

  EIRP OOBE limits:

    -- 1541-1559 MHz

- OOBE limit: -85 dBW/MHz

- OOBE limit: -112 dBW/2 KHz

    -- 1559-1610 MHz

- OOBE limit: -100 dBW/MHz

    -- 1610-1650 MHz

- OOBE limit: -85 dBW/MHz

    a)  LightSquared will commit to these power and OOBE limits as a continuing condition of its FCC authorization to provide terrestrial or ancillary terrestrial service. LightSquared will submit to Deere and the FCC test measurements and other data demonstrating compliance with these OOBE limits annually, for five (5) years from the time the FCC publicly determines that LightSquared is allowed to move forward with the deployment of a terrestrial network in the Downlink Bands. LightSquared will agree to this condition in a filing made at the

-3-

FCC and all other appropriate agencies. LightSquared will make all appropriate filings to comply with Paragraphs 6 and 7 on or before March 31, 2016. If LightSquared reaches a Global Settlement prior to March 1, 2016, it will make such filings within thirty (30) days of the date on which the dismissal of the last remaining defendant is so ordered by the Court. During the period between the Effective Date and March 31, 2016 (or the dismissal date referred to in the preceding sentence, if such date is earlier), LightSquared, acting as itself or through any third party, will not advocate a position contrary to the parameters in Paragraphs 6 and 7. LightSquared will require that any successor, assignee, user, or customer with respect to service in the Downlink Bands comply with the commitments in Paragraphs 6 and 7.

8. **Deere's License Renewal and Modifications**.

a) *FCC Filings*. Within fifteen (15) days of the Effective Date, LightSquared shall file at the FCC a written notice withdrawing with prejudice all LightSquared objections to Deere's licenses, renewals and pending license modifications, including:

(i) the Petition for Reconsideration of LightSquared, Inc., filed pursuant to Section 1.106 of the Commission's Rules, 47 C.F.R. §1.106 on October 14, 2011, and its Reply, filed on November 8, 2011, seeking to overturn the renewal of Deere's earth station authorization in IBFS File No. SES-RWL-20110908-0147 ("Deere Renewal"); and

(ii) the Petition to Deny filed by LightSquared, Inc. Debtor-in-Possession, filed pursuant to Section 1.45 of the FCC's Rules, 47 C.F.R. § 1.45, on April 3, 2015, and its Reply to Opposition to Petition to Deny, filed on April 23, 2015, seeking to deny Deere's pending modification application in IBFS File No. SES-MOD-20141030-00835 ("Deere Modification").

b) LightSquared will exercise commercially reasonable efforts to obtain the withdrawal of all objections filed by Harbinger to the Deere Renewal and Deere Modification. In the event that Harbinger does not file such withdrawals within sixty (60) days of the Effective Date, LightSquared shall file at the FCC a notice in support of the Deere Renewal and Deere Modification and in opposition to Harbinger's continued objection to the Deere Renewal and Deere Modification.

c) LightSquared, acting as itself and through any third party, will not in the future re-assert any of the legal, procedural or policy objections, including allegations of non-compliance, asserted by LightSquared or Harbinger to the Deere Renewal, the Deere Modification and/or any similar Deere applications. LightSquared reserves the right to assert any other objections it believes have merit.

9. **Advance Notice**. For a period of five (5) years from the Effective Date, LightSquared shall provide to Deere at least six (6) months' advance notice of activation of base stations transmitting in the 1526-1536 MHz band and/or the 1670-1700 MHz band by providing Deere an updated coverage map showing, by county, the existing and anticipated coverage of LightSquared's and its customers' terrestrial network and services every six (6) months. At LightSquared's request, Deere will agree to keep the information contained in such coverage maps confidential.

-4-

10. **Other FCC Filings**.  LightSquared agrees that it will withdraw its pending petition at the FCC, filed on February 7, 2012, concerning receiver standard mandates for GNSS devices within fifteen (15) days of the Effective Date.  Consistent with recommendations of the GPS Innovation Alliance ("GPSIA") to the FCC and other decision makers, LightSquared further agrees that it will not file a petition requesting the FCC to mandate receiver standards or impose a harms claim threshold for GNSS devices.  LightSquared further agrees that it will not, acting as itself or through any third party, propose or support any legislative measure to the FCC or Congress to impose receiver standards or a harms claims threshold for GNSS devices.

11. **Amendment and Withdrawal of FCC Filings**.  On or before March 31, 2016, LightSquared will amend the various applications and petitions for rulemaking pending before the FCC relating to the proposed terrestrial use of the spectrum bands 1526-1536 MHz, 1545-1555 MHz, 1627.5-1637.5 MHz, 1646.5-1656.5 MHz and 1670-1700 MHz to conform with the technical and operational parameters in this Settlement Agreement.  To the extent necessary, LightSquared shall withdraw and refile applications and/or petitions that cannot be amended to conform with the technical and operational parameters in this Settlement Agreement.  If LightSquared reaches a Global Settlement prior to March 1, 2016, it will make such filings within thirty (30) days of the date on which the dismissal of the last remaining defendant is so ordered by the Court.

a) At a minimum, as set forth in this Paragraph 11, LightSquared shall amend, withdraw and refile, or withdraw the following items pending before the FCC:

(i) Mobile Satellite Service Request to Modify the ATC Spectrum Rights associated with MSAT (File/Docket Nos. SAT-MOD-20120928-00160; SAT-MOD-20120928-00161, SES-MOD-20121001-00872, ET Docket No. 12-340);

(ii) Petition for Rulemaking/Terrestrial Use of 1526-1536 MHz L-Band (RM-11683); and

(iii) Petition for Rulemaking/Allocation of 1675-1680 MHz for Terrestrial Mobile Use (RM-11681).

b) In addition, if LightSquared reaches a Global Settlement, it agrees to withdraw the Petition for Declaratory Ruling concerning GNSS receiver spectrum rights, (Docket No. 11-109) within thirty (30) days of the date on which the dismissal of the last remaining defendant is so ordered by the Court.

12. **Attorneys' Fees and Costs; No Further Discovery**.  In consideration for the commitments and obligations in this Settlement Agreement, LightSquared will reimburse Deere for a portion of its attorneys' fees and costs expended in connection with the defense of the Litigation, in the amount agreed to and set forth by the Parties in a separate confidential side letter (the "Fee Agreement") dated November 20, 2015. The Parties agree to keep the amount of such reimbursement confidential.  Such amount shall be paid by LightSquared by wire transfer pursuant to instructions contained in the Fee Agreement no later than seven (7) days after the Effective Date.  Each Party agrees not to seek reimbursement of any other fees, costs or

-5-

payments related to, or incurred in connection with, the LightSquared Litigation from the other Party, provided that nothing in this Paragraph 12 shall preclude Deere from seeking from Harbinger an award of attorneys' fees and costs incurred in connection with the Harbinger Litigation. LightSquared further agrees that it will not require Deere to further respond to discovery requests in the Litigation and, following Deere's dismissal, will not direct a subpoena to Deere seeking additional documents or testimony.

13. **No Other Commitments**. The Parties agree that this Settlement Agreement is limited to the specific terms set forth in this Settlement Agreement, and neither Party makes any commitment with respect to any other matters, including the impact of any changes that LightSquared may make to its technical and business plans in the future. The commitments set forth herein shall be binding on the Parties' successors and assigns, and LightSquared shall require customers and partners that use the LightSquared spectrum, network, or services to abide by the commitments set forth herein.

14. **No Endorsement; Reservation of Rights**. The Parties agree that nothing in this Settlement Agreement shall constitute an endorsement by Deere of any technical, operational, policy, regulatory or other matter regarding LightSquared's network and business plan, and that LightSquared shall not make any statement or representation to such effect. Except as to matters expressly addressed in this Settlement Agreement, including, but not limited to, the Party's agreement to the technical parameters and use of certain bands of spectrum contained herein, each Party reserves all rights to advocate before any judicial, legislative, or regulatory body, and nothing in this Settlement Agreement shall limit either Party's ability to participate in regulatory, legislative or other proceedings affecting its interests, including, but not limited to, proceedings at the FCC, the DOT, and the NTIA. For the avoidance of doubt (a) Deere may submit one or more filings in support of the positions LightSquared commits to undertake in this Settlement Agreement, including, without limitation, those stated in Paragraphs 2, 4-7; (b) LightSquared reserves the right to object to third party proposals that are more restrictive than the terms of this Settlement Agreement, including, but not limited to, Paragraphs 4-7 and 10; and (c) LightSquared may refer to and/or attach this Settlement Agreement to filings with the FCC, the DOT and the NTIA provided the document is attached in its entirety.

15. **Confidentiality**. Except as set forth herein, the Parties agree the terms of the Settlement Agreement will not be confidential.

16. **Extensions**. The Parties agree that they will consider in good faith any reasonable requests for extensions of the deadlines contained in this Settlement Agreement, so long as any such extensions are sought at least fourteen (14) days in advance of any deadline.

17. **Scope**. The Parties acknowledge and agree that the terms of this Settlement Agreement do not apply to (a) LightSquared's earth-to-space communications transmitting pursuant to Part 25 of the FCC's rules, 47 C.F.R. Part 25; (b) existing services in 1670-1675 MHz operated by LightSquared pursuant to Part 27 of the Commission's Rules, 47 C.F.R. §§ 27.901-907, as of October 13, 2015; (c) the participation of either Party in the DOT Adjacent Band Study; and/or (d) any assessment of interference to GNSS receivers, including without limitation on the basis of a 1 dB decrease in the $C/N_0$ measure, by the FCC, DOT, NTIA

-6-

or any other agency, legislative or lawmaking bodies. Provided, however, Deere, acting as itself or through any third party, will not object in the event LightSquared files a request with the DOT to remove the LightSquared spectrum at 1627.5-1637.5 MHz, 1646.5-1656.5 MHz and 1670-1680 MHz from the Adjacent Band Study as long as LightSquared does not seek to relax the technical parameters agreed to in Paragraphs 4-7.

18. **Mutual Releases.**

a) *LightSquared Release.* For good and valuable consideration, including the release by Deere set forth in Paragraph 18(b) below, LightSquared, on behalf of itself and, to the fullest extent permitted by law, its parents, subsidiaries, and affiliates, each of their predecessors, successors and assigns, and their agents, officers, directors, employees, members, managers, trustees, administrators, shareholders, representatives, attorneys and any and all other individuals or entities who have at any time acted, or purported to act, on behalf of any of the foregoing (collectively, the "LightSquared Releasors"), hereby forever, irrevocably and unconditionally release and forever discharge Deere, and each of Deere's subsidiaries and affiliates (including, without limitation, NavCom Technology, Inc.), each of their predecessors, successors and assigns, and their agents, officers, directors, employees, members, managers, trustees, administrators, shareholders, representatives, attorneys and any and all other individuals or entities who have at any time acted, or purported to act, on behalf of any of the foregoing (collectively, the "Deere Released Parties"), from any and all claims, causes of action, and demands of any nature, character or kind, known and unknown, asserted and unasserted, whatsoever, whether at law or equity, and whether of a direct, indirect or derivative nature (including, but not limited, to any claims or potential claims against Deere based on or relating to conduct or alleged conduct by the U.S. GPS Industry Council, the Coalition to Save Our GPS, or any other trade or industry group), under the laws of any jurisdiction, which any of the LightSquared Releasors had, now have, or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever against any of the Deere Released Parties (collectively, the "LightSquared Released Claims"), as of the Effective Date, including, but not limited to, the claims asserted by LightSquared against Deere in the LightSquared Litigation, provided that Deere's obligations under this Settlement Agreement shall not be released.

b) *Deere Release.* For good and valuable consideration, including the release by LightSquared set forth in Paragraph 18(a) above, Deere, on behalf of itself and, to the fullest extent permitted by law, its subsidiaries and affiliates, each of their predecessors, successors and assigns, and their agents, officers, directors, employees, members, managers, trustees, administrators, shareholders, representatives, attorneys and any and all other individuals or entities who have at any time acted, or purported to act, on behalf of any of the foregoing (collectively, the "Deere Releasors"), hereby forever, irrevocably and unconditionally release and forever discharge LightSquared, and each of LightSquared's subsidiaries and affiliates, each of their predecessors, successors and assigns, and their agents, officers, directors, employees, members, managers, trustees, administrators, shareholders, representatives, attorneys and any and all other individuals or entities who have at any time acted, or purported to act, on behalf of any of the foregoing (collectively, the "LightSquared Released Parties"), from any and all claims, causes of action, and demands of any nature, character or kind, known and unknown, asserted and unasserted, whatsoever, whether at law or equity, and whether of a direct, indirect

-7-

or derivative nature, under the laws of any jurisdiction, which any of the Deere Releasors had, now have, or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever against any of the LightSquared Released Parties (collectively, the "Deere Released Claims" and, together with the LightSquared Released Claims, the "Released Claims"), as of the Effective Date, provided that LightSquared's obligations under this Settlement Agreement shall not be released.

        c)    The releases set forth in this Paragraph 18 shall be effective on the Effective Date.

      **19.**    **Applicable Law and Forum.**  This Settlement Agreement shall be governed by and construed pursuant to the substantive laws of New York without regard to its conflict of laws rules. The United States District Court for the Southern District of New York shall have exclusive jurisdiction and shall be the exclusive venue for resolution of any dispute arising out of or in any way related to this Settlement Agreement or the subject matter contained herein. Each of the Parties hereto irrevocably and unconditionally: (i) consents to the jurisdiction of such court to determine any such disputes; (ii) agrees not to commence any such litigation except in such court and waives any objection to the laying of venue of any such litigation in such court; and (iii) agrees not to plead or claim in such court that such litigation brought therein has been brought in an inconvenient forum.

      **20.**    **Cooperation.**  The Parties agree to cooperate fully, and to undertake their best efforts in good faith, to effect and implement the terms of the Settlement Agreement.

      **21.**    **Representations and Warranties by LightSquared Concerning Its Status.**  LightSquared hereby represents and warrants as follows: On December 7, 2015, the conditions to the consummation of LightSquared's (as defined in the Plan as defined below) and their debtor affiliates' Modified Second Amended Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") were either met or waived. Pursuant to the Plan, (i) LightSquared Inc. contributed substantially all of its assets (except for certain excluded assets, primarily tax related) to LightSquared LP, which was subsequently converted into New LightSquared LLC; (ii) following such contribution, LightSquared Subsidiary LLC became a direct, wholly-owned subsidiary of New LightSquared LLC; and (iii) certain litigation claims, including claims asserted in the LightSquared Litigation and the Harbinger Litigation (each as defined in the Plan), were contributed to New LightSquared LLC. LightSquared further represents and warrants that the general release of Deere set forth in this Agreement includes, but is not limited to, any and all claims owned or formerly owned by LightSquared Inc., LightSquared LP and LightSquared Subsidiary LLC (as it existed prior to December 7, 2015), and, further, that Kirkland & Ellis LLP has the authority to execute the Stipulation of Dismissal dismissing the LightSquared Litigation as set forth in Paragraph 1(a) hereof.

      **22.**    **Miscellaneous Terms.**

        a)    *Authority.*  Each Party represents and warrants that it has the power and authority to execute and deliver this Settlement Agreement and to perform its obligations hereunder.

-8-

b)   *No Assignment.*  LightSquared represents that it has not assigned or transferred any claim or purported claim against Deere to any other person or entity. Deere represents that it has not assigned or transferred any claim or purported claim against LightSquared to any other person or entity.

c)   *Successors and Assigns.*  This Settlement Agreement shall be binding upon and inure to the benefit of LightSquared and Deere, and any and all of their respective predecessors, successors, subsidiaries, parents, affiliates, legal representatives, agents and assigns.

d)   *No Admission of Liability.*  The Parties acknowledge that this Settlement Agreement represents a good faith resolution of disputed issues of law and fact. By entering into this Settlement Agreement, no Party admits any liability or wrongdoing to any other Party or otherwise acknowledges the validity of any factual or legal matter asserted by either Party in the LightSquared Litigation.

e)   *Integration.*  This Settlement Agreement is intended by the Parties as a final and complete expression of their agreement and understanding with respect to its subject matter. All prior discussion, negotiations, and understandings between the Parties concerning the subject matter of this Settlement Agreement, whether oral or written, express or implied, have been merged and integrated into, and are superseded by, this Settlement Agreement.

f)   *No Reliance.*  Each Party agrees that, in entering into this Settlement Agreement, it is not relying on any statement or omission by the other Party other than as set forth herein.

g)   *Amendment, Waiver, and Termination.*  The terms of this Settlement Agreement may not be waived, changed, modified, altered, discharged, terminated or supplemented except by written agreement or waiver that expressly refers to this Settlement Agreement and is signed by a representative of each Party who is an officer, director, or employee having an executive position of Director or Vice President. Any termination shall state what terms do not survive the effective date of termination of this Settlement Agreement, and all terms not so identified shall remain in effect following the termination. Any failure by a Party to pursue any breach of any provision of this Settlement Agreement shall not constitute a waiver of such provision or any other provision of this Settlement Agreement, or a waiver of rights with respect to any future breach of this Settlement Agreement.

h)   *No Presumption.*  The Parties acknowledge and agree that each of the Parties hereto is represented by counsel, and received independent legal advice with respect to the advisability of entering into this Settlement Agreement. This Settlement Agreement shall not be construed for or against any of the Parties on the basis of the extent to which that Party participated in drafting it. If an ambiguity or question of intent or interpretation arises, this Settlement Agreement will be construed as if drafted jointly by the Parties hereto and no presumption or burden of proof will arise favoring or disfavoring any Party hereto because of the authorship of any provision of this Settlement Agreement.

i) *Counterparts*. This Settlement Agreement may be executed in one or more original, facsimile or PDF counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

j) *Notice*. All notices, requests, demands and other communications required or permitted to be given pursuant to this Settlement Agreement shall be in writing and shall be delivered personally or by overnight delivery, as well as by email, to the Parties at their following addresses:

**If to LightSquared:**

Doug Smith
Jamie Kase
New LightSquared LLC
10802 Parkridge Boulevard
Reston, VA 20191
(703) 390-2024
Doug.Smith@lightsquared.com
Jamie.Kase@lightsquared.com

Eugene F. Assaf
K. Winn Allen
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5196
eugene.assaf@kirkland.com
winn.allen@kirkland.com

**If to Deere:**

Patricia M. Harris
Assistant General Counsel
Deere & Company
One John Deere Place
EOB 7th Floor 10S
Moline IL 61265
(309) 765-4962
harrispatriciam@JohnDeere.com

Catherine Wang
Morgan, Lewis & Bockius LLP
2020 K St. NW
Washington, DC 20006-1806
(202) 373-6037

-10-

catherine.wang@morganlewis.com

Kenneth I. Schacter
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178
(212) 309-6865
kenneth.schacter@morganlewis.com

Steve Wilson
Manager, Advanced Engineering
NavCom Technology, Inc.
20780 Madrona Avenue
Torrance, CA 90503
(310) 381-2606
wilsonstevenk@JohnDeere.com

**IN WITNESS WHEREOF**, Deere & Company, and New LightSquared LLC and LightSquared Subsidiary LLC, by their authorized signatories, have caused this Settlement Agreement to be executed as of the day and year first written above.

Deere & Company

By: _____
John C. May

President, Agricultural Solutions & Chief Information Officer, Deere & Company

Date: 8 December 2015

New LightSquared LLC and
LightSquared Subsidiary LLC

By: _____
Doug Smith

Chief Executive Officer, New LightSquared LLC and LightSquared Subsidiary LLC

Date: _____

-11-

catherine.wang@morganlewis.com

Kenneth I. Schacter
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178
(212) 309-6865
kenneth.schacter@morganlewis.com

Steve Wilson
Manager, Advanced Engineering
NavCom Technology, Inc.
20780 Madrona Avenue
Torrance, CA 90503
(310) 381-2606
wilsonstevenk@JohnDeere.com

**IN WITNESS WHEREOF**, Deere & Company, and New LightSquared LLC and LightSquared Subsidiary LLC, by their authorized signatories, have caused this Settlement Agreement to be executed as of the day and year first written above.

Deere & Company

**By:** _____
John C. May

President, Agricultural Solutions & Chief
Information Officer, Deere & Company

**Date:** _____

New LightSquared LLC and
LightSquared Subsidiary LLC

**By:** _____*[signature]*_____
Doug Smith

Chief Executive Officer, New
LightSquared LLC and LightSquared
Subsidiary LLC

**Date:** 12-8-15

-11-

DB3/ 200596284.2