UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
LIGHTSQUARED INC., LIGHTSQUARED    :    13 Civ. 8157 (RMB) (JCF)
LP, and LIGHTSQUARED SUBSIDIARY    :
LLC,                               :         MEMORANDUM
                                   :         AND   ORDER
            Plaintiffs,            :
                                   :
    - against -                    :
                                   :
DEERE & COMPANY, GARMIN            :
INTERNATIONAL, INC., TRIMBLE       :
NAVIGATION LIMITED, THE U.S. GPS   :
INDUSTRY COUNCIL, and THE          :
COALITION TO SAVE OUR GPS,         :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

      Plaintiffs  LightSquared  Inc.,  LightSquared  LP,  and

LightSquared Subsidiary LLC (collectively, "LightSquared") move for

an order compelling defendants Deere & Company ("Deere"), Garmin

International, Inc. ("Garmin"), and the U.S. GPS Industry Council

("USGIC"), to, among other things, produce documents and use

specific  search  terms  in  complying  with  their  discovery

obligations.[1]  For the reasons that follow, the motion is granted

in part.

Background

      On  February  5,  2015,  the  Honorable  Richard  M.  Berman,

U.S.D.J.,  issued  an  order  that  describes  in  great  detail  the

_____

      [1] On December 8, 2015, LightSquared filed a stipulation of
voluntary dismissal, releasing its claims against Deere pursuant to
a settlement agreement.  (Stipulation of Voluntary Dismissal as to
Defendant  Deere  &  Company  at  1).   Accordingly,  LightSquared's
motion to compel production from Deere is moot, and I will construe
the  motion  as  if  it  were  filed  only  against  Garmin  and  USGIC.

factual and legal issues presented by this case.  See LightSquared Inc. v. Deere & Co., No. 13 Civ. 8157, 2015 WL 585655 (S.D.N.Y. Feb. 5, 2015).  Accordingly, I offer here only a brief summary of the case and a description of subsequent procedural developments as necessary for purposes of deciding this motion.

In the late 1990s, LightSquared began to develop plans to build and deploy a wireless broadband network employing both satellite and terrestrial transmitters and receivers.  Id. at *4. Over several years, the defendants raised various objections to those plans based on concerns that the operation of LightSquared's network could interfere with GPS devices.  Id. at *4-6.  In 2009, LightSquared and "representatives of Defendants" entered into negotiations (the "Femtocell Negotiations") to resolve concerns having to do with LightSquared's planned use of "low-power indoor base stations called 'femtocells[,]' which are designed to improve network coverage inside buildings."  Id. at *5.  Although those negotiations successfully resolved the defendants' concerns, in September 2010 the defendants disclosed a new technical problem. Id. at *7.  They indicated that the operation of LightSquared's network made GPS devices susceptible to overload and malfunction because those devices have the potential to receive transmissions emanating from LightSquared's authorized spectrum band (the "out-of-band reception issue").  Id.  The seriousness of this issue caused the Federal Communications Commission ("FCC") to block indefinitely the operation of LightSquared's planned network.  Id. at *8.  According to the operative complaint, the defendants knew

2

about the out-of-band reception issue much earlier but failed to disclose it to LightSquared in violation of a legal obligation to do so.  Id. at *7, 15.

Judge Berman's order dismissed all of LightSquared's claims against the defendants except for "negligent misrepresentation and constructive fraud claims."  Id. at *21.  Judge Berman found that LightSquared's surviving cause of action had four elements:

> (1) [The defendants made] a false statement or omission of fact involving a material issue; (2) the statement or omission was in violation of a duty to exercise reasonable care; (3) the plaintiff reasonably relied to his detriment on the false information; and (4) the defendant[s'] conduct was the proximate cause of plaintiff's injury.

Id. at *14 (second alteration in original) (quoting Cordoba Initiative Corp. v. Deak, 900 F. Supp. 2d 42, 49 (D.D.C. 2012).

Following Judge Berman's ruling on the motion to dismiss, the defendants asked the Court to order "initial, targeted discovery" concerning the second element of the plaintiffs cause of action, namely the defendants' duty to disclose.  (Letter of Philip Le B. Douglas dated March 9, 2015, at 1).  After a Pretrial Conference with the parties, I entered a Case Management Plan setting March 31, 2016, as the close of fact discovery, but requiring discovery related to the relationship between USGIC and the other defendants to be completed by June 30, 2015.  (Case Management Plan dated April 3, 2015).  On October 8, 2015, Judge Berman entered an order that, among other things, required the parties to submit expeditiously any discovery disputes to the Court and prohibited the filing of motions for summary judgment until after the close of

3

discovery.  (Order dated Oct. 8, 2015).  The plaintiffs filed the present motion on October 16, 2015.  (Notice of Motion dated Oct. 16, 2015).

In their motion papers, LightSquared asks that the Court order:

> 1.  Garmin and USGIC to produce documents responsive to LightSquared's requests for the period between March 1, 2001, and February 14, 2012;
>
> 2.  Garmin to produce responsive documents from additional custodians, including Min Kao, Kenneth Kao, Larry Swinney, John Farley, John Foley, Ted Gartner, and Anne Swanson;
>
> 3.  Garmin and USGIC to produce documents responsive to LightSquared's Requests for Production Nos. 5, 7, and 8; and
>
> 4.  Garmin and USGIC to use LightSquared's proposed search terms in conducting Phase II discovery or cooperate with LightSquared in developing a list of terms.

(LightSquared's Memorandum of Law in Support of its Motion to Compel Production of Documents From Garmin, Deere, and USGIC ("Pl. Memo.") at 20-21).  The defendants oppose the plaintiffs' proposed order in every respect.  (Defendants' Corrected Opposition to LightSquared's Motion to Compel ("Def. Memo.") at 1-2).

<u>Discussion</u>

A.  <u>Legal Standard</u>

The 2015 amendments to the Federal Rules of Civil Procedure "govern in all proceedings in civil cases" commenced after December 1, 2015, and, "insofar as just and practicable, all proceedings [] pending" on that date.  Order re: Amendments to Federal Rules of

Civil Procedure (April 29, 2015).[2]  No party has argued that the application of the amended rules to this dispute is unfair or impracticable, and I find no reason that they should not be applied here.

The amendments to Rule 26(b)(1) allow discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  While discovery no longer extends to anything related to the "subject matter" of the litigation, relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Moreover, information still "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

   B.  Request to Produce Documents From 2001 to 2012

LightSquared's first contention is that the defendants[3] have improperly limited the temporal scope of their search for documents responsive to LightSquared's requests.  (Pl. Memo. at 7). According to LightSquared, the defendants' search should span from March 1, 2001 -- i.e., "the date LightSquared filed its application with the FCC" to authorize terrestrial transmissions within its

---

   [2]  The order of April 29, 2015, can be found at http://www.supremecourt.gov/orders/ordersofthecourt/14.

   [3]  Unless otherwise noted, references herein to "the defendants" are intended to indicate the defendants from whom LightSquared seeks production, i.e., Garmin and USGIC.

FCC-licensed spectrum band -- to February 14, 2012 -- i.e., "the date the FCC recommended suspending LightSquared's authority to operate its network." (Pl. Memo. at 8).

LightSquared alleges that, as far back as 2001 when the parties first engaged in negotiations regarding technical concerns with LightSquared's proposed network, the defendants failed to disclose "that they had designed their receivers to 'listen in' on LightSquared's spectrum and that they were therefore subject to potential overload." (Amended Complaint ("Am. Compl."), ¶ 136). The defendants' alleged failure to disclose is an indispensable element of LightSquared's negligent misrepresentation claim. See LightSquared Inc., 2015 WL 585655, at *15. Accordingly, LightSquared argues that documents dating back to the first negotiations with the defendants concerning its terrestrial operations are potentially relevant to its claims, as they could help to show (1) when the defendants knew about the out-of-band reception issue and (2) when and what the defendants knew about LightSquared's plans to operate its terrestrial network. (Pl. Memo. at 9). The defendants do not dispute the potential relevance of records dating back to 2001[4] but instead argue that they have searched for such records to the extent necessary. (Def. Memo. at

---

[4] The defendants argue that the plaintiffs have belatedly requested "to commence the discovery period one month earlier in March 2010 [sic]" rather than April 2001. (Def. Memo. at 6 n.2). The plaintiffs have conceded this issue and agreed to use April 1, 2001, as the operative cutoff. (LightSquared's Reply Memorandum in Support of its Motion to Compel Production of Documents From Garmin, Deere, and USGIC ("Pl. Reply") at 4 n.4).

6).[5]   The plaintiffs have, therefore, satisfied their burden of establishing relevance with regard to documents from the post-March 2001 period related to the out-of-band reception issue and LightSquared's terrestrial network.

As for the demand to extend the scope of discovery to February 2012, LightSquared argues that its request is calculated to reveal further information about what the defendants knew (and when) about the out-of-band reception issue.   (Pl. Memo. at 10-11). LightSquared reasons that, because the defendants were involved in discussions concerning these same issues as late as 2012, it is likely that they possess documents created during that time-frame which are relevant to the question of what the defendants knew (and when).  (Pl. Memo. at 10-11).

In opposition to this portion of the plaintiffs' request, the defendants first argue that, because the plaintiffs had notice of the out-of-band reception issue by the end of 2010 at the latest, that date should serve as the cut-off for discovery, as the defendants' own knowledge of that issue after the plaintiffs were on notice is "legally irrelevant."  (Def. Memo. at 7).  Although the plaintiffs argue that the question of when they were on notice is "a question of fact for the jury" (Pl. Memo. at 10), the parties' dispute on this issue is beside the point.  The operative consideration here is whether documents from the disputed period

---

[5] I address the defendants' argument about the sufficiency of its discovery efforts in my assessment of LightSquared's request that the defendants expand their search for documents to include additional custodians.

7

(i.e., the end of 2010 until February 2012) are relevant to LightSquared's negligent misrepresentation claim. Fed. R. Civ. P. 26(b)(1).

More to the point, the defendants next argue that a search for documents from the disputed period is unlikely to uncover evidence that Garmin had "2008-2009 knowledge of the Femtocell Negotiations." (Def. Memo. at 8). Indeed, the defendants argue at length that the "uncontroverted documentary and testimonial evidence" in this case makes the plaintiffs' arguments concerning the potential relevance of documents from the disputed period "mere conjecture." (Def. Memo. at 8-11). From the defendants' perspective, the upshot seems to be (1) that they cannot be liable if they did not have contemporaneous knowledge of the Femtocell Negotiations and (2) that the evidence in the case so far makes it unlikely that documents from the disputed period will help to establish such knowledge. This framing, however, misunderstands (or ignores) the plaintiffs' argument concerning the disputed period.

The crux of LightSquared's position is that the defendants were involved in discussions concerning the out-of-band reception issue throughout the disputed period. (Pl. Reply at 5). Given the defendants' participation in those discussions, the plaintiffs reason that "documents from [the disputed] period would shed light on the extent of defendants' knowledge and disclosure of the overload issue." (Pl. Reply at 5). Rather than refuting the substance of the plaintiffs' argument, the defendants suggest that

evidence concerning their knowledge of the out-of-band reception issue is only relevant if LightSquared can establish their contemporaneous awareness of the Femtocell Negotiations. (Def. Memo. at 8 n.7). In other words, the defendants would have the Court block discovery related to one aspect of the plaintiffs' claim because there is (according to the defendants) insufficient evidence to sustain a separate aspect of that claim. The defendants have not cited any authority that would support such an outcome, which would frustrate a core purpose of discovery -- namely to enable parties to "obtain the factual information needed to prepare for trial." Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 756 F.2d 230, 236 (2d Cir. 1985). The defendants' belief that the plaintiffs' case lacks merit is not a basis for curtailing discovery. See Alexander v. Federal Bureau of Investigation, 194 F.R.D. 316, 326 (D.D.C. 2000) (stating that discovery cannot be denied on basis that requested documents relate to claim being challenged as insufficient).

A plaintiff alleging fraud or misrepresentation will often "need to show what the defendants knew at the time of the alleged misrepresentations." Nairobi Holdings Ltd. v. Brown Brothers Harriman & Co., No. 02 Civ. 1230, 2005 WL 742617, at *3 (S.D.N.Y. March 18, 2005). In such cases, "a time-frame for discovering defendants' knowledge of facts at issue must be sufficiently broad to reveal evidence of the facts as well as evidence of where defendants learned those facts." Id. LightSquared has sufficiently established the potential relevance of the disputed

period even though that time-frame post-dates the defendants'
alleged omissions.  See Assured Guaranty Municipal Corp. v. UBS
Real Estate Securities Inc., No. 12 Civ. 1579, 2012 WL 5927379, at
*2 (S.D.N.Y. Nov. 21, 2012) (allowing discovery as to documents
that post-date relevant transaction on grounds that such documents
may retrospectively analyze facts relevant to claims at issue).
The defendants, on the other hand, have not established an
appropriate basis for denying the plaintiffs' request.
Accordingly, the plaintiffs' request is granted, and the defendants
shall produce documents from April 1, 2001, to February 14, 2012,
related to (1) the out-of-band reception issue and (2)
LightSquared's planned terrestrial operations.

C.  Request to Produce Documents From Additional Custodians

The parties' next dispute concerns the number of custodians
whose files Garmin has searched in response to LightSquared's
requests, and LightSquared's demand is actually threefold:
"[D]efendant[] should be compelled to expand its search of the
identified custodians to a reasonable and meaningful period of
time, include the custodians identified [in the plaintiffs'
memorandum], and negotiate in good faith with LightSquared over
additional custodians." (Pl. Memo. at 15).  I will address each
request in turn.

LightSquared asserts that Garmin, in searching the files of
its custodians, confined its search to an eleven-month period for
five of its seven custodians. (Pl. Memo. at 13).  Garmin does not
dispute that it has limited the scope of its searches, arguing

instead that the limitations were proper because no other custodian is likely to have "relevant pre-2010 documents" (Def. Memo. at 13) and because it rejects outright the proposition that any post-2010 documents are discoverable (Def. Memo. at 6-11). Although Garmin's arguments on this point have largely been addressed, another brief consideration of its position is relevant to the ensuing discussion.

In Garmin's view, discovery "has established without contradiction that Garmin did not learn of the Femtocell Negotiations or the potential for LightSquared-caused GPS receiver overload until April 2010." (Def. Memo. at 13). Even if true, this does not, as Garmin would have it, eliminate the need for discovery on other issues. A review of the parties' voluminous correspondence suggests that Garmin's fixation on one issue (its awareness of the Femtocell Negotiations) has caused it to adopt an overly narrow interpretation of what "relevant" means for purposes of discovery. For example, Garmin wrote in a July 2015 letter that, because "undisputed evidence" had established that it lacked knowledge of the Femtocell Negotiations, "Garmin's prior awareness of the phenomenon of receiver overload [] could not possibly be relevant." (Letter of Philip Le B. Douglas dated July 25, 2015, attached as Exh. 57 to Declaration of Philip Le B. Douglas dated Oct. 30, 2015 ("Douglas Decl."), at 1-2). As explained above, for purposes of discovery, the relevance of documents relating to Garmin's awareness of the out-of-band reception issue does not depend on establishing the merits of any other aspect of the

plaintiffs' claim.  Garmin would have the Court cut off discovery because, having assessed the evidence produced thus far, it believes that the plaintiffs cannot establish liability.  (Def. Memo. at 13, 16).  Again, Garmin's view of the merits of the plaintiffs' case is not a proper basis to block discovery.

This brings me to the plaintiffs' request that Garmin search the files of seven additional custodians.  (Pl. Memo. at 14-15). Although the plaintiffs have not satisfied their burden in this regard, their failure is likely due to Garmin's approach to discovery in this case.  As for the plaintiffs' request, a party seeking to compel another party to search the files of additional custodians bears the burden of establishing the relevance of the documents it seeks from those custodians.  See Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co., 297 F.R.D. 99, 107 (S.D.N.Y. 2013).  LightSquared's unsupported assertions concerning the individuals it has identified are not enough. See id. at 107-08 (denying requests to compel search of additional custodians based on lack of evidence of relevance).

In connection with its request that Garmin search additional custodians' files, LightSquared also asks that Garmin "be compelled to identify custodians reasonably likely to have records relevant to the technical issues presented by LightSquared's claims." (Pl. Memo. at 14).  While I appreciate the plaintiffs' concern that Garmin's identification of custodians thus far may have been informed by its misguided view of the relevant issues in this case, I also acknowledge that Garmin has objected to the way LightSquared

has framed its requests. (See Defendant Garmin International, Inc.'s Responses and Objections to LightSquared's First Interrogatories, attached as Exh. 27 to Douglas Decl., at 6). Because it would be inappropriate for me to issue a vague order requiring Garmin to "identify custodians reasonably likely to have records relevant to the technical issues presented by LightSquared's claims," I order the parties to proceed as follows.

Within seven days of the date of this order, LightSquared shall serve on Garmin interrogatories requesting the identities of individuals with knowledge of the relevant "technical issues" and custodians in possession of documents relevant to those issues, stating with specificity what those technical issues are. Garmin will then have twenty-one days to provide its response, which must take into account the present discussion concerning the relevant issues in the case.[6] Once Garmin responds, the parties shall negotiate and submit to the Court within fourteen days a joint discovery plan addressing how the parties will proceed with regard to any discovery necessitated by the response.

D. <u>Requests for Production 5, 7, and 8</u>

Next, LightSquared asks that the defendants be compelled to produce documents responsive to three Requests for Production ("RFP"). (Pl. Memo. at 15-16).

---

[6] I emphasize in this regard that Judge Berman identified the defendants' alleged failure to disclose the out-of-band reception issue as a necessary element in the plaintiffs' claim. <u>LightSquared Inc.</u>, 2015 WL 585655, at *15. This clearly makes the defendants' awareness of the out-of-band reception issue relevant.

1.   <u>RFP Five</u>

LightSquared's RFP no. 5 ("RFP 5") asks the defendants to produce "[a]ll documents relating to the ability of GPS Devices to receive signals from the LightSquared Band." (LightSquared's First Set of Requests for Production of Documents to Defendant Garmin International, Inc. ("Garmin RFP"), attached as Exh. J to Declaration of Devin A. DeBacker dated October 16, 2015 ("DeBacker Decl."), at 2).[7]  The defendants offer four arguments in response to LightSquared's claim that they failed to respond to RFP 5. (Def. Memo. at 17-19).  First, Garmin claims that the searches it conducted failed to produce any responsive records. (Def. Memo. at 18).  Second, the defendants argue that their "knowledge of LightSquared interference with third-party devices is irrelevant." (Def. Memo. at 18).  Third, the defendants restate in different terms their argument that, because the plaintiffs cannot establish that they had knowledge of the Femtocell Negotiations, the defendants should not have to produce discovery material relevant to other issues.  (Def. Memo. at 19).  The defendants fourth argument is, as far as I can tell, yet another riff on their third argument.

In light of the discussion thus far, I can dispose of the defendants' arguments in short order.  Point one has been mooted by the conclusion that Garmin's searches to date have been deficient. Point two is simply wrong.  Possession of documents concerning the

---

[7] The RFPs that LightSquared served on Garmin and USGIC are identical in most relevant respects.

potential for GPS devices generally to receive signals from the LightSquared band could establish (1) that the possessor had knowledge of the out-of-band reception issue and (2) when and how it obtained such knowledge. Such information satisfies Rule 26's relevance requirement. See Daval Steel Products, a Division of Francosteel Corp. v. M/V Farkedine, 951 F.2d 1357, 1367 (2d Cir. 1991) (discussing breadth of relevance concept and collecting authority); Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 274 (S.D.N.Y. 1999) ("It is well-settled within this Circuit that 'any possibility' that the sought-after information may be relevant . . . will satisfy Rule 26(b)(1)'s requirements." (quoting Daval Steel Products, 951 F.2d at 1367)); see also 8 Wright & Miller, Federal Practice and Procedure § 2008 (3d ed.) ("'[R]elevant' is synonymous with 'germane.'"). Points three and four have already been considered, albeit in different form, and rejected. The defendants shall produce all documents responsive to RFP 5.

### 2. RFPs Seven and Eight

RFP no. 7 ("RFP 7") demands "[a]ll documents relating to the potential retrofit or redesign of GPS Devices to prevent GPS Receiver Overload caused by LightSquared's Network or Terrestrial Operations in the LightSquared Band, including the technical feasibility, cost, and impact on selling price of such retrofit or redesign." (Garmin RFP at 2). RFP no. 8 ("RFP 8") seeks "[d]ocuments sufficient to show the number of GPS Devices You sold that were susceptible to GPS [] Receiver Overload and the profits

15

You made from those sales." (Garmin RFP at 3).[8] LightSquared offers two explanations regarding the relevance of these requests. First, LightSquared asserts that a "key issue in the case" is the extent to which the defendants profited from, or avoided incurring expenses due to, their alleged failure to disclose. (Pl. Memo. at 18). Second, LightSquared argues that "Judge Berman made clear that potential motivations for defendants' failure to disclose" are relevant to the negligent misrepresentation claim. (Pl. Memo. at 18). The defendants state that the plaintiffs' contentions are wrong as a matter of law and, furthermore, that the cognizable damages for a negligent misrepresentation claim do not include a defendant's profits or avoided costs. (Def. Memo. at 20-21).

LightSquared traces the sole support for its two contentions to Judge Berman's indication that Rule 9(b) of the Federal Rules of Civil Procedure required LightSquared to allege "what [the d]efendant[s] obtained through the fraud." (Pl. Memo. at 18 (quoting LightSquared Inc., 2015 WL 585655, at *17)).[9] Having satisfied Rule 9(b) -- the purpose of which is to give a defendant fair notice of the factual ground upon which the plaintiff's claim is based and to protect potential defendants from "improvident

---

[8] LightSquared requested from USGIC "[a]ll documents relating to the sale of GPS Devices that were or are potentially susceptible to GPS Receiver Overload." (LightSquared's First Set of Requests for Production of Documents to Defendant United States GPS Industry Council, attached as Exh. L to DeBacker Decl., at 3)

[9] Having scoured the opinion, I have no clue where "Judge Berman made clear that potential motivations for defendants' failure to disclose are relevant considerations for LightSquared's claim."

charges of wrongdoing," see Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990) -- the proper inquiry for purposes of discovery is whether the requested documents are relevant to LightSquared's negligent misrepresentation claim.    LightSquared conspicuously does not argue that its claim of negligent misrepresentation requires a showing that the defendants intended to induce reliance by failing to disclose the out-of-band reception issue. (Pl. Memo. at 18-19; Pl. Reply at 8); cf. LightSquared Inc., 2015 WL 585655, at *14 (listing elements of negligent misrepresentation claim). Neither does LightSquared dispute the defendants' argument that profit and avoided costs are not cognizable measures of damage for a negligent misrepresentation claim.   (Def. Memo. at 20-21; Pl. Reply at 8).   More than Judge Berman's brief reference to "what [the d]efendant[s] obtained through the fraud," LightSquared Inc., 2015 WL 585655, at *14, is necessary to render relevant the documents LightSquared requests pursuant to RFPs 7 and 8. Accordingly, this portion of the plaintiffs' motion is denied.

E.  Request to Apply Additional Search Terms

LightSquared's final demand, although framed as a request to compel the defendants to apply the plaintiffs' proposed search protocol, is mostly a dispute about the parties' divergent understandings of where things stand with regard to discovery in this case. (Pl. Memo. at 19-20).  While the plaintiffs fleetingly draw the Court's attention to their proposed search protocol, they make no argument concerning the merits of, or justifications for, the additional search terms. (Pl. Memo. at 19-20).  LightSquared's

view is that (1) the search terms used in discovery thus far were designed to address "Phase I" discovery (i.e., discovery concerning the relationship between USGIC and the other defendants) and (2) new search terms are needed to complete "Phase II" discovery (i.e., discovery concerning all other issues in the case). (Pl. Memo. at 19).   The defendants, LightSquared contends, have refused to negotiate an appropriate search protocol for Phase II discovery. (Pl. Memo. at 20).

According to the defendants, LightSquared's demand amounts to a request for a "do-over" of Phase II discovery. (Def. Memo. at 22).   In their view, (1) the search protocol they have applied was not limited to Phase I discovery, (2) LightSquared understood and agreed that the protocol would govern Phase II discovery, and (3) LightSquared has failed to identify any "newly discovered facts" that would justify revising the search protocol. (Def. Memo. at 21-23).

Based on the present record, I am hesitant to adjudicate any dispute the parties have about the merits of LightSquared's proposed search protocol. See Assured Guaranty Municipal Corp., 2012 WL 5927379, at *4 (cautioning against adjudicating complex search term disputes in the absence of expert affidavits); see also The Sedona Principles (Second Edition): Best Practices Recommendations & Principles for Addressing Electronic Document Production, Principle 6 ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically

stored information.") (available at www.TheSedona Conference.org).
Neither party has provided a sufficient basis for me to determine
whether the proposed search protocol would be efficacious.
Accordingly, I deny the plaintiffs' motion to compel the defendants
to use the proposed search terms.

However, because this order requires the production of
additional discovery material, I strongly encourage the defendants
to take the forgoing discussion into consideration in searching for
responsive documents. The defendants' are responsible for
"conduct[ing] a diligent search, which involves developing a
reasonably comprehensive search strategy." Treppel v. Biovail
Corp., 233 F.R.D. 363, 374 (S.D.N.Y. 2006). If the defendants
unilaterally develop and implement a search protocol, rather than
negotiate a stipulated search protocol with the plaintiffs, they
run the risk that I will later deem their search strategy
insufficient and require them to conduct additional searches.

Conclusion

For the reasons set forth above, the plaintiffs' motion to
compel (Docket No. 127) is granted in part and denied in part. The
defendants Garmin and USGIC shall search for and produce documents
from April 1, 2001, to February 14, 2012, related to (1) the out-
of-band reception issue and (2) LightSquared's planned terrestrial
operations. This production shall include documents responsive to
RFP 5. Furthermore, the plaintiffs shall have seven (7) days from
the date of this order to serve on Garmin interrogatories
requesting the identities of individuals with knowledge of relevant

technical issues and custodians in possession of documents relevant to those issues, stating with specificity what those technical issues are. Garmin will then have twenty-one (21) days to provide its response, which must take into account the forgoing discussion concerning the relevant issues in the case. The parties shall then submit within fourteen (14) days a joint discovery plan addressing a plan for completing any discovery necessitated by Garmin's response to the plaintiffs' interrogatories. The plaintiffs' motion is denied with respect to (1) their request to compel searches of the files of the individuals named in their motion, (2) their request to compel production of documents responsive to RFPs 7 and 8, and (3) their request to compel the defendants to use the plaintiffs' proposed search terms.

SO ORDERED.

*James C. Franci IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           December 10, 2015

Copies transmitted this date to:

Eugene F. Assaf, Esq.
Devin A. Debacker, Esq.
K. Winn Allen, Esq.
Nathaniel D. Buchheit, Esq.
Rebecca Taibleson, Esq.
Zachary A. Avallone, Esq.
Kirkland & Ellis LLP
655 15th St., NW, Suite 1200
Washington, D.C. 20005

Eric F. Leon, Esq.
Kirkland & Ellis LLP
601 Lexington Ave.
New York, NY 10022-4611

Alyssa T. Saunders, Esq.
Michael D. Hays, Esq.
Cooley LLP
1299 Pennsylvania Ave., NW, Suite 700
Washington, D.C. 20004

Ian Samuel, Esq.
P. Bart Green, Esq.
Philip L. Douglas, Esq.
Eric P. Stephens, Esq.
Jones Day
222 E. 41st St.
New York, NY 10017

William A. Isaacson, Esq.
Jonathan M. Shaw, Esq.
Abby L. Dennis, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave., NW
Suite 800
Washington, D.C. 20015

John T. Nicolau, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Ave.
New York, NY 10022

Steven R. Schindler, Esq.
Karen M. Steel, Esq.
Schindler Cohen & Hochman
100 Wall St.
New York, NY 10005